**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| GIGI GAI ZI CHAN<br><br>Plaintiff,<br><br>v.<br><br>WELLINGTON MANAGEMENT COMPANY LLP AND CHARLES ARGYLE,<br><br>Defendants. | Civil Action No. 19-cv-11605-WGY |

**MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

Pursuant to Fed. R. Civ. P. 12(b)(6), defendants, Wellington Management Company LLP ("WMC") and Charles Argyle ("Argyle") (jointly, "Defendants") respectfully request that this Court dismiss the Complaint filed by Gigi Gai Zi Chan ("Plaintiff") in its entirety for several independent reasons. First, Plaintiff's claims alleging discrimination and retaliation under M.G.L. c. 151B (hereinafter, "c. 151B"), should be dismissed based on (a) the general rule against extraterritorial application of statutory law; and (2) choice of law principles that weigh against application of c. 151B in this case. It is undisputed that Plaintiff is not a United States citizen, is not and was not a resident of Massachusetts during her employment, was employed in Hong Kong by a Hong Kong entity, and is bound by an employment agreement providing for the application of Hong Kong law. Accordingly, Plaintiff is not entitled to the protections of c. 151B and, thus, can bring her discrimination and retaliation claims under Hong Kong law only.

Second, if this Court chooses to address the Plaintiff's claims pursuant to Hong Kong law, Plaintiff's discrimination, harassment and retaliation claims still fail because under the relevant Hong Kong discrimination ordinances, exclusive jurisdiction over these claims lies in Hong Kong

District Court, and because they are time-barred.

Finally, since Plaintiff's remaining claims are governed by the laws of Hong Kong, and most of the witnesses are in Hong Kong and the alleged injury occurred in Hong Kong, this Court should dismiss these claims on the basis of choice of law and *forum non convenien*s.

Accordingly, for all of these independent reasons, Plaintiff's Complaint should be dismissed in its entirety with prejudice.

## RELEVANT FACTS[1]

Wellington Management Hong Kong Limited ("WMHK") hired Plaintiff, a citizen of the United Kingdom (Compl. ¶1), on May 21, 2014 as an Equity Research Analyst. Exhibit A to Complaint, Employment Agreement.[2] The employing entity was expressly stated to be WMHK (formerly known as "Wellington Global Investment Management Ltd"), a Hong Kong private limited company. Id.  Clause 18 of the Employment Agreement expressly provides that the Employment Agreement "is governed by and construed in accordance with Hong Kong laws…" Id.  According to the Employment Agreement, Chan's place of work was stated to be WMHK's premises located at "32F, One Exchange Square, Central, Hong Kong" (emphasis added, Clause 3). Id.  There are references to the Hong Kong Employment Ordinance with regard to vacation (Clause 8) and termination rights (Clause 15).  Id.  The Employment Agreement also expressly

---

[1] Defendants acknowledge that for the purposes of the motion to dismiss, the Court is required to take as true the facts pleaded by Plaintiff in the Complaint.  However, Defendants note that Plaintiff has failed to name her employer WMHK in this action.  Instead, she has named Wellington Management Company LLP ("WMC"), a Delaware limited liability partnership, and one of its employees.  WMC is neither a direct parent nor subsidiary of Plaintiff's former employer WMHK.  Plaintiff's inappropriate attempt to circumvent the Hong Kong Courts and application of Hong Kong law by suing the incorrect entity should not be rewarded.

[2] Defendants rely upon certain documents that are specifically referenced in and attached to the Complaint, including the Employment Agreement.  Because the Employment Agreement is attached to the Complaint, this document is appropriately considered on a Motion to Dismiss.  Town of Barnstable v. Berwick, 17 F. Supp. 3d 113, 115 n.3 (D. Mass. 2014) (documents sufficiently referred to in the complaint may be considered on a motion to dismiss).

referred to defined terms under section 2 of the Hong Kong Companies Ordinance (Clause 17). Id.  In addition, Plaintiff was to be paid in Hong Kong currency.  Id.

Throughout Chan's tenure as an employee of WMHK, she lived and worked in Hong Kong. Compl. ¶ 21.  Plaintiff was terminated by WMHK on September 12, 2017.  Compl. ¶¶ 56, 58.  Even now, Plaintiff resides in France, not the United States.  Compl. ¶ 1.

