UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GIGI KAI ZI CHAN,

                    Plaintiff,

v.                                                        Civil Action No: 1:19-cv-11605-WGY

WELLINGTON MANAGEMENT COMPANY LLP
and CHARLES ARGYLE,

                    Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Defendants, a Massachusetts-based investment management firm and an individual residing in Massachusetts, seek dismissal primarily (and implausibly) on the grounds that it would be prohibitively inconvenient for them to litigate this action in their home state of Massachusetts. As set forth below, these Defendants fall far short of carrying their "heavy" burden to show that considerations of fairness and convenience "strongly" favor litigating this action in Hong Kong—*a forum where none of the parties resides*. There is therefore no basis in this case to disturb the "strong presumption in favor of a plaintiff's forum choice." See Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 719 (1st Cir. 1996) (affirming decision of this Court not to dismiss on *forum non conveniens* grounds in favor of Hong Kong forum).

Defendants' remaining arguments—which, even if successful, would only result in a partial dismissal of the Complaint—are likewise meritless. Defendants' "extraterritoriality" arguments are based upon an egregious misquotation of the Massachusetts Supreme Judicial Court; their statute of limitations defense ignores clear First Circuit precedent requiring such defenses to be based on specific allegations rather than guesswork; their reading of the governing

law clause in the Employment Agreement is plainly overbroad; and their "exclusive jurisdiction" argument is a gross misreading of the Hong Kong antidiscrimination ordinances that would not in any event have power to affect this Court's jurisdiction. Lastly, conspicuously absent from Defendants' choice-of-law arguments is any indication of a conflict of laws justifying the Court's involvement in the question, much less any reason for resolving an inherently fact-intensive inquiry at the pleadings stage.

Defendants' motion to dismiss should be denied in its entirety.

## BACKGROUND

This is an employment dispute having substantial and significant ties to the Commonwealth of Massachusetts. Defendant Wellington Management Company LLP ("Wellington"), is an investment management firm headquartered in Boston with more than one trillion dollars of assets under management. Compl. ¶ 8. While Plaintiff was residing in the United States, Wellington recruited Plaintiff to work as a Portfolio Manager in its Global Equity Portfolio Management Group. Compl. ¶¶ 9, 11. After attending numerous in-person interviews at Wellington's Boston headquarters, Plaintiff received an employment offer from Wellington in April 2014 to work in its Hong Kong "office"—then known as Wellington Global Investment Management Ltd. See Compl. Ex. A. (Doc. 1-3). Wellington explained to Plaintiff that she would have a direct reporting line to the Boston headquarters, and that she would be expected to travel to Boston frequently. Compl. ¶ 16. Plaintiff's direct supervisor was Charles Argyle, a Massachusetts resident and Wellington partner. Compl. ¶¶ 3, 19.

Wellington, unfortunately, was not the bastion of diversity and inclusiveness that Plaintiff had been led to believe. See Compl. ¶¶ 12, 14, 22. She soon found herself subjected to disparate treatment on the basis of sex and national origin. See Compl. ¶¶ 22–53. Plaintiff complained of

this conduct to Wellington's Boston-based management team, including Defendant Argyle and two of Wellington's three Managing Partners. Compl. ¶¶ 33, 35, 51. But this only made matters worse. Plaintiff was subjected to a series of retaliatory acts, culminating in her termination on September 12, 2017. See Compl. ¶¶ 31–53, 56.

Defendants seek to dismiss Plaintiff's Massachusetts-law claims on the grounds that M.G.L. c. 151B cannot apply to conduct that occurred abroad, and that under Massachusetts choice-of-law principles, Hong Kong law governs Plaintiff's remaining claims. Defendants further argue that "the majority" of Plaintiff's claims under Hong Kong law are time-barred; that a provision in Plaintiff's Employment Agreement (Exhibit A to the Complaint) mandates the application of Hong Kong law; and that Hong Kong law vests "exclusive jurisdiction" over employment discrimination claims in the Hong Kong District Court. Finally, Defendants argue that this action should be dismissed on grounds of *forum non conveniens*. Each of Defendants' arguments is unavailing.

