UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GIGI GAI ZI CHAN<br><br>Plaintiff,<br><br>v.<br><br>WELLINGTON MANAGEMENT COMPANY LLP AND CHARLES ARGYLE,<br><br>Defendants. | Civil Action No. 19-cv-11605-WGY |

**DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

Defendants Wellington Management Company LLP ("WMC") and Charles Argyle ("Argyle") (jointly, "Defendants") submit the following Reply in Further Support of their Motion to Dismiss. While it is not necessary to address every argument contained in Plaintiff's Opposition, this brief Reply is submitted to correct certain misstatements and misapplications of law contained therein.

**A.    The Presumption Against Extraterritorial Application Is Well Supported By Case Law.**

Plaintiff's Opposition gives short shrift to the most significant ruling she seeks from the Court – to apply c. 151B to a non-U.S. citizen who was living and working in Hong Kong.[1] In an implicit acknowledgment of the weakness of her position, Plaintiff ignores the numerous decisions that support Defendants' argument that there is a presumption against extraterritorial application of Massachusetts statutes outside the United States. Instead of addressing these cases, Plaintiff erroneously relies on case law concerning the application of Massachusetts statutes in the interstate

---

[1] Plaintiff's argument that this Court should apply c. 151B extraterritorially is addressed at the end of her Opposition in a single paragraph under a section characterizing Defendants' argument as a "piecemeal contention."

context, which is clearly inapplicable here. In this case, Plaintiff is <u>not</u> and never has been a U.S. citizen, is <u>not</u> and never has been a U.S. resident, and did not work in the U.S., yet she asks the Court to apply c. 151B to her discrimination claims arising out of alleged events that occurred in Hong Kong. Under these facts, Plaintiff is not entitled to the protection of c. 151B.

Plaintiff mischaracterizes Defendants' reference to the language pertaining to extraterritorial application of state statutes in <u>Taylor v. Eastern Connection Operating, Inc.</u>, 465 Mass. 191 (2013).[2] In <u>Taylor,</u> the Supreme Judicial Court addressed the issue of whether the Massachusetts independent contractor, Wage and Overtime statutes applied to individuals who lived in New York but worked for a Massachusetts company. In addressing defendant's reliance upon <u>Hadfield v. A.W. Chesterton Co.</u>,[3] the SJC distinguished extraterritoriality in the international, rather than the interstate context. In doing so, the SJC stated that it *assumed* that there *is* a presumption against extraterritorial application outside the United States. <u>Id.</u> at 198 n.9. Indeed, this assumption is supported by the case law that has addressed this issue, cited by the SJC and ignored by Plaintiff. <u>See</u> <u>E.E.O.C. v. Arabian Am. Oil Co.</u>, 499 U.S. 244 (1991) (holding that Title VII did not apply to employment practices of U.S. employers who employ U.S. citizens abroad)[4]; <u>Litz v. Saint Consulting Group</u>, <u>Inc.</u>, No. 11-10693-GAO 2012 U.S. Dist. LEXIS 20586 at *2 (D. Mass. Feb. 17, 2012) (stating that "Massachusetts statutes 'are presumed not to apply extraterritorially unless there is clear legislative intent to the contrary'") (<u>citing</u> <u>Hadfield v. A.W.</u>

---

[2] While Plaintiff accuses Defendants of "selectively edit[ing]" the relevant passage in Taylor, Defendants' memorandum informs the Court that there is no "Massachusetts case law specifically addressing whether c. 151B applies extraterritorially outside the United States" and further noted the absence of controlling appellate court precedent applying the presumption.

[3] No. 108426 2009 Mass. Super. LEXIS 230 (Mass. Super. Ct. Sep. 15, 2009).

[4] Although Title VII was subsequently revised to provide protection to U.S. citizens working outside of the United States, EEOC Policy Guidelines, referenced on p. 6 below, make clear that *non-U.S. citizens are not protected by U.S. EEO laws when employed outside the U.S. or its territories*. (emphasis added).

