UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---------------------------------------
                                      )
Gigi Kai Zi Chan                      )
                                      )
            Plantiff,                 )
                                      )
     v.                               )      CIVIL ACTION
                                      )      NO. 19-11605-WGY
Wellington Management Company         )
LLP and Charles Argyle                )
                                      )
            Defendants.               )
                                      )
---------------------------------------

YOUNG, D.J.                                    December 3, 2019

**ORDER**

On July 24, 2019, Gigi Kai Zi Chan ("Chan") filed a complaint in this Court against her alleged employer, Wellington Management Company LLP ("Wellington"), on five counts under both Massachusetts and Hong Kong law: (1) discrimination based on gender; (2) discrimination based on race or national origin; (3) discrimination based on disability or pregnancy (against Wellington); (4) retaliation (against Wellington); and (5) tortious interference. Compl. ¶¶ 61-76, ECF No. 1. Chan brings an additional count of tortious interference against her supervisor, Charles Argyle ("Argyle"), a Wellington partner. Id. ¶¶ 77-80. Chan seeks monetary damages, punitive damages, attorneys' fees and costs, and other proper relief. Id. 14.

Wellington and Argyle jointly moved to dismiss Chan's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6),

asserting that, due to choice of law principles and the presumption against extraterritoriality, Chan's claims are governed solely by Hong Kong law, which gives exclusive jurisdiction to Hong Kong courts and imposes statutory limitation periods on these claims. Defs.' Mot. Dismiss Pl.'s Compl., ECF No. 9; Mem. L. Supp. Mot. Dismiss Pl.'s Compl. ("Defs.' Mem.") 4-13, ECF No. 10. Wellington and Argyle further argue that Hong Kong is the proper forum for these claims and thus the Court ought dismiss the complaint due to <u>forum non conveniens</u>. <u>Id.</u> 13-14. Chan opposed the motion, Pl.'s Mem. L. Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n"), ECF No. 17, which elicited a further reply, Defs.' Reply Further Supp. Mot. Dismiss ("Defs.' Reply"), ECF No. 20. The Court heard argument on November 7, 2019 and took the matter under advisement. Electronic Clerk's Notes, ECF No. 21.

After careful consideration of the parties' arguments, the Court DENIES the motion to dismiss, ECF No. 9, because Chan's detailed complaint provides "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570 (2007). Wellington and Argyle stress the presumption against the extraterritorial application of Massachusetts law, a question which the Supreme Judicial Court has left open. See <u>Taylor</u> v. <u>Eastern Connection Operating Co.</u>, 465 Mass. 191, 199 n.9, 988 N.E.2d 408 (2013) ("[a]ssuming

without deciding that there is a presumption against the application of Massachusetts statutes outside the United States"); O'Connell v. Chasdi, 400 Mass. 686, 689 n. 3, 511 N.E.2d 349 (1987) (applying Massachusetts civil rights law to conduct occurring in South America but declining to decide the question because no party raised the issue).[1] Thus, they assert that the Massachusetts anti-discrimination statute, 151B, does not govern the conduct alleged in the complaint because it took place in Hong Kong. Defs.' Mem. 4-7.

Whether Massachusetts law may apply overseas is an intriguing question of law. The Court cannot yet reach that

---

[1] The Court is disturbed by the apparent lack of candor shown by counsel for Wellington and Argyle in citing Taylor for the unqualified proposition that "there is a presumption against the application of Massachusetts statutes outside the United States," Defs.' Mem. 4, while omitting without comment the preceding words of the Taylor Court that it was "[a]ssuming without deciding" the issue. Counsel for Wellington and Argyle repeats this misleading characterization (albeit in less egregious fashion) in its reply brief, stating that the Taylor Court "assumed that there is a presumption against extraterritorial application outside the United States." Defs.' Reply 2 (emphasis in original). Counsel's attempt to explain these misrepresentations, id. at 2 n.2, is wholly inadequate. The Court harbors serious concerns that these misleading descriptions of Taylor, which would be controlling authority had it said what counsel told the Court it said, amount to "a false statement of . . . law to a tribunal." Model Rules of Prof'l Conduct r. 3.3(a)(1) (Am. Bar Ass'n 2019); cf. Swinomish Indian Tribal Cmty. v. BNSF Ry. Co., Civ. A. No. 18-35704, 2019 WL 3074050 (9th Cir. May 22, 2019) (ordering counsel to show cause why misleading citations of law were candid representations). Counsel is therefore admonished to maintain scrupulous candor with this Court and all other tribunals.

question, however, because the complaint alleges unlawful conduct within the Commonwealth's territorial bounds.  Chan alleges that Wellington, located in Boston, was her employer; that she reported directly to Argyle, also in Boston; that her employment duties required her to travel frequently to Boston; and that Wellington and Argyle engaged in a pattern of unlawful discriminatory acts against her, culminating with her termination, orchestrated from the firm's Boston headquarters.  See Compl. ¶¶ 8-60.  In considering this motion to dismiss, the Court must accept these allegations as true and make all reasonable inferences in Chan's favor.  See Twombly, 550 U.S. at 555.  On these alleged facts, the unlawful acts occurred, at least partly, in Massachusetts.  The extraterritorial application of the Commonwealth's anti-discrimination statute is therefore not implicated.

