UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GIGI KAI ZI CHAN<br><br>Plaintiff,<br><br>v.<br><br>WELLINGTON MANAGEMENT COMPANY LLP AND CHARLES ARGYLE,<br><br>Defendants. | Civil Action No. 19-cv-11605-WGY |

**DEFENDANTS' ANSWER TO PLAINTIFF'S COMPLAINT**

Defendants Wellington Management Company LLP ("WMC") and Charles Argyle ("Argyle") (jointly, the "Defendants") by and through its undersigned counsel, hereby submit the following Answer and Affirmative Defenses in response to the Complaint of Plaintiff Gigi Kai Zi Chan ("Plaintiff"), in connection with the above-captioned action.

With regard to the allegations contained in the introduction paragraph of the Complaint, Defendants are not required to provide a response to the allegations, as they merely state an affirmation of what Plaintiff seeks in this action. To the extent a response is required, Defendants deny that they discriminated against Plaintiff on any basis and deny that they retaliated against Plaintiff. Responding further, Defendants deny that Plaintiff is entitled to any recovery or relief whatsoever in this action.

**Parties and Jurisdiction**

1. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 1 of the Complaint.

2. Defendants deny that WMC's principal offices are located at One Financial Center, Boston, Massachusetts, but otherwise admit the allegations in Paragraph 2 of the Complaint.

1

3. Defendants deny that Charles Argyle is a partner of WMC, but otherwise admit the allegations in Paragraph 3 of the Complaint.

4. Paragraph 4 contains conclusory statements and/or conclusions of law to which no response is required. To the extent a response is required, Defendants state that WMC is a Delaware limited liability partnership with two corporate partners, one of which is a Massachusetts limited liability partnership.

5. Paragraph 5 contains conclusory statements and/or conclusions of law to which no response is required. To the extent a response is required, Defendants deny knowledge or information sufficient to admit or deny Plaintiff's alleged citizenship or that the amount in controversy exceeds $75,000.00, and further state that Defendant WMC is a Delaware limited liability partnership and has an office in Massachusetts and Defendant Argyle resides in Massachusetts.

6. Paragraph 6 contains conclusory statements and/or conclusions of law to which no response is required. To the extent a response is required, Defendants state that Defendant WMC is a Delaware limited liability partnership and has an office in Massachusetts and Defendant Argyle resides in Massachusetts, and deny the remaining allegations in Paragraph 6 of the Complaint.

7. Defendants state the documents and related agency and court records speak for themselves.

**Facts**

*Ms. Chan Joins Wellington*

8.      Defendants admit that WMC is an investment management firm with its principal office located in Boston, Massachusetts that, together with its affiliates, has approximately one trillion dollars of assets under management.

9.      Defendants deny the allegations in Paragraph 9 of the Complaint.  Further responding, Defendants state that Plaintiff was hired by Wellington Global Investment Management Ltd. in Hong Kong ("WGIMHK") as an Equity Research Analyst in 2014.[1]

10.     Defendants admit the allegations as they pertain to the time period of Plaintiff's employment, but otherwise state that the Global Equity Portfolio Management Group (GEPM) title is no longer used.

11.     Defendants admit that it was understood that Plaintiff was living in the United States at the time of her interviews in 2014, deny that she was recruited to work for WMC, and admit that she attended interviews, some of which took place at WMC's Boston office.

12.     Defendants deny knowledge or information sufficient to admit or deny the allegations in Paragraph 12 of the Complaint.

13.     Defendants admit that Plaintiff managed the Threadneedle China Opportunities Fund ("TCO Fund"), and otherwise deny knowledge or information sufficient to admit or deny the remaining allegations in Paragraph 13.

14.     Defendants deny Plaintiff's characterizations in Paragraph 14 to the extent they imply that she was recruited to be hired as a Portfolio Manager, that she had the requisite skills to

---

[1] For purposes of clarity, nothing in this Answer should be construed as an admission that WMC hired or employed Plaintiff. She was employed at all times by WGIMHK, which changed its name to Wellington Management Hong Kong Limited (WMHK) on January 1, 2015.

be a Portfolio Manager at WGIMHK at the time of her hire, or that any statements or misrepresentations were made that would have misled her in any manner during the interview process.

15. Defendants deny WMC made any representations or assurances that would have improperly induced Plaintiff in any manner, and otherwise deny knowledge or information sufficient to admit or deny the allegations in Paragraph 15 of the Complaint.

16. Defendants deny that WMC offered Plaintiff employment, and state that the written offer letter provided to Plaintiff from WGIMHK speaks for itself. Further responding, WMC states that Plaintiff's day-to-day supervisor was Thomas Baxter and then Henry Philip.

