## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

GIGI KAI ZI CHAN,

                Plaintiff,

v.

WELLINGTON MANAGEMENT COMPANY
LLP and CHARLES ARGYLE,

                Defendants.

Civil Action No. 19-cv-11605-WGY

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
### MOTION FOR LEAVE TO AMEND THEIR ANSWER TO PLAINTIFF'S COMPLAINT

Defendants Wellington Management Company LLP ("WMC") and Charles Argyle move to amend their Answer to Plaintiff's Complaint ("Answer") for the limited purpose of adding two Affirmative Defenses:  (1) workers compensation exclusivity pursuant to the Massachusetts Workers' Compensation Act, G. L. c. 152, § 1(7A) ("WCA"); and (2) the after-acquired evidence doctrine. A copy of the proposed Amended Answer is attached hereto. See Ex. 1.

### BACKGROUND

Plaintiff applied for employment with Wellington Management Hong Kong (formerly known as Wellington Global Investment Management Ltd.) ("WHMK") in 2014.  WMHK extended Plaintiff an offer of employment as an Equity Research Analyst on April 8, 2014.  As part of the application process, on April 10, 2014, Plaintiff completed and signed an employment application for the position of Equity Research Analyst (the "Employment Application").  See Ex. 2.  WMHK terminated Plaintiff's employment on September 12, 2017.

Plaintiff filed this lawsuit against WMC[1] and Mr. Argyle on July 24, 2019, alleging discriminatory discharge based on gender (Count I), discrimination based on national origin (Count II), discrimination based on pregnancy (Count III), retaliation (Count IV), tortious interference against WMC (Count V), and tortious interference against Mr. Argyle (Count VII). Defendants filed their Answer on December 31, 2019, denying the material allegations of the Complaint and interposing various Affirmative Defenses.  A jury trial is scheduled for October 2021.

During her deposition, Plaintiff testified that she has experienced physical symptoms of alleged emotional distress stemming from the alleged actions of Wellington, including that she allegedly suffered seven (7) miscarriages during her employment.[2]  See Ex. 3 (Pl. 10/7/20 Dep. at 97).  In the course of discovery, Wellington served a 30(b)(6) deposition notice and records subpoena on Ameriprise, the parent company of Plaintiff's former employer Columbia Threadneedle ("Threadneedle").  See Ex. 4.  Ameriprise propounded objections to the subpoena, but did produce a memo Threadneedle had issued to Plaintiff on September 9, 2013 (the "Threadneedle Memo") stating, in relevant part, as follows:

> I am writing to confirm that you have been suspended from work with effect from today, Monday 9, September, until further notice pending investigation into allegations of insubordination.
>
> You are required to co-operate in our investigations and may be required to attend the workplace for investigation interviews or disciplinary hearings.

See Ex. 5.  At her deposition, Plaintiff was asked about the Threadneedle Memo and she testified as follows:

---

[1] Plaintiff alleges that WMC, an affiliate of WMHK, was also her employer under theories of single and/or joint employment.  Without conceding this, but assuming Plaintiff's allegations to be true for the purposes of this motion, WMC hereafter refers to WMHK and WMC collectively as "Wellington."

[2] In her Complaint, Plaintiff alleged that she suffered three (3) miscarriages.

Q: The – was there an investigation into these allegations of insubordination by Threadneedle?

**A: I believe so, yes.**

Q: Were you interviewed as part of that investigation?

**A: I believe so, yes.**

Q: Do you know what that – what, if any, conclusions were reached in that investigation?

**A: No, I don't recall.**

See Ex. 6. (Pl. 10/6/20 Dep. at 106-107).  Plaintiff and Threadneedle thereafter entered into a separation agreement.

In reviewing Plaintiff's personnel records, and in light of the Threadneedle Memo, Wellington discovered that Plaintiff had falsified her Employment Application by responding "No" to the following question asked on the application:

9.  Are you or have you ever been the subject of an investigation into allegations of misconduct or malpractice in connection with any business activity?