## ARGUMENT

### I.  Legal Standard For Motion To Dismiss Under Rule 12(b)(6)

In considering whether the present Complaint can survive a Motion to Dismiss for failure to state a claim under Rule 12(b)(6), the Court must only accept as true well-pled factual allegations in the Complaint.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" and cannot provide the factual basis necessary for the Complaint to survive a motion to dismiss.  Id.

Once the Court has identified and accepted as true the well-pled factual allegations, it is charged with determining if those facts "state a claim to relief that is plausible on its face." Id. at 678, quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A complaint satisfies the plausibility standard only when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678; see Laurence v. Wall, 2010 U.S. Dist. LEXIS 112381, *5 (D. R.I. 2010) (dismissing complaints referencing conduct by "defendants" generally; such "sweeping allegations fail to provide adequate specificity").  If the factual allegations in a complaint fail to "nudge[]" the pleading party's claims "across the line from conceivable to plausible," the "complaint must be dismissed."  Twombly, 550 U.S. at 570.  Where "well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct" the pleading party has not met its burden and the claims should be dismissed. Iqbal, 556 U.S. at 679.

## II. Plaintiff Has Failed To State A Claim For Relief Under c. 151B Because Non-U.S. Citizens Employed Overseas Are Not Protected By Discrimination Statutes.

Plaintiff alleges that WMC discriminated against her on the basis of gender, race/national origin, and disability/pregnancy and unlawfully retaliated against her in violation of Massachusetts law. As a threshold matter, Plaintiff is not entitled to protection under c. 151B because the statute does not apply extraterritorially. Thus, her c. 151B discrimination and retaliation claims must be dismissed.

### A. The Court Should Apply The Presumption Against Extraterritorial Application.

"[T]here is a presumption against the application of Massachusetts statutes outside the United States." Taylor v. Eastern Connection Operating, Inc., 465 Mass. 191, 198 n.9 (2013). While no Massachusetts case law specifically addresses whether c. 151B applies extraterritorially outside the United States, c. 151B is analogous to federal employment discrimination statutes the interpretation of which provides guidance here. See Matthews v. Ocean Spray Cranberries, Inc., 686 N.E.2d 1303, 1310 (Mass. 1997); Labonte v. Hutchins & Wheeler, 678 N.E.2d 853 (Mass. 1997) ("the Federal guidelines can be used to guide Massachusetts in interpreting G.L. c. 151B"); Stonehill College v. MCAD, 808 N.E.2d 205 (Mass. 2004) ("Though we are not bound by Federal courts' interpretations of the similar Federal law, we may look to Federal interpretation for guidance.").

The general rule that is applied repeatedly by federal courts in construing federal and state statutes is that there is a presumption against the international extraterritorial application of domestic laws where there is no clearly expressed legislative intent to regulate conduct abroad.

4

See E.E.O.C. v. Arabian Am. Oil Co., 499 U.S. 244 (1991) (holding that Title VII did not apply to employment practices of U.S. employers who employ U.S. citizens abroad)[3]; Litz v. Saint Consulting Group, Inc., No. 11-10693-GAO 2012 U.S. Dist. LEXIS 20586 at *2 (D. Mass. Feb. 17, 2012) (stating that "Massachusetts statutes 'are presumed not to apply extraterritorially unless there is clear legislative intent to the contrary'") (citing Hadfield v. A.W. Chesterton Co., No. 108426 2009 Mass. Super. LEXIS 230 at *2 (Mass. Super. Ct. Sep. 15, 2009)); Carnero v. Boston Scientific Corp., 433 F.3d 1, 7-8 (1st Cir. 2006) (explaining that where "a statute is silent as to its territorial reach, and no contrary congressional intent clearly appears, there is generally a presumption against its extraterritorial application."); Spector v. Norwegian Cruise Line, Ltd., 545 U.S. 119 (2005).  This presumption is grounded on the assumption that, if the legislature wished for a statute to apply extraterritorially, it would say so explicitly, since such an application would intrude on the "delicate field of international relations." McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 21-22 (1963).