## ARGUMENT

I.  Defendants Fail to Carry their Heavy Burden to Disturb Plaintiff's Forum Choice.

The First Circuit has repeatedly emphasized that the doctrine of *forum non conveniens* is designed only to avoid having a trial in a place "so 'inconvenient'" that transfer is needed to avoid "serious unfairness." Howe v. Goldcorp Investments, Ltd., 946 F.2d 944, 950 (1st Cir. 1991) (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249 (1981)); see also Nowak, 94 F.3d at 719. As stated above, there is a "strong presumption" in favor of the plaintiff's choice of forum, Nowak, 94 F.3d at 719, and the plaintiff's choice of forum should "rarely be disturbed." Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 424 (1st Cir. 1991) (Mercier I) (quoting Gulf Oil Co. v. Gilbert, 330 U.S. 501, 506–07(1947)). The party moving for dismissal bears a "heavy

burden" to establish both that (1) an adequate alternative forum exists and that (2) "considerations of convenience and judicial efficiency *strongly* favor litigating the claim in the second forum." Adelson v. Hananel, 510 F.3d 43, 52 (1st Cir. 2007) (quoting Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 15 (1st Cir. 2000)) (emphasis added in Adelson). For example, in Adelson, the First Circuit reversed a District Court's decision to dismiss in favor of an Israeli forum, explaining that where the public and private interest factors were found to be in "equipoise," the District Court should have concluded that the defendant did not overcome the presumption in favor of the plaintiff's forum choice. See 510 F.3d at 53–54.

In this case, Defendants have failed to demonstrate the adequacy of Hong Kong as an alternative forum, and have entirely failed to carry their "heavy burden" to show that litigating in their home state is so seriously inconvenient as to overcome the presumption in favor of Plaintiff's forum choice. Given that the facts alleged in Plaintiff's Complaint "plausibly suggest"[1] that Massachusetts is the home of both Defendants and many of the key witnesses, Defendants entirely fail to show that trial in Plaintiff's chosen forum would "establish . . . oppressiveness and vexation to [the] defendant[s] . . . out of all proportion to plaintiff's convenience." See Piper Aircraft Co., 454 U.S. at 242. Accordingly, consistent with past decisions of this Court, Plaintiff's choice of forum should be left undisturbed.

A.   Defendants Fail to Show that Hong Kong is an Adequate Alternative Forum

Defendants bear the burden to establish all elements of *forum non conveniens*, including that their proposed alternative forum of Hong Kong is both available and adequate. Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1349–51 (1st Cir. 1992) (Mercier II). The "availability" prong is generally established if the defendant is amenable to process in the alternative forum, id.

---

[1] See Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009).

4

at 1349, and "all parties can come within that forum's jurisdiction," <u>Mercier I</u>, 935 F.2d at 424. In this case, Defendants half-heartedly attempt to satisfy this element by averring in a single sentence in a footnote that Argyle can be served in Hong Kong via Order 11 Service of Process. <u>See</u> Def. Br. at 14 n.6. Defendants fail to mention service of Defendant Wellington entirely, however,[2] and fail to make any showing that they can be brought before the jurisdiction of the Hong Kong courts, as they do not demonstrate that they have any direct connection with Hong Kong that would give Hong Kong courts personal jurisdiction over them.

As to the adequacy prong, Defendants' only showing is a short averment in their brief that Hong Kong recognizes claims of workplace discrimination and tortious interference with advantageous relationships. <u>See</u> Def. Br. at 14. Again, this is a wholly inadequate showing from the parties who bear the burden to justify dismissal. Defendants have not demonstrated that Hong Kong courts would take cognizance of this dispute, which does not involve any Hong Kong residents. <u>Cf.</u> <u>Mercier I</u>, 935 F.2d at 426 (finding affidavit of Turkish lawyer insufficient to carry defendant's burden to show Turkey would take cognizance of dispute involving no Turkish parties). Most crucially, Defendants have failed to demonstrate that Plaintiff could pursue her employment discrimination claims in Hong Kong. As of this date more than two years have passed since Plaintiff was wrongfully fired, which raises the risk that <u>all</u> employment discrimination claims decided under Hong Kong law would be barred by the two-year statute of limitations[3] if Plaintiff were forced to re-file this action. Defendants fail to offer any proof that

---

[2] Defendants' argument that Wellington Management Hong Kong Ltd. ("WMHK") may be served in Hong Kong is a red herring, as WMHK is not a party to this action.

[3] <u>See</u> Sex Discrimination Ordinance, Cap. 480, § 86(1) (H.K.), available at https://www.elegislation.gov.hk; <u>see also</u> Disability Discrimination Ordinance (2016) Cap. 487 § 82 (1) (H.K); Family Status Discrimination Ordinance (2016) Cap. 527 § 64(1) (H.K.); Race Discrimination Ordinance (2016), Cap. 602 § 80 (H.K.).