Chesterton Co., No. 108426 2009 Mass. Super. LEXIS 230 at *2 (Mass. Super. Ct. Sep. 15, 2009)); Carnero v. Boston Scientific Corp., 433 F.3d 1, 7-8 (1st Cir. 2006) (explaining that where "a statute is silent as to its territorial reach, and no contrary congressional intent clearly appears, there is generally a presumption against its extraterritorial application."); Spector v. Norwegian Cruise Line, Ltd., 545 U.S. 119 (2005); McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 21-22 (1963).

Additionally, this Court has already addressed the issue of whether at least one Massachusetts employment statute applies extraterritorially outside the United States and determined that it did not. Doricent v. American Airlines, No. 91-12084-WGY, 1993 U.S. Dist. LEXIS 15143, at *23 (D. Mass. Oct. 19, 1993) (refusing to apply Massachusetts Civil Rights statute to conduct occurring in Haiti). Plaintiff attempts to distinguish this decision by overstating the Court's reliance on the inability of a Massachusetts court to extend injunctive relief abroad. However, this Court did not base its finding on this issue. Rather, the statute's injunctive relief remedy was referenced as further support for the determination that the terms of the statute "reveal no express intent that their conditions are meant to apply extraterritorially." Id. at * 25. The Court stated that "in the absence of the necessary legislative intent, it is the conclusion of this Court that Mass. Gen. L. ch. 12 §§ 11H and 11I do not apply to conduct occurring in Haiti." Id.

Similarly, c. 151B lacks any provisions that reveal the legislature's express intent to have the statute apply extraterritorially outside the United States to a non-U.S. citizen working in Hong Kong at the time of her employment and termination. Indeed, the Supreme Judicial Court has expressly stated that "the clear purpose of G.L. c. 151B is to implement the right to equal treatment guaranteed to all citizens by the constitutions of the United States and the Commonwealth." Katz v. Massachusetts Comm'n Against Discrimination, 365 Mass. 357, 366 (1974) (emphasis added).

3

Likewise, in Charland v. Muzi Motors, 417 Mass. 580 (1994), the SJC explained that "Chapter 151B provides a detailed framework to protect citizens of the Commonwealth against employment discrimination."  Charland, 417 Mass. at 583; see also, Cormier v. Pezrow New Eng., Inc., 437 Mass. 302, 304 (2002) ("One of the principal purposes of G.L. c. 151B is to 'protect the citizens of the Commonwealth against employment discrimination.'")  In other words, for purposes of c. 151B, the extraterritorial application analysis focuses on Plaintiff's citizenship and residency.[5]  Here, Plaintiff was not a resident of Massachusetts or a citizen of the U.S., and thus the Court should dismiss Plaintiff's 151B claims as a matter of law.

**B.      Under A Choice of Law Analysis, Hong Kong Law Applies**

Since G.L. c. 151B should not be applied extraterritorially,, there is no need for the Court to conduct the choice of law analysis to determine whether to apply G.L. c. 151B or Hong Kong discrimination laws.  However, even if there was no presumption against extraterritorial application, a choice of law analysis would also dictate that Hong Kong law should apply.

Plaintiff argues that the motion to dismiss should be denied because there is no actual conflict between the substantive laws of the interested jurisdictions.  Yet, there is clear conflict between the discrimination laws of Massachusetts and Hong Kong.  Indeed, Plaintiff's Opposition has already addressed one conflict between the laws:  Hong Kong's discrimination statutes have a two-year statute of limitations as opposed to Massachusetts' three-year statute of limitations.  See Restatement (Second) of Conflict of Laws § 142; Nierman v. Hyatt Corp., 441 Mass. 693, 695; New England Tel. & Tel. Co. v. Gourdeau Constr. Co., 419 Mass. 658 (1995); Petrucci v. Esdaile,

---

[5] This is consistent with the spirit of c. 368, §1, which added c. 151B to the General Laws in 1946, as follows:

> The right to work without discrimination because of race, color, religious creed, national origin or ancestry is hereby declared to be a right and privilege of the inhabitants of the Commonwealth.