Chan's undisputed physical placement in Hong Kong may be pertinent to the overall analysis of the existence of employment relationship between the parties, which is in dispute.  See Defs.' Mem. 2.  Yet this fact is just one among others that ought be considered in determining who Chan's employer was and, relatedly, whether the allegedly unlawful conduct took place within or without Massachusetts.  For example, "Massachusetts cases have determined that an employer can be defined by 'who has direction and control of the employee and to whom . . . [the

[4]

employee] owe[s] obedience in respect of the performance of his work.'" DeLia v. Verizon Commc'ns Inc., 656 F.3d 1, 4 (1st Cir. 2011) (alteration in original) (quoting Roberts v. Delta Air Lines, Inc., 599 F.3d 73, 78 (1st Cir. 2010) and Fleming v. Shaheen Bros., Inc., 71 Mass. App. Ct. 223, 881 N.E.2d 1143, 1147 (2008) (internal quotation marks omitted)). Additionally, "all of the incidents of the relationship must be assessed and weighted with no one factor being decisive." Id. at 5 (quoting Dykes v. DePuy, Inc., 140 F.3d 31, 37 (1st Cir. 1998) and Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 324 (1992)). In deciding whether a Massachusetts law applies to conduct in another state (and perhaps even internationally), Massachusetts courts have rejected the notion "that the physical place where work is performed trumps all other considerations." Dow v. Casale, 83 Mass. App. Ct. 751, 755, 989 N.E.2d 909, 913 (2013). The Court therefore declines to give Chan's placement in Hong Kong decisive weight.

In addition, there are no contractual choice of law provisions that prevent this Court applying Massachusetts law. Both parties agree that the respondent's claims are rooted in torts. Defs.' Mem. 8-9. Pl.'s Opp'n 14, 16. This Court has observed that "claims sounding in tort are not necessarily controlled by contractual choice of law clauses." Silica Tech, L.L.C. v. J-Fiber, GmbH, Civ. A. No. 06-10293-WGY, 2009 WL

2579432, at *21 (D. Mass. Aug. 19, 2009). In any case, nothing in the contract's language suggests that claims sounding in tort should be construed by the law of a specific jurisdiction, whether Hong Kong or any other. See Compl. Ex. A, Employment Contract ("Contract").

Furthermore, it is premature to conclude that choice-of-law considerations dictate that the Court ought apply the law of Hong Kong rather than the law of Massachusetts. "The first step in a choice of law analysis is to determine whether an actual conflict exists between the substantive laws of the interested jurisdictions . . . ." Reicher v. Berkshire Life Ins. Co. of Am., 360 F.3d 1, 4 (1st Cir. 2004). Wellington and Argyle have not adequately established what the relevant Hong Kong law is, let alone shown actual conflict with Massachusetts law. The submission of partial, uncertified samples of foreign law makes it difficult for the Court to see how it may materially differ from the local law. In Silica Tech, this Court addressed the element of actual conflict between Massachusetts law and foreign law. Silica Tech, L.L.C. 2009 WL 2579432, at *10. While the Court may take judicial notice of foreign law, it is not required to do so when a party fails to bring the law to the attention of the Court.[2] Id. at *10-11. In its discretion, the

---

[2] The Court stated:

[6]

Court may consult diverse sources, such as "certified translations of foreign statutes, legal writings about the foreign law and decisions by the courts of the foreign country" or expert testimony. Id. Here, the Court does not yet have a full and reliable statement of relevant Hong Kong law. Absent proof of an actual conflict with Massachusetts anti-discrimination law, the Court should apply the latter. See Valle v. Powertech Indus. Co., 381 F. Supp. 3d 151, 160 (D. Mass. 2019) (Casper. J) ("Because neither party has established that the content of Taiwanese law creates an actual conflict with Massachusetts contract law, the Court interprets the Agreement pursuant to Massachusetts law.").

Further, the Court disagrees with the argument of Wellington and Argyle that Hong Kong has exclusive jurisdiction over these claims. Defs.' Mem. 10-11. The language of the Hong Kong statute and case law cited by the defendants, to the extent it accurately reflects Hong Kong law, seems to govern Hong

---

> Section 136 of the Restatement (Second) of the Law of Conflicts (1971) sets out a "black letter rule" for determining the manner of establishing foreign law as well as the effect of a failure or an insufficient submission of the content of foreign law. Restatement (Second) of the Law of Conflicts, § 136, Reporter's Notes (1971) (further noting that the rule has "unanimous support"). As stated in section 136, "The local law of the forum determines how the content of foreign law is to be shown and the effect of a failure to show such content." Restatement (Second) of the Law of Conflicts, § 136(2) (1971).