17. Defendants deny knowledge or information sufficient to admit or deny exactly what Plaintiff was told during the interview process, state that WMC and its affiliates are often described as an integrated global investment management business with separate and distinct legal entities, and otherwise deny the allegations in Paragraph 17.

18. Defendants state that the offer letter from WGIMHK referred to in Paragraph 18 of the Complaint speaks for itself.

19. Defendants state that the offer letter from WGIMHK referred to in Paragraph 19 of the Complaint speaks for itself. Further responding, WMC states that Plaintiff's day-to-day supervisor was Thomas Baxter and then Henry Philip.

20. Defendants deny knowledge or information sufficient to admit or deny Plaintiff's personal observations, but otherwise deny the allegations in Paragraph 20.

21. Defendants deny that WMC offered Plaintiff employment, admit that Plaintiff moved to Hong Kong, deny that in practice she reported directly to Boston, and deny that she traveled frequently to Boston.

4

### *"I would call it racism"*

22. Defendants deny the allegations in Paragraph 22 of the Complaint.

23. Defendants deny the allegations in Paragraph 23 of the Complaint.

24. Defendants deny the allegations in Paragraph 24 of the Complaint.

25. Defendants deny knowledge or information sufficient to admit or deny the alleged comments, but otherwise deny the allegations in Paragraph 25 of the Complaint.

26. Defendants deny the allegations in Paragraph 26 of the Complaint.

27. Defendants deny the allegations in Paragraph 27 of the Complaint.

28. Defendants deny that Plaintiff was singled out for being of Chinese descent, and deny knowledge or information sufficient to admit or deny the alleged comment referenced in Paragraph 28 of the Complaint.

29. Defendants deny the allegations in Paragraph 29 of the Complaint.

### *"In this firm, you do not demand anything"*

30. Defendants deny the allegations in Paragraph 30 of the Complaint.

31. Defendants deny knowledge or information sufficient to admit or deny the allegation that she met with her "business manager" in September 2015 as that individual is not identified, but admit that Plaintiff would have met with Mr. Baxter and/or Mr. Argyle in this timeframe. Defendants also admit that in this timeframe, Plaintiff made the alleged comment, or substantially similar comment, as alleged in the last sentence of Paragraph 31 but deny Plaintiff's characterization of the comment and deny that the comment was made in the context of any alleged complaint of discrimination. Further responding, Defendants state that Plaintiff generally stated over the course of her employment that she desired to be a Portfolio Manager with more

responsibility, but deny that her expectations were commensurate with her skill and deny that she complained about any alleged unfair treatment related to her sex and national origin.

32. Defendants admit that Plaintiff appeared before the Process and Philosophy Panel, at which she received constructive feedback about her presentation style and that any comments about her appearance were provided in that context, but otherwise deny the allegations in Paragraph 32 of the Complaint.

33. Defendant WMC denies that Plaintiff raised complaints of any alleged unfair treatment due to her sex or national origin or any other protected characteristic during meetings with Jean Hynes, Philip Perelmuter or Brendan Swords.  Defendant Argyle denies knowledge or information sufficient to admit or deny the allegations in Paragraph 33 of the Complaint.

34. Defendant WMC denies that Plaintiff raised complaints of any alleged unfair treatment due to her sex or national origin or any other protected characteristic during meetings with Jean Hynes, Philip Perelmuter or Brendan Swords. Defendant Argyle denies knowledge or information sufficient to admit or deny the allegations in Paragraph 34 of the Complaint.

35. Defendants deny the allegations in Paragraph 35 of the Complaint as Plaintiff did not complain of discrimination. Further responding, Defendants state that Mr. Argyle did address with Plaintiff her poor attitude, which led her to make unreasonable work-related demands pertaining to her position and responsibilities, including comparing herself to a Portfolio Manager (who was also a female of Chinese descent), and repeatedly demanding to be made a Portfolio Manager.

36. Defendants deny knowledge or information sufficient to admit or deny Plaintiff's health condition, but deny that Defendants engaged in any action, or that a toxic work environment existed, that caused or exacerbated any such health condition.

***"Are you sure you can run a fund while pregnant?"***

37.  Defendants admit that Plaintiff spent her work time focused on launching a fund instead of performing her primary job duties as an Analyst for the EMO team led by Mr. Mattiko, admit that she met with marketing and sales personnel, deny knowledge or information as to the specific alleged feedback she received from "one member of the Sales team," and otherwise deny her allegations in Paragraph 37.

38.  Defendants deny knowledge or information as to whether Plaintiff informed any colleagues she was pregnant in May 2016, and otherwise deny the remaining allegations in Paragraph 38 of the Complaint.