See Ex. 2.  The Employment Application included a section for an applicant to provide additional information if she answered "Yes," to certain questions, including Question No. 9. Plaintiff left that section blank.  Id.  The Employment Application included the following certification, which Plaintiff acknowledged:

By checking this box, I certify that all statements made by me on this application are true and complete to the best of my knowledge and that I have withheld nothing which, if disclosed, would affect this application unfavorably.  **I understand that any false statements or misrepresentations of this application may be grounds for the withdrawal of an offer or, if employment has commenced, summary dismissal.**

Id. (emphasis added).

At her deposition, Plaintiff was asked about her response to Question No. 9, and testified as follows:

Q: Are you or have you ever been the subject of an investigation into allegations of misconduct or malpractice in connection with any business activity? And you answered, "No," correct?

**A: Correct.**

Q: At that time that you filled this out, you were obviously aware of the allegations of insubordination made while you were working at Threadneedle, correct?

**A: Allegations of insubordination, yes.  I was aware of allegations of insubordination, yes.**

Q:  Isn't that information that you believe Wellington Management Hong Kong was entitled to know about in response to this Question No. 9?

**A: It was not information that I thought Wellington was asking me about in Question No. 9.**

Q: Why did you think that?

**A: Because I don't think that allegations of misconduct or malpractice is the same as allegations of insubordination.**

Q: Did you check with anybody to determine what they meant by that – what was meant by that before you answered it?

**A: I don't recall right now.[3]**

<u>See</u> Ex. 7. (Pl. 10/6/20 Dep. at 231-233).

## ARGUMENT

### A.    <u>Defendants' Motion to Amend Their Answer Should Be Allowed</u>

The Federal Rules provide that the court should "freely give leave [to amend a pleading] when justice so requires." Fed. R. Civ. P. 15(a)(2). The First Circuit and U.S. District Court of Massachusetts routinely allow amendments to pleadings, including on the eve of trial. <u>See</u> <u>Carmona v. Toledo</u>, 215 F.3d 124, 136 (1st Cir. 2000) (reversing denial of motion to amend complaint to name a party when there was no adequate reason for the denial); <u>Albertini v.</u> <u>Summit Technical Services. Inc.</u>, 2003 U.S. Dist. LEXIS 18794, p. 5 (D. Mass., October 16, 2003) (court allowed defendant's motion to amend its answer to add two affirmative defenses on

---

[3] Plaintiff's sworn deposition testimony that she did not understand "insubordination" to constitute "misconduct" in connection with her business activities at Threadneedle within the meaning of Question No. 9 is not credible. Ultimately, it will be for a jury to decide if Defendants have carried their burden on this Affirmative Defense.

the eve of trial). Other jurisdictions likewise routinely allow amendments. See Jackson v. Rockford Housing Authority, 213 F.3d 389, 392-93 (7th Cir. 2000) (motion to amend allowed after summary judgment motion filed). Defendants seek to amend their Answer to add just two Affirmative Defenses. Plaintiff will not suffer any prejudice as a result of the addition of these two Affirmative Defenses.

### 1. The WCA Provides the Exclusive Remedy for Plaintiff's Claims of Physical Injury

Without in any way conceding that damages for Plaintiff's alleged miscarriages suffered during her employment with Wellington would be recoverable as a measure of damages under any circumstances,[4] in an abundance of caution, Defendants seek to add the Affirmative Defense of workers' compensation exclusivity. Specifically, the WCA's exclusivity provision bars common law claims against an employer when (1) the plaintiff is shown to be an employee, (2) her condition is shown to be a personal injury within the meaning of the WCA, and (3) the injury is shown to have arisen out of and in the course of employment. Foley v. Polaroid Corp., 381 Mass. 545, 548-49 (1980); see also G.L. c. 152, § 24 ("An employee shall be held to have waived his right of action at common law . . . in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right . . . . "). "An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects." Doe v.