Indeed, this Court has applied this exact presumption to another state civil rights statute. Doricent v. American Airlines, Inc., No. 91-12084-WGY, 1993 U.S. Dist. LEXIS 15143, at *23 (D. Mass. 1993). In Doricent, this Court analyzed whether the Massachusetts civil rights laws, M.G.L. c. 12 §§ 11H and 11I, applied to events occurring outside the Commonwealth of Massachusetts to protect a United States citizen in a Haitian airport. Id. at *22.  The Court determined that the language of the statute did not overcome the presumption against extraterritorial application. Id. *23-26.[4]

---

[3] Although Title VII was subsequently revised to provide protection to U.S. citizens working outside of the United States, EEOC Policy Guidelines, referenced on p. 6 below, make clear that *non-U.S. citizens are not protected by U.S. EEO laws when employed outside the U.S. or its territories*. (emphasis added).

[4] The Court noted that one Massachusetts case had applied sections 11H and 11I to conduct occurring outside of the United States, but the court in that case stated that it did not reach the issue of extraterritoriality because neither side raised the issue. O'Connell v. Chasdi, 400 Mass. 686, 689 n.3 (1987).

5

Here, c. 151B is devoid of any language indicating a legislative intent that it apply outside the United States – let alone to a British citizen working in Hong Kong for a Hong Kong company. See M.G.L. c. 151B. Accordingly, relying upon the federal court's analysis, c. 151B would not apply to this case. This conclusion is in line with guidance from the EEOC that "[i]ndividuals who are not U.S. citizens are not protected by U.S. EEO laws when employed outside the U.S. or its territories." See E.E.O.C., Policy Guidance on Employee Rights When Working for Multinational Employers (Apr. 28, 2003) (emphasis added).

The presumption against extraterritorial application of state statutes has also been applied to preclude a claim under the Massachusetts Payment of Wages Act. Hadfield v. A.W. Chesterton Co., No. 108426 2009 Mass. Super. LEXIS 230 (Mass. Super. Ct. Sep. 15, 2009). In Hadfield, the Court held that with no express legislative intent to rebut the presumption against extraterritorial application, the Massachusetts Wage Act could not apply to an Australian plaintiff who worked in Africa. The plaintiff in Hadfield argued that the Massachusetts Wage Act should apply because the decision not to pay plaintiff earned vacation time occurred in Massachusetts and plaintiff's employment agreement contained a choice of law provision requiring application of Massachusetts law. 2009 Mass. Super. LEXIS 230 at *5. The Court rejected both arguments. Id. at * 5-6. The Court rejected plaintiff's first argument because several other courts applying state wage statutes "have found that it is the site of the plaintiff's work that determines where the relevant conduct occurred, not where managerial decisions are made." Id. (citing Priyanto v. M/S Amsterdam, 2009 U.S. Dist. LEXIS 7849 at *7 (C.D. Cal. Jan. 23, 2009) ("Courts interpreting other states' wage laws have . . . focused on the situs of an employee's work in determining if a wage law applies, not where managerial decisions, actions, or inactions occur"); Mitchell, 2005 WL 1159412, at *3-4 (declining to apply Ohio wage statute to plaintiff who worked in

Pennsylvania, despite plaintiff's allegation that wrongful decision not to pay overtime occurred in Ohio)). The Court rejected plaintiff's second argument concerning the choice of law provision finding that the provision did not apply to a wage act claim and, further, a choice of law provision did not defeat the presumption against extraterritorial application of state wage statutes. Id. at *6.

Thus, c. 151B should not apply to Plaintiff, who is a citizen of the United Kingdom and was at all relevant times working and living in Hong Kong for a Hong Kong company. Furthermore, Plaintiff's employment agreement states that it is governed by Hong Kong, not Massachusetts law. As a result, Plaintiff's claims under Massachusetts law should be dismissed for failure to state a claim upon which relief can be granted.