Hong Kong law would toll the limitations period under these circumstances. See id.; see also Marriott v. Sedco Forex Int'l Resources, Ltd., 827 F. Supp. 59, 70 (D. Mass. 1993) (Young, J.) (defendant failed to demonstrate India was adequate alternative forum where, *inter alia*, defendant failed to establish that plaintiffs' claims would not be time-barred, as it was unclear if Indian law allowed a defendant to waive the statute of limitations defense).[4]

B. Defendants Fail to Show that the *Gulf Oil* Factors Weigh—Much Less, Strongly Weigh—in Favor of Dismissal.

A defendant proposing *forum non conveniens* dismissal additionally bears the "heavy" burden to show that the applicable factors of convenience and fairness "strongly" favor litigating the claim in the second forum. Adelson, 510 F.3d at 52. In this case, the Gulf Oil factors identified by the Supreme Court to guide this analysis[5] weigh decidedly in Plaintiff's favor, as

---

[4] Alternatively, if this Court were to find dismissal warranted, at a minimum any dismissal would need to be attached to several express conditions to ensure the adequacy of the alternative forum, including: Defendants' submission to the jurisdiction of Hong Kong forum, waiver of their limitations defense, and agreement to satisfy any judgment; on Hong Kong courts taking cognizance of a re-filed action and accepting such waiver; and on the condition that Defendants make all evidence available to the Hong Kong forum that would have been available in this Court. See Mercier II, 981 F.2d at 1349, 1358 (affirming dismissal conditioned on (1) acceptance of jurisdiction by the Turkish courts; (2) defendant's submission to Turkish jurisdiction; (3) defendant's waiver of any statute of limitations defense, and acceptance of the waiver by the Turkish court; and (4) defendant's agreement to satisfy any Turkish court judgment; but requiring 5th condition that defendant make any evidence available in Turkish proceedings that would have been available in the District of Massachusetts.). In this case, Defendants' failure to offer any assurances as to these concerns to ensure the procedural adequacy of a Hong Kong forum is reflective of the overall lack of seriousness of their *forum non conveniens* motion.

[5] "The 'private interest' criteria include:

> the comparative convenience of the parties' access to sources of proof; the availability of compulsory process and the cost of securing the attendance of witnesses; the possibility of a view of the premises, if a view would be appropriate; and an evaluation of 'all other practical problems that make trial of a case easy, expeditious and inexpensive.'"

Mercier II, 981 F.2d at 1354 (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506–07 (1947)). The "public interest" criteria include:

> the administrative difficulties resulting from court congestion in the plaintiff's chosen forum; the "local interest in having localized controversies decided at home"; the interest in having the trial of a case conducted in a forum that is at home with the governing law; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of imposing jury duty on citizens in an unrelated forum.

Id. (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241 n.6 (1981).

the facts alleged in the Complaint strongly suggest that the key witnesses and evidence are located in Massachusetts, and Massachusetts maintains an important public interest in this litigation. Further, even if this Court later determines that it must apply foreign law, that factor alone does not justify dismissal under governing precedent. Because Defendants fail to show that the balance of considerations weighs in their favor, much less "strongly" in their favor, as is their burden, Defendants' motion should be denied.

1. The Key Witnesses and Evidence are Local

On a motion to dismiss under Rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Sergentakis v. Channell, 272 F. Supp. 3d 221, 224 (D. Mass. 2017) (quoting Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007)); see also Shi v. New Mighty U.S. Tr., 918 F.3d 944, 948 (D.C. Cir. 2019) (on motion to dismiss for *forum non conveniens*, "this court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the nonmoving party"); Accent Delight Int'l Ltd. v. Sothebys, No. 18-CV-9011 (JMF), -- F. Supp. 3d. ---, 2019 WL 2602862, at *1 n.1 (S.D.N.Y. Jun. 25, 2019) (same).

In this case, Defendants' argument on the Gulf Oil factors is based on a single-sentence, conclusory allegation that "many of the witnesses and much of the evidence will be located in Hong Kong." Def. Br. at 15. This "showing"—which fails to identify any specific facts or allegations in support—does not support a finding that this action will be inconvenient if litigated in this forum. Much to the contrary, the well-pled allegations in Plaintiff's Complaint, together with the reasonable inferences that must be drawn therefrom, plausibly suggest that the key evidence and witnesses in this case are located in Massachusetts.

The Parties. Defendant Argyle, who was Plaintiff's direct supervisor, is a Massachusetts resident. Compl. ¶¶ 3, 19; Ex. A (Doc. 1-3) at 1. Defendant Wellington is headquartered at One Financial Center in Boston, and is a Massachusetts citizen by virtue of the citizenship of one or more of its partners. Compl. ¶¶ 2, 4. Plaintiff resides not in Hong Kong, but in France. Compl. ¶ 1.