4

2017 Mass. Super. LEXIS 65 *4 (May 31, 2017) ("Massachusetts no longer treats statutes of limitations as purely procedural rules, and thus no longer automatically applies Massachusetts limitations period to all claims . . . . Instead, the Supreme Judicial Court has adopted a functional approach that treats the issue . . . as a choice of law question").  Further still, c. 151B provides that successful plaintiffs are entitled to recover attorneys' fees.  Hong Kong law does not provide for the recovery by plaintiffs of attorneys' fees.  See e.g., Freeman v. World Airways, Inc., 596 F. Supp. 841, 845 (D. Mass. 1984) (holding that difference in law on availability of punitive damages is a "real conflict").

     Accordingly, there is a clear conflict between the laws, and as described in Defendants' Motion to Dismiss, when a choice of law analysis is undertaken, Hong Kong has far more significant contacts to the parties and events at issue.  Moreover, contrary to Plaintiff's conclusory argument that she needs discovery to "demonstrate to the Court the full extent to which Argyle and Wellington's managing partners knew of, planned, or directly ordered from within this Commonwealth the discriminatory and retaliatory firing," no further discovery is necessary on the choice of law analysis.  Plaintiff's argument ignores the well-settled case law that the "proper inquiry is whether the employee worked in Massachusetts, not whether the employer is based in Massachusetts."  Litz v. Saint Consulting Group, 2012 U.S. Dist. LEXIS 20586 at *2("the proper inquiry is whether the employee worked in Massachusetts, not whether the employer is based in Massachusetts."); Dow v. Casale, 83 Mass. App. Ct. at 756 (rejecting plaintiff's 'absolute position that an employer's presence in Massachusetts is all that is necessary for an employee – wherever situated and whatever the circumstances of employment – to bring a private action against the employer under the Wage Act").  Importantly, in tort actions the law of the place of injury controls unless another state has a more significant relationship with the occurrence and with the parties.

Cosine v. Whiten Machine Works, Inc., 417 Mass. 643, 646-47 (1994). Moreover, several courts have found that it is the site of the plaintiff's work that determines where the relevant conduct occurred, not where managerial decisions are made. Hadfield v. A.W. Chesterton Co., No. 108426 2009 Mass. Super. LEXIS 230, *5-6 (Mass. Super. Ct. Sep. 15, 2009) ("the relevant conduct to which the Wage Act applies is Hadfield's work in sub-Saharan Africa, not the Massachusetts-based decision not to pay Hadfield his accrued vacation time");Priyanto v. M/S Amsterdam, 2009 U.S. Dist. LEXIS 7849 (C.D. Cal. Jan. 23, 2009) ("Courts interpreting other states' wage laws have . . . focused on the situs of an employee's work in determining if a wage law applies, not where managerial decisions, actions, or inactions occur").  Further, the Court in Hadfield also rejected plaintiff's argument that the Massachusetts Wage Act should apply to him, despite being Australian and working in Africa, because he visited the company's headquarters in Massachusetts "numerous times and communicated with [the] director of human resources who was based in [Massachusetts]." Hadfield, at 2009 Mass. Super. LEXIS 230, *6, n. 3; Panos v. Timco Engine Center, Inc., 677 S.E.2d 868, 874 (N.C. CT. App. 2009) (holding plaintiff's eighteen days working in state and daily conference calls with in-state employees did not bring him within the state wage statute when he predominantly worked out of state).

Plaintiff's Complaint admits that she lived and worked in Hong Kong during the employment relationship.  Compl. ¶ 21, Exhibit A.  Further, Plaintiff was employed by WMHK, a Hong Kong entity, not WMC.  Exhibit A to Complaint.  Further still, as Plaintiff admits she worked in Hong Kong and that her employment was terminated in Hong Kong, the alleged discriminatory conduct occurred in Hong Kong. See generally Complaint.  Based on Plaintiff's own alleged facts, no further discovery is necessary to determine that the place of the purported injury was Hong Kong.