Silica Tech, L.L.C. 2009 WL 2579432, at *10

Kong's internal legal affairs only. Neither the Hong Kong statute nor the cited case law implies any control over foreign courts, nor could they limit this Court's jurisdiction. "A federal court sitting in diversity jurisdiction is obliged to apply federal procedural law and state substantive law." Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 32 (1st Cir. 2004) (citing Hanna v. Plumer, 380 U.S. 460, 465 (1965) and Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)). An exclusive jurisdiction provision is procedural rather than substantive; thus the Court ought apply its own procedural law to determine jurisdiction. See Randall v. Arabian Am. Oil Co., 778 F.2d 1146, 1152 (5th Cir. 1985). Moreover, as the Fifth Circuit observed:

> The exclusive jurisdiction provisions of the [Saudi Arabian] Labor Law cannot deprive a United States District Court of subject matter jurisdiction. . . . We reject outright the notion that the law of a foreign country can unilaterally curtail the power of our federal courts to hear a dispute even though the dispute involves rights fixed by the laws of another nation. Only the Constitution and the laws of the United States can dictate what cases or controversies our federal courts may hear . . . .

Id. at 1150.

In a similar vein, although not involving foreign law, the Supreme Court has held that a state may make its law exclusive; however, outside its borders, it cannot bind other states' courts. See Crider v. Zurich Ins. Co., 380 U.S. 39, 41 (1965).

Further, the Court cannot at this time rule that any of the claims in the complaint is time-barred because it is premature to determine what law should apply and Honk Kong law has not reliably been established. Even if the Court will apply Hong Kong law, some claims are apparently within the time limits. The termination of Chan's employment, which raises several claims under the complaint, occurred on September 12, 2017. Compl. ¶ 56. Since Chan filed her complaint on July 24, 2019, the termination of employment did not exceed the purported two-year limitations period under Hong Kong law. Defs.' Mem. 12. Moreover, the Court cannot yet determine whether Hong Kong law recognizes the continuing violation doctrine and whether it applies to these facts, in which case earlier alleged acts of discrimination may not be time-barred. Cf. O'Rourke v. City of Providence, 235 F.3d 713, 727-728, 730 (1st Cir. 2001); Noviello v. City of Boston, 398 F.3d 76, 86 (1st Cir. 2005).

Furthermore, the Court rejects the application of the forum non coveniens doctrine. Although Chan's choice of forum deserves only diminished deference because Massachusetts is not her home forum, this does not automatically bar her access to this Court when the defendants, who are domiciled in Massachusetts, have not met their burden to show that litigating in Massachusetts would be highly inconvenient. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981); Interface

Partners Int'l Ltd. v. Hananel, 575 F.3d 97, 101-02 (1st Cir. 2009); Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1354 (1st Cir. 1992)("The deference accorded the plaintiff's choice of forum is enhanced when the plaintiff has chosen a forum in which the defendant maintains a substantial presence . . . .").

Moreover, Wellington and Argyle failed to establish that Hong Kong is a proper alternative forum to try the case, and that considerations of convenience and judicial efficiency strongly favor litigating in Hong Kong. See Interface Partners Int'l Ltd., 575 F.3d 97 at 101-02. Wellington and Argyle have failed to address the issue of Wellington's personal jurisdiction and service of process in Hong Kong, and whether a Hong Kong court will accommodate an action between foreign litigants on both sides. See id.; see also Pl.'s Opp'n 5. What's more, it may be that the statute of limitations under Hong Kong anti-discrimination law bars the action in significant part, thus rendering the Hong Kong forum at least partially inaccessible. In Marriott, after scrutinizing alternative foreign forums, this Court held that since the action was time-barred in those foreign forums, dismissal based on forum non conveniens would be improper, especially when there was no guarantee that the statute of limitations could be waived by defendants. See Marriott v. Sedco Forex Int'l Res., Ltd., 827 F. Supp. 59, 69, 70, 71 (D. Mass. 1993). It further appears

that at least some of the key witnesses are local, e.g., Argyle and the three managing partners of Wellington; this fact supports litigating in Massachusetts. Pl.'s Opp'n 8-9. Notably, even if the Court will eventually apply Hong Kong law, "the need to apply foreign law is not in itself reason to apply the doctrine of forum non conveniens." Marriott, 827 F. Supp. at 68 (citation omitted). Finally, Massachusetts is the home of the defendants and there is a local interest to resolve allegations of tortious conduct by a local company and a local individual. See Rhodes v. ITT Sheraton Corp., No. CIV.A. 97-4530-B, 1999 WL 26874, at *5 (Mass. Super. Jan. 15, 1999) (Hinkle, J.).

Therefore, the Court DENIES the motion to dismiss, ECF No. 9. The parties shall file a joint proposed case management schedule within 14 days and prepare for trial on the October 2020 running trial list. ECF No. 21.

**SO ORDERED.**

*William G. Young* (signature)
WILLIAM G. YOUNG
DISTRICT JUDGE