39.  Defendants deny knowledge or information sufficient to admit or deny the allegations as to what Plaintiff was told, although admit that Plaintiff was informed on a number of occasions of concerns relating to her presentation skills.

40.  Defendants deny knowledge or information sufficient to admit or deny the allegations in Paragraph 40 of the Complaint pertaining to Plaintiff's prior experience or the alleged statement referenced in Paragraph 38, and otherwise deny the allegations in Paragraph 40 of the Complaint.

41.  Defendant WMC denies the allegations in Paragraph 41 of the Complaint. Defendant Argyle denies knowledge or information sufficient to admit or deny the allegations in Paragraph 41 of the Complaint.

42.  Defendants admit that Mr. Qian was in discussions with a large Chinese client that was expressing interest in launching a fund, but otherwise deny the allegations in Paragraph 42 of the Complaint.

43. Defendants admit Mr. Qian met with the client but otherwise deny knowledge or information sufficient to admit or deny the allegations in Paragraph 43 of the Complaint.

44. Defendants deny information or knowledge sufficient to admit or deny Plaintiff's characterization, and state that any alleged writing speaks for itself.

45. Defendants deny the allegations in Paragraph 45 of the Complaint. Further responding, WMC states that the fund idea was not pursued further for business reasons unrelated to Plaintiff's pregnancy.

46. Defendants deny knowledge or information sufficient to admit or deny the alleged comments in Paragraph 46 of the Complaint, and deny any implication of discriminatory intent or animus by WMC.

*"Commitment"*

47. Defendants deny the allegations in Paragraph 47 of the Complaint to the extent they imply any discriminatory intent or animus.  Further responding, Defendants state that Plaintiff's commitment to Wellington was in question at this point in time as she had made a number of comments expressing dissatisfaction with her role based on her subjective perception of her skill, experience and value in the marketplace, and frequently commented that she was being recruited by other firms for employment opportunities.

48. Defendants deny Plaintiff's characterization of the meeting and further deny the allegations in Paragraph 48 of the Complaint to the extent they imply any discriminatory intent or animus.  Further responding, Defendants state that Plaintiff's commitment to Wellington was in question at this point in time as she had made a number of comments expressing dissatisfaction with her role based on her subjective perception of her skill, experience and value in the

marketplace, and frequently commented that she was being recruited by other firms for employment opportunities.

49. Defendants deny that Mr. Argyle berated Plaintiff. Defendants admit that Mr. Argyle met with Plaintiff in November 2016 to discuss her performance issues, that in this meeting she complained to Mr. Argyle that she was unhappy because her work-related demands and career expectations were not being met. Mr. Argyle responded by generally articulating that Plaintiff had not embraced the corporate ethos of "client, firm, self" and instead put herself first in most situations, that Greg Mattiko was disappointed in her contribution to the EMO team, that her broad contribution to the investment dialog was lacking, and that her colleagues found her challenging to work with due to her tendency to get frustrated when things did not go her way, her resistance to feedback, and her difficulty putting setbacks behind her. Mr. Argyle explained that Plaintiff was not performing her primary job of supporting the EMO team, and that if this continued, the China Growth fund that had been incubated for her to manage would be closed. Defendants otherwise deny Plaintiff's characterization of Mr. Argyle's comments as alleged in Paragraph 49.

50. Defendants deny knowledge or information regarding Plaintiff's subjective perceptions of the meeting with Mr. Argyle in November 2016, and deny that Mr. Argyle was trying to bully her into quitting.

51. Defendants deny the allegations in Paragraph 51 of the Complaint.

52. Defendants deny the allegations in Paragraph 52 of the Complaint to the extent they imply any discriminatory animus or intent by Mr. Argyle. Further responding, Defendants admit that in response to Plaintiff's numerous statements that she was unsatisfied with her position and duties and was being recruited by other firms, Mr. Argyle questioned why Plaintiff remained in her position.

53. Defendants admit that Plaintiff returned to work as of approximately April 10, 2017.

### *"Underperformance"*

54. Defendants deny knowledge or information sufficient to admit or deny the allegations about Plaintiff's pregnancy condition or subjective intent upon returning to work, and otherwise deny the allegations in Paragraph 54 of the Complaint.

55. Defendants deny the allegations in Paragraph 55 of the Complaint to the extent that they imply that Plaintiff demonstrated a renewed commitment to performing her job duties following her return to work. Defendants deny information or knowledge sufficient to admit or deny Plaintiff's subjective beliefs, but otherwise deny the allegations and characterizations in Paragraph 55.