---

[4] Plaintiff filed her administrative charge with the Massachusetts Commission Against Discrimination on July 9, 2018, alleging that Wellington terminated her employment in violation of M.G.L. c. 151B, due to her gender, national origin, pregnancy and in retaliation for engaging in protected activity. The only adverse job action within the meaning of M.G.L. c. 151B to which Plaintiff was ever subjected and/or that occurred within the applicable limitations period of 300 days, was the termination of her employment on September 12, 2017. See M.G.L. c. 151B, § 9. Thus, Plaintiff cannot claim nor recover compensatory damages for alleged events predating her termination. Such claims are time-barred.

Purity Supreme Inc., 422 Mass. 563, 566 (1996) (quoting Caswell's Case, 305 Mass. 500, 502 (1940)).

Here, Plaintiff purports to claim that she suffered physical injury (i.e., miscarriages) on account of allegedly discriminatory or tortious treatment while employed at Wellington.  As such, Defendants seek to add the following Affirmative Defense:

> *Without conceding Plaintiff's claims have merit or that such claims are timely, any claims for compensatory damages arising from alleged physical injury Plaintiff claims to have suffered in the course of her employment with Wellington are barred, in whole or in part, by the exclusivity provision of the Massachusetts Workers' Compensation Act, G. L. c. 152, § 1(7A).*

### 2.   Plaintiff's Claims for Economic Damages are Barred in Whole or in Part Under the After-Acquired Evidence Doctrine Due to Her Falsification of Her Employment Application

Defendants seek leave to amend to add the after-acquired evidence doctrine as an Affirmative Defense.  The after-acquired evidence doctrine permits an employer to demonstrate that information subsequently discovered would have justified the employer's adverse job action and permits an employer to limit damages to a former employee. McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 362, 115 S. Ct. 879, 886, 130 L. Ed. 2d 852 (1995) (holding that an employer may rely on after-acquired evidence of wrongdoing to limit plaintiff's damages); Clemente v. Crane, 97 F.3d 1445 (1st Cir. 1996) (holding that after-acquired evidence limits back-pay and front pay damages); see Wehr v. Ryan's Family Steak Houses, Inc., 99 F.3d 1140 (6th Cir. 1996) (after-acquired evidence falsifications of plaintiff's resume is relevant to plaintiff's recovery); Flesner v. Technical Communications Corp., 410 Mass. 805, 816 (1991) (discussing after-acquired evidence principles in light of defendant's discovery of plaintiff's alleged resume misrepresentations following end of employment).

The Threadneedle Memo and Plaintiff's deposition testimony support a finding that, unbeknownst to Wellington at the time, Plaintiff had falsified her Employment Application in a material way.  This information discovered in the course of this litigation provides the basis for Defendants to argue to a jury that had Wellington discovered Plaintiff's material falsification of her Employment Application at the time of hire it would not have hired her and/or had Wellington discovered Plaintiff's falsification of her Employment Application after her hire, it would have terminated her employment.  Accordingly, Defendants move for leave to add the following Affirmative Defense to their Answer:

> *Plaintiff's claims for economic damages should be barred or limited by any after-acquired evidence discovered by Defendants that would show that Plaintiff would not have been hired or her employment would have been terminated on other grounds.*

WHEREFORE, Defendants request that this Court grant their Motion for Leave to Amend their Answer and grant the relief requested herein.

Respectfully Submitted,
Defendants,

WELLINGTON   MANAGEMENT   COMPANY
LLP and CHARLES ARGYLE,

By their attorneys,

*/s/ Stephen T. Paterniti*
Stephen T. Paterniti, BBO# 564860
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, Massachusetts  02116
TELE: (617) 367-0025
FACSIMILE: (617) 367-2155

Beverly Garofalo
Admitted *Pro Hac Vice*
JACKSON LEWIS P.C.
90 State House Square
Hartford, Connecticut 06109
TELE:  (860) 331-1535
FACSIMILE:  (860) 247-1330

Dated:  March 2, 2021

## **CERTIFICATE OF SERVICE**

This hereby certifies that on March 2, 2021, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Stephen T. Paterniti*
Jackson Lewis, PC