### B. Under Massachusetts Choice Of Law Principles, c. 151B Is Still Inapplicable.

Even if there was no presumption against the application of c. 151B extraterritorially, choice of law principles also mandate dismissal of Plaintiff's Massachusetts law claims. In a recent Massachusetts Superior Court decision the Court acknowledged the presumption against the extraterritorial application of the Massachusetts Wage Act, but, in the absence of controlling appellate court precedent applying the presumption to the Wage Act, instead relied upon choice of law principles in determining whether the Wage Act applied to a U.S. citizen working outside the U.S.; Lockley, 2019 Mass. Super. LEXIS 552, *4 ("using a choice of law analysis, this Court concludes that Massachusetts has insufficient connection with either party or the conduct at issue to warrant the application of the Wage Act."). Even if the presumption against extraterritorial application did not apply, and this Court applies Massachusetts choice of law principles, Plaintiff is still not afforded the protections of c. 151B.

In the first instance, "where the parties have expressed a specific intent as to the governing law, Massachusetts courts generally uphold the parties' choice." Taylor v. Eastern Connection

7

Operating, Inc., 465 Mass. 191, 195 (2013); see also Restatement § 187(1), comment c.  Here, it is undisputed that the parties chose Hong Kong law to apply, as explicitly set forth in Plaintiff's Employment Agreement.  See Exhibit A to Complaint.  Given the parties' expressed specific intent and agreement that the relationship be construed in accordance with Hong Kong law, c. 151B and Massachusetts common law should not apply.

Although it is not necessary for the Court to look beyond the intent of the parties here, in cases in which the parties' intent is not clear, Massachusetts courts further examine which jurisdiction has the most significant relationship with the parties and the employment relationship. Dow, 83 Mass. App. Ct. at 757 – 758; Lockley, 2018 Mass. Super. Ct. LEXIS 552 *8-10. Under this analysis, Plaintiff fares no better. In determining the appropriate choice of law, the courts distinguish between contract claims and tort claims and generally analyze statutory employment claims brought by individuals as a tort action rather than a contract claim.  See Melia v. Zenhire, Inc., 462 Mass. 164, 175, (2012) ("If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."); Rickel v. C.I.R., 900 F.2d 655, 662 (3d Cir. 1990) (claim for lost wages due to age discrimination was "more analogous to a personal injury tort than a breach of contract claim" because "such a suit alleges the violation of a duty owed the plaintiff by the defendant employer which arises by operation of the Act."); Pesti & v. CIR., 912 F.2d 145, 150 (6th Cir. 1990) (claim for lost wages under ADEA was more like a tort than a contractual claim).

With respect to tort claims, the following contacts are considered:

> (a) the place where the injury occurred; (b) the place where the conduct causing the injury occurred; (c) the domicile, residence, nationality, place of incorporation and place of business of the

parties; and (d) the place where the relationship, if any, between the parties is centered.

Jacobs v. Cider Mill Farms Co., No. CIV.A. 99-40210, 2003 U.S. Dist. LEXIS 27947, at *9 (D. Mass. Feb. 4, 2003). These contacts are to be evaluated according to their relative importance with respect to the particular issue. Id. (citing Restatement (Second) of Conflict of Laws § 145(2)). Importantly, in tort actions the law of the place of injury controls unless another state has a more significant relationship with the occurrence and with the parties. Cosine v. Whiten Machine Works, Inc., 417 Mass. 643, 646-47 (1994). Moreover, "when injury occurs in a single state, the place of injury takes on particular significance in the choice-of-law determination because 'persons who cause injury in a state should not ordinarily escape liabilities imposed by the local law of that state on account of the injury.'" Telford P. Iron World Mfg., LLC, 680 F. Supp. 2d 337, 342 (D. Mass. 2010) (citing Restatement § 145(2) (affirming that the appropriate inquiry regarding application of Massachusetts Wage Act is whether the employee worked in Massachusetts)); See Hadfield v. A.W. Chesterton Co., No. 108426 2009 Mass. Super. LEXIS 230 (Mass. Super. Ct. Sep. 15, 2009); Litz v. Saint Consulting Group, 2012 U.S. Dist. LEXIS 20586 at *2 ("the proper inquiry is whether the employee worked in Massachusetts, not whether the employer is based in Massachusetts.").