Venue is Proper. Defendants do not contest that venue is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in Massachusetts. See Compl. ¶ 6.[6]

Plaintiff's Hiring. Plaintiff attended numerous in-person job interviews at Wellington's Boston office. Compl. ¶ 11. Wellington told Plaintiff that she would have a direct reporting line to Boston and would be required to travel to Boston frequently. Compl. ¶ 16. Wellington refers to its global locations as "offices" rather than as separate businesses, and represented to Plaintiff that the offices operated as a single integrated entity, and that virtually all corporate decision making was exercised from Wellington's Boston headquarters. Compl. ¶¶ 16–17. Plaintiff's offer letter also expressly stated that she would be required to do work for Wellington. Compl. ¶ 18. Plaintiff's observations confirmed that Wellington operated as a single integrated entity, as the Hong Kong office was incapable of conducting any type of business without significant involvement of Wellington's Boston headquarters. Compl. ¶ 20.

Plaintiff Complains of Discrimination. During her employment Plaintiff reported directly to Wellington's Boston office and traveled to Boston frequently. Compl. ¶ 21. Plaintiff directly

---

[6] Defendants have waived any objection to the contrary by failing to raise it in their initial Rule 12 motion. Fed. R. Civ. P. 12(h). Wellington could have negotiated and included a forum selection clause in Plaintiff's employment agreement, but did not. In fact, the Employment Agreement specifically provides that the parties submit to the "**non**exclusive jurisdiction of the Hong Kong courts and Labour Tribunal." Compl. Ex. A, at 5 ¶ 18 (emphasis added).

contacted Wellington's three managing partners, Brendan Swords, Jean Hynes, and Philip Perelmuter, to complain of discrimination, and two of her conversations with Wellington's managing partners occurred in Boston. Compl. ¶¶ 33–34.

Massachusetts Resident Argyle Engages in Discrimination and Retaliation. Argyle blocked Plaintiff from managing a fund that she was uniquely situated to run because he was concerned with Plaintiff's "commitment" to the firm. Compl. ¶ 47. In November 2016, when Plaintiff was nearly eight months pregnant, Argyle berated Plaintiff for more than an hour about what he termed her "continual discontent," saying, "why should we go out and market something" if the fund manager is "very clear about how unhappy they are at this firm and we're not actually convinced whether she will still be here in six months." Compl. ¶ 49. Argyle acted to terminate Plaintiff's employment in September 2017. Compl. ¶¶ 56–57, 60.

In summary, the Complaint plausibly suggests that several of the most crucial witnesses, including Defendant Charles Argyle and the managing partners of Defendant Wellington, reside in Massachusetts or at the very least have significant connections with this forum where their business is headquartered. It follows that documentary proof, including emails and other communications as to Wellington's decision making, will be located at or accessible from Wellington's Boston headquarters. In light of these considerations, Defendants cannot show that the Gulf Oil private-interest factors of access to sources of proof, and availability of compulsory process and the cost of securing the attendance of witnesses, "strongly" weigh in favor of dismissal.

2.   <u>Defendants Fail to Show that the Public Interest Factors Support Dismissal.</u>

Defendants argue that Hong Kong law applies in this case, and that the application of Hong Kong law weighs in favor of dismissal. For the reasons discussed below, the choice of law question is unnecessary and premature. Even if this Court ultimately applies Hong Kong law to Plaintiff's claims, however, First Circuit precedent is clear that this factor alone is insufficient to justify a *forum non conveniens* dismissal. As the First Circuit noted, in affirming a decision of this Court not to dismiss an action in favor of a Hong Kong forum, "the task of deciding foreign law [is] a chore federal courts must often perform." <u>Nowak</u>, 94 F.3d at 721 (quoting <u>Mercier II</u>, 981 F. 2d at 1357) (quoting <u>Manu Int'l S.A. v. Avon Prods., Inc.</u>, 641 F.2d 62, 63 (2d Cir.1981)); <u>see also</u> <u>Marriott</u>, 827 F. Supp. at 68 (Young, J.) ("the need to apply foreign law is not in itself reason to apply the doctrine of *forum non conveniens*,") (quoting <u>Schexnider v. McDermott Int'l, Inc.</u>, 817 F.2d 1159, 1163–64 (5th Cir. 1987)). That "chore" would seem to be especially unburdensome here, as Defendants concede that the conduct complained of would be unlawful under *both* Massachusetts and Hong Kong law. Thus, just as in <u>Nowak</u>, this factor (which as explained below is not even established) should be given "little weight." 94 F.3d at 721.