Thus, Massachusetts does not have sufficient contacts with the events or the Plaintiff to permit the application of Massachusetts law.  Plaintiff's c. 151B claims should also be dismissed under a conflict of law analysis.

**C.     Plaintiff's Discrimination and Retaliation Claims Are Barred By The Statute Of Limitations Under Hong Kong Law**

As c. 151B is inapplicable, Plaintiff must pursue her claims under Hong Kong law.  The same two-year statute of limitations period applies to all four Hong Kong anti-discrimination ordinances.  Defendants Memorandum in Support of Motion to Dismiss at 12.  Plaintiff asserts that the statute of limitations argument fails because it is based on "guesswork" and instead, must be "based on the face of the plaintiff's pleadings."  Plaintiff's argument is meritless and ignores her own allegations contained in the Complainant that make it clear on the face that her claims are barred by the statute of limitations.  Indeed, all of the alleged incidents of discrimination and retaliation, other than her separation from employment, occurred well outside the statute limitations period.

Plaintiff filed her Complaint on July 24, 2019.  Accordingly, any alleged retaliatory and discriminatory conduct occurring before July 24, 2017 is time-barred.  See generally Complaint.  Complainant alleges that she went on maternity leave in or about November, 2017 and returned on April 10, 2017.  Compl. at ¶¶ 48, 53.  Thereafter, Plaintiff does not allege any further discriminatory or retaliatory conduct until her termination on September 21, 2017.  Id. at ¶¶ 54 – 59.  Based on the clear allegations in Plaintiff's complaint, other than the termination, all of the purported discriminatory or retaliatory conduct occurred well-outside the statute of limitations period.

Thus, Plaintiff's discrimination claims based on all of the allegations occurring before July 24, 2017, are time-barred under Hong Kong law.

D.  **Plaintiff's Claims Should Be Dismissed Based on the *Forum Non Conveniens* Doctrine.**

Even if Plaintiff's claims were not subject to dismissal for the reasons stated above, since Hong Kong law (and not Massachusetts law) applies to Plaintiff's claims, all claims against all Defendants should also be dismissed based on the doctrine of *forum non conveniens*. Mercier, 981 F.2d at 1357 (explaining that the problem of applying foreign law can be one of several factors counseling dismissal under *forum non conveniens*); see also Shinya Imamura v. GE, 371 F. Supp. 3d 1 (D. Mass. 2019) (holding that dismissal under *forum non conveniens* was appropriate because of difficulty accessing evidence in Japan, difficulty of compulsory process, and the lack of a strong local interest in the dispute); Snofrost AB v. Hakansson, 353 F. Supp. 3d 99 (D. Mass. 2018) (Swedish courts were deemed a more convenient forum because they had personal jurisdiction over the defendants, all material witnesses were located there, and events underlying the action occurred in Sweden). For these reasons, Plaintiff's Complaint should be dismissed on the basis of *forum non conveniens*.

## CONCLUSION

For the reasons set forth herein and in the Memorandum of Law in Support of Defendants' Motion to Dismiss, the Complaint should be dismissed in its entirety with prejudice.

Dated:  November 4, 2019

Respectfully Submitted,

Defendants,
WELLINGTON MANAGEMENT COMPANY LLP and CHARLES ARGYLE,

By their attorneys,


*/s/ Jamie L. Kessler*
Stephen T. Paterniti, BBO# 564860
Jamie L. Kessler, BBO# 681867
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, Massachusetts  02116
TELE: (617) 367-0025
FACSIMILE: (617) 367-2155


**CERTIFICATE OF SERVICE**

This hereby certifies that on November 4, 2019, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Jamie L. Kessler*
Jackson Lewis, PC

4847-5745-1179, v. 1