56. Defendants admit the allegations in Paragraph 56 of the Complaint that Wellington informed her on September 12, 2017 that her employment was terminated after previous attempts to have her report to work to convey this message were unsuccessful.

57. Defendants deny the allegations in Paragraph 57 of the Complaint.

58. Defendants admit that Plaintiff's underperformance of her job duties was a basis for her termination of employment with WGIMHK.

59. Defendants deny the allegations in Paragraph 59 of the Complaint.

60. Defendants deny the allegations in Paragraph 60 of the Complaint.

### **COUNT I**
### **Discrimination Based on Gender**
### **(Against WMC)**

61. Defendant WMC re-states and re-alleges its responses to paragraphs 1-60, as if stated fully herein.

62. Defendant denies the allegations in Paragraph 62 of the Complaint.

63. Defendant denies the allegations in Paragraph 63 of the Complaint.

## COUNT II
### Discrimination Based on Race/National Origin
### (Against WMC)

64. Defendant WMC re-states and re-alleges its responses to paragraphs 1-63, as if stated fully herein.

65. Defendant denies the allegations in Paragraph 65 of the Complaint.

66. Defendant denies the allegations in Paragraph 66 of the Complaint.

## COUNT III
### Discrimination Based on Disability/Pregnancy
### (Against WMC)

67. Defendant WMC re-states and re-alleges its responses to paragraphs 1-66, as if stated fully herein.

68. Defendant denies the allegations in Paragraph 68 of the Complaint.

69. Defendant denies the allegations in Paragraph 69 of the Complaint.

## COUNT IV
### Retaliation
### (Against WMC)

70. Defendant WMC re-states and re-alleges its responses to paragraphs 1-69, as if stated fully herein.

71. Defendant denies the allegations in Paragraph 71 of the Complaint.

72. Defendant denies the allegations in Paragraph 72 of the Complaint.

## COUNT V
### Tortious Interference
### (Against WMC)

73. Defendant WMC re-states and re-alleges its responses to paragraphs 1-72, as if stated fully herein.

74. Defendant admits it was aware of Plaintiff's employment relationship with Wellington Global Investment Management LTD but otherwise denies the allegations in Paragraph 74 of the Complaint.

75. Defendant denies the allegations in Paragraph 75 of the Complaint.

76. Defendant denies the allegations in Paragraph 76 of the Complaint.

## COUNT VI
### Tortious Interference
### (Against Argyle)

77. Defendant Argyle re-states and re-alleges his responses to paragraphs 1-76, as if stated fully herein.

78. Defendant denies the allegations in Paragraph 78 of the Complaint.

79. Defendant denies the allegations in Paragraph 79 of the Complaint.

80. Defendant denies the allegations in Paragraph 80 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by application of the doctrine of laches, estoppel, waiver and/or unclean hands.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff fails to establish a *prima facie* case with respect to her claims.

### FOURTH AFFIRMATIVE DEFENSE

Every action Defendants took with respect to Plaintiff was taken for legitimate business reasons and was consistent with principles of law. Defendants acted, at all times, in good faith, reasonably and justifiably.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims for damages are barred, in whole or in part, by her failure to mitigate damages.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims for damages are barred, in whole or in part, by the applicable statute of limitations.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff failed to exhaust administrative remedies and/or to comply with applicable policies and conditions before filing this action.

### EIGHTH AFFIRMATIVE DEFENSE

Defendants state that at all times, they made good faith efforts to comply with their obligations under the applicable law.

### NINTH AFFIRMATIVE DEFENSE

Defendants reserve the right, in the future, to assert additional affirmative defenses based upon discovery conducted in this action.

**WHEREFORE**, Wellington Management Company LLP and Charles Argyle respectfully request that Plaintiff's complaint be dismissed in its entirety, with prejudice, and that they be

awarded their fees and costs incurred in defending against this action, including reasonable attorney's fees.

        Respectfully Submitted,

        Defendants,

        WELLINGTON MANAGEMENT COMPANY LLP and CHARLES ARGYLE,

        By their attorneys,

        */s/ Stephen T. Paterniti*
        Stephen T. Paterniti, BBO# 564860
        Stephen.Paterniti@jacksonlewis.com
        Jamie L. Kessler, BBO# 681867
        Jamie.Kessler@jacksonlewis.com
        JACKSON LEWIS P.C.
        75 Park Plaza, 4th Floor
        Boston, Massachusetts  02116
        TELE: (617) 367-0025
        FACSIMILE: (617) 367-2155

Dated:  December 31, 2019

## CERTIFICATE OF SERVICE

This hereby certifies that on December 31, 2019 this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

        */s/ Stephen T. Paterniti*
        Jackson Lewis, PC

4845-2300-3312, v. 1