Here, Hong Kong clearly has the most significant relationship with the parties and the employment relationship. First, Plaintiff admits she lived and worked in Hong Kong during her employment. Compl. ¶ 21, Exhibit A. Further, Plaintiff was employed by WMHK, a Hong Kong entity, not WMC. Exhibit A to Complaint. Further still, as Plaintiff admits she worked in Hong Kong and that her employment was terminated in Hong Kong, the alleged discriminatory conduct occurred in Hong Kong. See generally Complaint.

Finally, the above factors must be considered in light of the more general choice of law principles, including "the needs of the interstate and international systems." Restatement (Second) Conflict of Laws § 6. In Lockley, the court stated:

> the application of Massachusetts law to employment that occurs entirely within the Bahamas would nevertheless intrude on the domestic affairs of that foreign country, which is a relevant consideration.

2018 Mass. Super. LEXIS 522, *10-11. Similarly, here, this general choice of law principle weighs heavily in favor of Hong Kong law, as applying Massachusetts law to employment that occurs in Hong Kong would intrude on the affairs of that foreign jurisdiction.

Accordingly, based on both the presumption against extraterritorial application and choice of law principles, c. 151B should not apply and Plaintiff's claims under Massachusetts law should be dismissed.

### III.     If This Court Applies Hong Kong Law, Plaintiff's Claims Fail As A Matter Of Law.

As Massachusetts law is inapplicable, Plaintiff must pursue her claims under Hong Kong law. Applying Hong Kong law, Plaintiff's claims must be dismissed.

#### A.     Hong Kong District Court Has Exclusive Jurisdiction Over Discrimination / Harassment Claims Under Hong Kong Laws.

Chan has not specified what Hong Kong laws allegedly apply to her Complaint. The Defendants assume from the context that she is referring to the Sex Discrimination Ordinance (Chapter 480 of the Laws of Hong Kong, the "**SDO**"), the Disability Discrimination Ordinance (Chapter 487 of the Laws of Hong Kong, the "**DDO**"), the Family Status Discrimination Ordinance (Chapter 527 of the Laws of Hong Kong, the "**FSDO**"), and the Race Discrimination Ordinance (Chapter 602 of the Laws of Hong Kong, the "**RDO**").

10

According to all four of these anti-discrimination ordinances, the Hong Kong District Court has <u>exclusive</u> jurisdiction over any discrimination, victimization and harassment claims in the employment field. Section 76 of the SDO states that:

> (1) A claim by any person (the claimant) that another person (the respondent)-(a) has committed an act of discrimination against the claimant which is unlawful by virtue of Part 3 or 4 … (c) has committed an act of sexual harassment against the claimant which is unlawful by virtue of Part 3 or 4. . . may be made the subject of civil proceedings . . . .
> (3) Proceedings under subsection (1) shall be brought in the District Court …"

The same statutory language concerning the exclusive jurisdiction of the Hong Kong District Court applies in all four Hong Kong anti-discrimination ordinances. <u>See</u> section 72(1) of the DDO, section 54(1) of the FSDO, and section 70 of the RDO.

In the case of <u>Dr Alice Li Miu Ling v Dr Thomas Wong Kwok Shing</u> [2009] HKCU 514 (HCA 155/2006, 6 April 2009), the claimant's statement of claims regarding, *inter alia*, sexual harassment was struck out in the Hong Kong Court of Instance (High Court) as that part of the claim was within the exclusive jurisdiction of the Hong Kong District Court. Similarly, in the case of <u>Tadjudin v Bank of America, National Association</u>, [2009] 4 HKLRD 662, the claimant filed the statement of claim in the Hong Kong Court of First Instance alleging, *inter alia*, the defendant's breach of implied term not to commit any unlawful act of discrimination against the claimant. The Master struck out that paragraph of the statement of claim by reason that the breach of it was within the exclusive jurisdiction of the Hong Kong District Court.

Therefore, applying the case law and section 76(3) of the SDO, section 72(3) of the DDO, section 54(3) of the FSDO, and section 70(3) of the RDO, Count I through Count IV of the present Complaint should be dismissed in accordance with Hong Kong law because the claims fall within the exclusive jurisdiction of the Hong Kong District Court.