On the other hand, Massachusetts has a strong public interest in this dispute as the home state of the business defendant, Wellington, and of the individual defendant, Argyle, as "[t]he defendant's home forum always has a strong interest in providing a forum for redress of injuries caused by its citizens." <u>Rhodes v. ITT Sheraton Corp.</u>, No. CIV.A. 97-4530-B, 1999 WL 26874, at *5 (Mass. Super. Ct. Jan. 15, 1999) (refusing to dismiss lawsuit by British citizen for injury that occurred in Saudi Arabia) (quoting <u>Reid-Walen v. Hansen</u>, 933 F.2d 1390, 1400 (8th Cir. 1991). Massachusetts' state interest is further compounded by the fact that a significant part of

Defendants' alleged discriminatory acts were planned from and/or executed in the Commonwealth. See id. (noting state interest because "defendants' alleged negligence occurred at least in part in Massachusetts"). Trial in this Court will not, therefore, burden local residents with an entirely foreign controversy. Rather, it will serve the important public interest of holding Massachusetts residents accountable for brazen discrimination and retaliation that was planned from and executed in substantial part out of an office in Boston, against an employee whom they recruited to work for their Massachusetts-based business and sent abroad.

3.   Denial of the Motion Would be Consistent with this Court's Precedents.

In past cases, this Court has correctly applied the governing law to refuse *forum non conveniens* dismissal where the considerations did not overwhelmingly favor another forum. In Marriott, four seamen (one Massachusetts resident and three U.K. citizens residing in South Africa, two of whom were English and one Scottish) brought claims in this Court against a British Virgin Islands corporation for injuries sustained in India. After finding that India, South Africa, and England were inadequate alternative fora, this Court found that Scotland would have no greater access to sources of proof and no greater public interest in the litigation than Massachusetts, and refused dismissal. 827 F. Supp. at 68–72. In Boudreau v. Scitex Corp., Ltd., Civ. A. No. 91–13059–Y, 1992 WL 159667, at *4–5 (D. Mass Jun. 25, 1992), this Court refused to dismiss claims by a Massachusetts plaintiff who sued his former Israeli employer for breach of his employment contract. This Court noted that Israeli law would apply, that witnesses were located in Israel, and that many documents were located in Israel and would need to be translated from Hebrew, but found that the translation and travel expenses the defendant would be forced to bear from litigating in Massachusetts were "roughly equal" to the expense that would be necessitated if the plaintiff were forced to litigate in Israel. Id. at *5. Despite the logistical burden

11

on the defendant and the application of Israeli law this Court appropriately "defer[red] to the plaintiff's choice of forum, since that choice is to be disturbed only rarely." Id.

In summary, this Court should decline to dismiss because Defendants do not carry their burden to demonstrate that their alternative forum is available and adequate; because the convenience and fairness factors weigh in favor of this forum—not strongly against it—and because deference to Plaintiff's forum choice is consistent with past precedent of the First Circuit and of this Court.

II.    Defendants' Remaining Piecemeal Contentions are Premature and Without Merit.

As noted above, Defendants' remaining arguments would—even if accepted—only result in a partial dismissal of Plaintiff's Complaint. As set forth below, however, none of Defendants' arguments have merit, and the motion to dismiss should be denied in its entirety.

A.   Defendants' "Exclusive Jurisdiction" Argument is Meritless.

Defendants argue that the Hong Kong antidiscrimination ordinances contain an "exclusive jurisdiction" provision barring any other court in the world from adjudicating employment discrimination claims brought under the ordinances. This argument is wholly without merit. First, Defendants' cited cases at most state that for cases filed in the Hong Kong judicial system, claims brought under the antidiscrimination ordinances must be filed in the Hong Kong District Court rather than the Court of First Instance. Defendants provide no support whatsoever for their argument that this principle extends to a foreign court applying Hong Kong law. For this reason alone, Defendants' argument fails. Second, Defendants' textual reading of the antidiscrimination ordinances is a classic elephants-hiding-in-mouseholes[7] misformulation.

---

[7] See Whitman v. Am. Trucking Ass'ns, 531 U.S. 457, 468 (2001).

The ordinance quoted by Defendants, Section 76 of the Hong Kong Sex Discrimination Ordinance ("SDO"), states merely,

> Proceedings under subsection (1) shall be brought in the District Court but all such remedies shall be obtainable in such proceedings as, apart from this subsection and section 75(1), would be obtainable in the Court of First Instance.