### B. The Majority Of Plaintiff's Claims Are Also Barred By The Statute Of Limitations Under Hong Kong Law.

Even if Plaintiff had brought her claims in the proper court, the majority of her claims are barred by the applicable statute of limitations and, thus, should be dismissed. Section 86 of the SDO states in relevant part:

> (1) The District Court shall not consider a claim under section 76 unless proceedings in respect of the claim are instituted before the end of the period of 24 months beginning-
> (a) when the act complained of was done; or
> (b) if there is a relevant report in relation to that act, with the day on which the report is published or made available for inspection under section 73, whichever is the later.

(emphasis added).[5]

The same statute of limitations applies in all four Hong Kong anti-discrimination ordinances. See section 82(1) of the DDO, section 64(1) of the FSDO, and section 80 of the RDO.

Although Chan has failed to particularize a number of incidents that she claims are discriminatory in her Complaint, it appears that the majority of the incidents she references, which were separate and distinctive actions, occurred more than two years before the date of her present complaint filed on July 24, 2019. Any claims regarding any such incidents which occurred more than two years ago are time-barred under Hong Kong law.

Accordingly, even if the Court applies Hong Kong law, Plaintiff's claims fail because they are either time-barred, or Hong Kong courts have exclusive jurisdiction over the claims.

---

[5] Subsection (b) above is irrelevant in this present context, as no report has alleged to have been made by the Hong Kong Equal Opportunities Commissions pursuant to section 73 of the SDO in the present case.

### IV. Under Massachusetts Choice Of Law Principles, Plaintiff's Tort Claims Against WMC and Mr. Argyle Should Also Be Decided Under Hong Kong Law.

In addition to statutory claims under c. 151B, Plaintiff has also asserted common law tort claims for interference with advantageous relationships against Mr. Argyle and WMC. Based on Massachusetts choice of law principles, these claims must also be adjudicated under Hong Kong law.

Indeed, as discussed in detail above, in tort actions the law of the place of injury controls unless another state has a more significant relationship with the occurrence and with the parties. Cosine v. Whiten Machine Works, Inc., 417 Mass. 643, 646-47 (1994). "When injury occurs in a single state, the place of injury takes on particular significance in the choice-of-law determination because 'persons who cause injury in a state should not ordinarily escape liabilities imposed by the local law of that state on account of the injury.'" Telford P. Iron World Mfg., LLC, 680 F. Supp. 2d 337, 342 (D. Mass. 2010) (citing Restatement § 145).

Plaintiff alleges that WMC and Mr. Argyle interfered with her advantageous relationship with her employer by causing her employment to be terminated. Plaintiff lived and worked in Hong Kong. Plaintiff was also terminated from her employment in Hong Kong. The site of the injury is clearly Hong Kong and, thus, under Massachusetts choice of law, Hong Kong law must apply to Plaintiff's tort claims. Id.

### V. Plaintiff's Claims Should Be Dismissed Based on the *Forum Non Conveniens* Doctrine.

Even if Plaintiff's claims were not subject to dismissal for the reasons stated above, since Hong Kong law (and not Massachusetts law) applies to Plaintiff's claims, all claims against all Defendants should also be dismissed based on the doctrine of *forum non conveniens*. The *forum non conveniens* doctrine is flexible and the central focus of inquiry is convenience. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249 (1981); Iragorri v. Int'l Elevator, Inc., 203 F.3d 8 (1st

Cir. 2000). When the forum chosen by the plaintiff is not the home forum, there is no assumption that the chosen forum is convenient. See Piper, 454 U.S. at 255-56 ("Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.")  Defendants seeking dismissal on grounds of *forum non conveniens* must show that (1) "an adequate alternative forum exists," and (2) "considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum." Iragorri, 203 F.3d at 12. *See also* Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 423-24 (1st Cir. 1991). Defendants need not provide extensive proof, but enough information to enable the District Court to balance the parties' interests. Piper, 454 U.S. at 258.