Again, by its text this ordinance merely directs plaintiffs litigating within the Hong Kong system to file in one trial court rather than another. Defendants would read an "exclusive jurisdiction" clause into a statute that mentions neither exclusivity nor jurisdiction, a reading that is grossly overeager. Third, even if Defendants' textual reading were somehow accurate, a foreign statute is powerless to affect the jurisdiction of a United States court. Randall v. Arabian Am. Oil Co., 778 F.2d 1146, 1150 (5th Cir. 1985) ("We reject outright the notion that the law of a foreign country can unilaterally curtail the power of our federal courts to hear a dispute even though the dispute involves rights fixed by the laws of another nation."). In Randall, the Fifth Circuit rejected precisely the argument Defendants raise in this case, holding that Saudi Arabian statutes vesting "exclusive jurisdiction" to hear labor disputes in a Saudi labor commission could not deprive a U.S. federal court of jurisdiction to hear and resolve a labor dispute applying Saudi law as the rule of decision. See also Crider v. Zurich Ins. Co., 380 U.S. 39, 39–43 (1965) (holding that Alabama courts could resolve a dispute under Georgia law notwithstanding "exclusive jurisdiction" provisions of Georgia Workmen's Compensation Act).

### B.  The Statute of Limitations Defense Cannot Be Based on Guesswork.

Defendants' second argument is that this Court should dismiss "the majority" of Plaintiff's claims based on the two-year statute of limitations in Hong Kong's antidiscrimination ordinances, because "it appears" that "the majority of the incidents [Plaintiff] references . . . occurred more than two years before . . . July 24, 2019." Def. Br. at 12. Under First Circuit

precedent, a statute of limitations defense raised in a motion to dismiss cannot succeed unless the facts establishing the defense are clear on the face of the plaintiff's pleadings. Santana-Castro v. Toledo-Davila, 579 F.3d 109, 113 (1st Cir. 2009). Defendants cannot succeed at this juncture unless "the dates included in the complaint show that the limitations period has been exceeded." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008). "Review of the complaint . . . must 'leave no doubt' that the plaintiff's action is barred by the asserted defense." Blackstone Realty LLC v. F.D.I.C., 244 F.3d 193, 197 (1st Cir. 2001) (quoting LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir.1998)). In this case, where it merely "appears" to Defendants that "the majority" of events are time-barred, their statute of limitations defense lacks the requisite specificity and must fail.

C.   Choice of Law

Defendants raise a number of arguments as to choice of law, but fail to establish any need for this Court to determine the law to be applied at this juncture, as they point to no actual conflict between the laws of Hong Kong and Massachusetts. Absent some evidence of a need to adjudicate the choice of law, Defendants' motion fails to justify enmeshing this Court in a wasteful academic exercise. Defendants' attempts to shortcut this already needless exercise also fail, as the Employment Agreement does not dictate the law applicable to tort claims, and Massachusetts appellate courts have never held that Massachusetts statutes cannot apply abroad. Moreover, premature adjudication of this issue would be imprudent. In the event a conflict of laws later materializes, Massachusetts choice-of-law principles involve a complex balancing of factors for which discovery is necessary to provide the Court with enough information to conduct a proper analysis.

1.   The motion should be denied absent evidence of a conflict of laws.

The "initial task of a choice-of-law analysis is to determine whether there is an actual conflict between the substantive law of the interested jurisdictions." Ayyadurai v. Floor64, Inc., 270 F. Supp. 3d 343, 352 (D. Mass. 2017) (quoting Levin v. Dalva Bros., Inc., 459 F.3d 68, 73 (1st Cir. 2006)); accord Cohen v. McDonnell Douglas Corp., 389 Mass. 327, 332 n.7 (1983). Where the result would be unaffected and no material conflict exists between the law of two jurisdictions, it is not necessary for the court to make a formal choice of law. Fashion House, Inc. v. K mart Corp., 892 F.2d 1076, 1092 (1st Cir. 1989); Royal Bus. Grp., Inc. v. Realist, Inc., 933 F.2d 1056, 1064 (1st Cir. 1991); Okmyansky v. Herbalife Int'l of Am., Inc., 343 F. Supp. 2d 57, 61 (D. Mass. 2004), aff'd, 415 F.3d 154 (1st Cir. 2005). Absent any indication of a conflict, this Court may properly apply Massachusetts law to all issues in this case, notwithstanding the parties' choice-of-law disputes. See Lou v. Otis Elevator Co., 77 Mass. App. Ct. 571, 583 (2010) (affirming trial court's application of Massachusetts law to measure of damages in products liability case where parties identified no conflict between Massachusetts law and Chinese law). Defendants concede that Hong Kong law recognizes claims for tortious interference with an advantageous relationship; for discrimination on the basis of sex, disability, family status, and race; and for victimisation (i.e., retaliation).[8] Because Defendants have not identified any conflict between the laws of Massachusetts and Hong Kong with respect to any of Plaintiff's claims, this Court need not prematurely determine the substantive law that will ultimately provide the rule of

---

[8] See, e.g., Discrimination by way of Victimisation, Sex Discrimination Ordinance (2016) Cap. 480, § 9 (H.K.), available at https://www.elegislation.gov.hk. See also Disability Discrimination Ordinance (2016), Cap. 487 § 7 (H.K); Family Status Discrimination Ordinance (2016), Cap. 527 § 6 (H.K.); Race Discrimination Ordinance (2016), Cap. 602 § 6 (H.K.).

decision. Defendants' motion to dismiss Plaintiff's Massachusetts claims should be denied for this reason alone.