An alternative forum exists if the law of that country addresses the types of claim that the plaintiff has brought, and the defendant is amenable to service of process there.[6] Iragorri, 203 F.3d at 12; see also Piper, 454 U.S. at 254 n. 22 ("dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter of the dispute").  Hong Kong provides an adequate alternative forum because its laws prohibit discrimination in the workplace and further prohibit tortious interference with advantageous relationships.[7]

Moreover, a forum is deemed convenient after a balancing of private interests and public factors bearing on the case leads the Court to conclude that a plaintiff's chosen forum imposes a heavy burden on the defendant and court. The private interests include relative ease of access to sources of proof, availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses. See Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508

---

[6] WMHK is a Hong Kong entity and, thus, Plaintiff would be entitled to make service of process upon it in Hong Kong.  Defendants further note that pursuant to Order 11 Service of Process, the Plaintiff would be able to achieve service of process upon Mr. Argyle.

[7] While certain statutory claims brought by Plaintiff are time-barred under Hong Kong law, the tort claims for interference with advantageous relationships are not time-barred.  Accordingly, Hong Kong remains an adequate forum.

(1947); Piper, 454 U.S. at 258-60; Iragorri, 203 F.3d at 12; Mercier, 981 F.2d at 1354. The Court should also "pay heed to all other practice problems that make trial of a case easy, expeditious and inexpensive." Iragorri, 203 F.3d at 12. The fact that the party moving for dismissal on *forum non conveniens* grounds is local is not dispositive. See e.g. Snofrost, 353 F. Supp. 3d at 109 (finding Sweden was a more appropriate forum for case involving Massachusetts defendant when the gravity of the case lay in Sweden); Iragorri, 203 F.3d at 17 (upholding dismissal of case on basis of *forum non conveniens* where despite the defendant being incorporated in Maine the witnesses and evidence lay in Colombia); Windt v. Qwest Communs. Int'l, Inc., 529 F.3d 183, 198 (3rd Cir. 2008) (affirming New Jersey District Court's dismissal on forum non conveniens grounds when two of the defendants lived in New Jersey but the dispute was primarily based out of business relationships in the Netherlands); Bautista v. Cruise Ships Catering & Serv. Int'l, N.V., 350 F. Supp. 2d 987, 991 (S.D. Fla. 2003) (finding the fact that one defendant was a Florida company and thus certain relevant records would be in Florida did not outweigh the fact that much of the other evidence and witnesses were abroad).

Here, Plaintiff lived and worked in Hong Kong. Thus, many of the witnesses and much of the evidence will be located in Hong Kong. See Howe v. Goldcrop, Invs., Ltd., 946 F.2d 944, 952 (1st Cir. 1991) (stating that "the live testimony of witnesses for the purposes of presenting demeanor evidence is essential a fair trial"). Further, as stated above, Hong Kong law is to be applied. Mercier, 981 F.2d at 1357 (explaining that the problem of applying foreign law can be one of several factors counseling dismissal under *forum non conveniens*); see also Shinya Imamura v. GE, 371 F. Supp. 3d 1 (D. Mass. 2019) (holding that dismissal under *forum non conveniens* was appropriate because of difficulty accessing evidence in Japan, difficulty of compulsory process, and the lack of a strong local interest in the dispute); Snofrost AB v. Hakansson, 353 F. Supp. 3d

99 (D. Mass. 2018) (Swedish courts were deemed a more convenient forum because they had personal jurisdiction over the defendants, all material witnesses were located there, and events underlying the action occurred in Sweden).  For these reasons, Plaintiff's Complaint should be dismissed on the basis of *forum non conveniens.*

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety, with prejudice.

Dated:  September 24, 2019

> Respectfully Submitted,
>
> Defendants,
> WELLINGTON MANAGEMENT COMPANY LLP and CHARLES ARGYLE,
>
> By their attorneys,
>
> */s/ Jamie L. Kessler*
> Stephen T. Paterniti, BBO# 564860
> Jamie L. Kessler, BBO# 681867
> JACKSON LEWIS P.C.
> 75 Park Plaza, 4th Floor
> Boston, Massachusetts  02116
> TELE: (617) 367-0025
> FACSIMILE: (617) 367-2155

**CERTIFICATE OF SERVICE**

  This hereby certifies that on September 24, 2019, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                   */s/ Jamie L. Kessler*
                   Jackson Lewis, PC

4814-1814-2374, v. 1