> 2.   The Employment Agreement Does Not State the Law Applicable to Tort Claims.

Defendants attempt to shortcut the choice of law question, and avoid having either to justify deciding the question or resolve it on the appropriate factors, by arguing that the words "this agreement is governed by and construed in accordance with Hong Kong laws" in Plaintiff's Employment Agreement mandate the application of Hong Kong law to Plaintiff's tort claims in this case. State and federal courts have squarely held that contractual terms nearly verbatim to these do not affect tort claims by an employee that arise incident to the employment contract. See Melia v. Zenhire, Inc., 462 Mass. 164, 175, (Mass. 2012) (applying New York choice of law rules, contract stating "this agreement shall be governed and construed in accordance with the laws of the State of New York" did not preclude application of Massachusetts Wage Act because this term "makes no reference to statutory causes of action"); Levesque v. Schroder Inv. Mgmt. N. Am., Inc., 368 F. Supp. 3d 302, 310 (D. Mass. 2019) (Agreement stating "[t]he Plan shall be governed by New York law" did not preclude application of Massachusetts Wage Act because the term did not "address statutory tort claims"); Berberian v. G-Form, LLC, No. CV 14-10422-JCB, 2014 WL 12700578, at *5 (D. Mass. Aug. 29, 2014) (allowing Massachusetts Wage Act claim despite contractual language providing, "[t]he terms of [Berberian's] employment will be governed by the laws and regulations of the State of Rhode Island, United States"). In this case, Plaintiff's claims are not based on her contract and do not require "construing" the Employment Agreement; rather, she sues for discrimination, retaliation, and tortious interference. The

Employment Agreement is silent as to the law to be applied to tort claims incident to the contract; accordingly, Defendants' contention is without merit.[9]

> 3. <u>No presumption against extraterritoriality has been recognized by any Massachusetts appellate court.</u>

Defendants also attempt to shortcut the choice of law analysis by arguing that there is a presumption against applying Massachusetts statutory claims extraterritorially, an argument that is unsupported by case law. Incredibly, on page 4 of their brief, Defendants rely on a quotation from the Supreme Judicial Court of Massachusetts that they selectively edit in such a way as to completely change the meaning of the sentence, omitting the words "Assuming without deciding that" from the following passage:

> **Assuming without deciding that** there is a presumption against the application of Massachusetts statutes outside the United States, <u>but see O'Connell v. Chasdi</u>, 400 Mass. 686, 689 n. 3, 511 N.E.2d 349 (1987) (applying Civil Rights Act, G.L. c. 12, § 11I, to conduct occurring in South America), we conclude that there is no corresponding presumption against the application of Massachusetts statutes to conduct occurring outside Massachusetts but within the United States.

<u>Taylor v. E. Connection Operating, Inc.</u>, 465 Mass. 191, 198 n.9 (2013). Not only does this sentence <u>not</u> declare an anti-extraterritorial presumption, it expressly finds <u>no</u> presumption against extraterritoriality in the interstate context, and provides a specific example of a case in which the Massachusetts Civil Rights Act was applied to conduct that occurred abroad. <u>Taylor</u> went on to hold that "where no explicit limitation is placed on a statute's geographic reach, there is no presumption against its extraterritorial application in appropriate circumstances." <u>Id.</u> at 198. In fact, no Massachusetts appellate court has <u>ever</u> recognized a presumption against extraterritorial application of state statutes. Further, Massachusetts courts have not hesitated to

---

[9] Even if there were some doubt about the scope of the contractual language, under the fundamental contract principle of *contra proferentem,* all ambiguous terms in a contract must be construed against the drafting party. <u>See</u> <u>Siebe, Inc. v. Louis M. Gerson Co.</u>, 74 Mass. App. Ct. 544, 550 n.12 (2009).

apply state employment statutes to conduct that occurred out of state. See id. (applying Massachusetts Wage Act to claims by employees who performed work outside Massachusetts); Dow v. Casale, 83 Mass. App. Ct. 751 (2013); Gonyou v. Tri-Wire Eng'g Solutions, Inc., 717 F. Supp. 2d 152 (D. Mass. 2010) ("Massachusetts has applied its statutory law to conduct outside its borders if sufficient contacts with the Commonwealth exist"); see also O'Connell, 400 Mass. at 689 n. 3, (applying Civil Rights Act to conduct occurring in South America where "the statute does not contain a provision limiting its application.").

> ### 4. Massachusetts choice-of-law principles necessitate further discovery to conduct an adequate choice of law analysis.

Finally, even assuming resolution of choice of law or "extraterritoriality" questions were necessary in this case, at the pleadings stage, these concerns are premature, for several reasons. First, considerations of "extraterritoriality" are assessed according to choice of law principles, and Massachusetts courts may apply Massachusetts statutes to extraterritorial conduct as long as doing so would be reasonable. See Dow, 83 Mass. App. Ct. at 756 (citing Taylor, 465 Mass. at 198 and Restatement (Second) Conflict of Laws § 9 (1971)). Second, in a choice of law question involving employment claims, the physical place where work is performed does not trump all other aspects of the analysis. Id. at 755 (specifically disapproving Hadfield v. A.W. Chesterton Co., Middlesex Superior Court No. 20084382, 2009 WL 3085921 (Sept. 15, 2009), on which Defendants heavily rely).[10] Rather, thirdly, Massachusetts courts do not apply single-factor tests to choice of law, but apply a "functional approach," relying on sources such as the Second

---

[10] Plaintiff notes that Doricent, a 1993 decision of this Court finding that the Massachusetts Civil Rights Act did not apply extraterritorially, is distinguishable, as the Court's reasoning in that case relied heavily on the inability of a Massachusetts court to extend injunctive relief abroad. See 1993 WL 437670, at *8. In this case, this Court will have no difficulty enforcing awards of money damages against in-state residents. Moreover, Doricent predates Taylor, Dow, and other state authorities clarifying that Massachusetts statutes may apply extraterritorially in an appropriate case.

Restatement and the choice-influencing factors listed by Professor Leflar in American Conflicts Law (3d ed. 1977). Lou, 77 Mass. App. Ct. at 583 (citing Bushkin Assocs., Inc. v. Raytheon Co., 393 Mass. 622, 634 (1985)). Fourth, not only do Massachusetts courts rely on a broad range of factors; they also apply separate analyses to separate issues, meaning that different jurisdictions' laws may apply to different issues in the same case. See Lou, 77 Mass. App. Ct. at 586 n.27.[11]

The complexity of the functional approach necessitates further discovery before all factors may properly be weighed as to each of Plaintiff's claims, as courts have recognized. See Taylor, 465 Mass. at 200 (remanding, where "the parties . . . have not had an opportunity to present evidence or argument pertinent to the proper application of our functional choice-of-law principles"); Resolute Mgmt. Inc. v. Transatlantic Reinsurance Co., 87 Mass. App. Ct. 296, 302–03 (2015) (reversing trial court's decision to dismiss claims under Massachusetts law for violation of G.L. c. 93A and common-law tortious interference with contractual relations, because, as to both claims, "discovery and development of a factual record are required to conduct the functional assessment envisioned by the Restatement.").

In this case, premature dismissal of the Massachusetts-law claims would be imprudent and erroneous. Of perhaps greatest moment, discovery is needed to reveal the extent to which "the conduct causing the injury" occurred in Massachusetts as to each of Plaintiff's distinct claims. See Rest. 2d Conflict of Laws § 145(2)(b). Moreover, the "relative importance" of each contact with Massachusetts will vary with the applicable issue. See id. § 145(2). At this juncture, discovery is needed to enable Plaintiff to demonstrate to the Court the full extent to which Argyle and Wellington's managing partners knew of, planned, or directly ordered from within

---

[11] This fundamental conflicts principle, discussed in the Second Restatement § 145, cmt. d, is known as dépeçage. See Value Partners S.A. v. Bain & Co., 245 F. Supp. 2d 269, 274 (D. Mass. 2003).

this Commonwealth the discriminatory and retaliatory firing of a top-ranked fund manager who had been too pregnant and complained too much.

## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the motion to dismiss be denied in its entirety.

Respectfully submitted,

*/s/ Patrick J. Hannon*

Barbara A. Robb (BBO #639976)
Patrick J. Hannon (BBO #664958)
Hartley Michon Robb, LLP
155 Seaport Boulevard, 2nd Floor
Boston, MA 02210
brobb@hartleymichonrobb.com
phannon@hartleymichonrobb.com
(617) 723-8000
Attorneys for Plaintiff

Date: October 21, 2019

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants by regular mail on October 21, 2019.

*/s/ Patrick J. Hannon*

Patrick J. Hannon