**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

GIGI KAI ZI CHAN

        Plaintiff,

        v.

WELLINGTON MANAGEMENT
COMPANY LLP AND CHARLES ARGYLE,

        Defendants.

Civil Action No. 19-cv-11605-WGY

**MEMORANDUM IN FURTHER REPLY TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Wellington Management Company LLP ("Wellington") and Charles Argyle submit this reply in further response to their Motion for Summary Judgment. As discussed below, Plaintiff has failed in her Opposition to Defendants' Motion for Summary Judgment ("Opp. Br.") [Dkt. No. 67], Responsive Statement of Material Facts ("P. Res. Facts") and Statement of Additional Material Facts ("P. Facts") [Dkt. No. 68] (collectively, the "Opposition"), to identify sufficient evidence on pretext for her discrimination and retaliation claims to survive summary judgment. Plaintiff's Opposition also clarifies that her common-law tortious interference claims are a mere recast of these statutory claims and, thus, are subject to dismissal.

## I.    PLAINTIFF'S OPPOSITION SHOULD BE DISALLOWED AS UNTIMELY

Defendants object to Plaintiff's as untimely. After obtaining two extensions, Plaintiff let her March 31, 2021 filing deadline pass without filing a (third) motion to extend or otherwise showing good cause. See Cruz v. Bristol-Myers Squibb Co., PR, 699 F.3d 563, 570 (1st Cir. 2012) (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir. 1992)) (noting a

"scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded without peril").

## II. THE OPPOSITION PRESENTS NO EVIDENCE FROM WHICH A REASONABLE JURY COULD CONCLUDE THAT THE STATED REASONS FOR TERMINATING PLAINTIFF'S EMPLOYMENT WERE PRETEXTUAL

Plaintiff has failed to present admissible evidence sufficient to raise a genuine issue of material fact in dispute on pretext.  Plaintiff's Responsive Statement of Material Facts and her Additional Material Facts are riddled with argument[1] and self-serving characterizations, which should be disregarded.  The remaining factual assertions that are supported by record evidence do not create a genuine issue of material fact sufficient to defeat summary judgment.  Plaintiff's memorandum of law, in turn, is devoid of citations to record evidence or case law, beyond the bare minimum setting forth the standard on summary judgment.  "Essentially, she is asking [the Court] to do one of two things: accept what she says as gospel or mine the record [itself] to confirm the truth of her story. . ."  Rodriguez-Machado v. Shinseki, 700 F.3d 48, 49-50 (1st Cir. 2012) (citing United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)) (per curiam) ("Judges are not like pigs, hunting for truffles" in the record).  Thus, on the record before the Court, for the reasons set forth in Defendants' initial briefing and below, summary judgment should enter on Plaintiff's claims.

---

[1] See, e.g., P. Res. Facts ¶¶26, 27, 30, 35, 38, 43, 68, 71, 74, 77, 81, 89, 9, 98, 106 and 107; P. Facts ¶¶ 21, 22, 24, 28, 29, 30, 31, 32, 33, 35, 37, 38, 39, 45, 50, 51, 52, 53, 55, 60, 69, 71, 72, 75, 76, 81 and 85.  See also United States v. Castro-Davis, 612 F.3d 53, 68 (1st Cir. 2010) ("[A]rguments and statements of counsel are not evidence."); Siupa v. Astra Tech, Inc., Civil Action No. 10-10525-LTS, 2013 U.S. Dist. LEXIS 128925, 2013 WL 4854031, at *7 (D. Mass. Sept. 10, 2013) (striking statements in the plaintiff's "affidavit regarding what is 'required by Massachusetts law,' and whether certain conduct amounts to 'sexual harassment'" on the grounds that a plaintiff "may not rely upon [his or] her own interpretation of the law or the legal conclusions [he or] she wishes the Court to draw from the facts at hand." (ellipses omitted).

**A.  Plaintiff's Secret Recordings Belie Her Efforts to Raise a Triable Issue of Fact**

Defendants recognize their difficult task on summary judgment.  The parties offer competing narratives.  Plaintiff claims to have worked in a discriminatory environment in which critiques of her employment were undeserved and linked to her protected class and conduct. Defendants contend that Plaintiff was entrenched in business grievances around the timing of her fund launch and access to Wellington clients and that, despite clear notice from Mr. Argyle, she would not commit to change to meet Wellington's broader performance expectations.

However, this is a rare case in which the Court need not accept either party's characterizations of the evidence.  It can hear the parties interact at length in Plaintiff's secret recordings of meetings with Messrs. Argyle and Mattiko in the days and months before her termination, which the parties agree are crucial pieces of evidence for the Court to consider on summary judgment. Defendants respectfully submit that upon review of these recordings, and in light of the undisputed evidence, the Court will agree with Defendants that this lawsuit can be disposed of on summary judgment.

**B.  Plaintiff has Not Cited Admissible Evidence to Defeat Summary Judgment on her National Origin, Gender and Pregnancy Discrimination Claims**

Plaintiff asks the Court to put her case to a jury based on her arguments that negative feedback she received at Wellington must necessarily have been tied to her protected classes. However, simply saying it does not make it so. For example, Plaintiff speculates that an Asian male colleague would not have said she looked "ridiculous" during her P&P panel presentation had she been a white male.  Even if this statement was made, Plaintiff's perceptions of her colleague's motives are not evidence of discrimination. Plaintiff cannot meet her burden on summary judgment by simply dismissing the chorus of negative feedback she received from a variety of sources as inaccurate or inherently tied to a protected class.  See Henderson v.

Massachusetts Bay Transp. Auth., 977 F.3d 20, 29 (1st Cir. 2020) ("[T]he plaintiff's 'subjective belief of discrimination is not sufficient to withstand summary judgment.'") (Citations omitted); Brader v. Biogen, 983 F.3d 39, 56 (1st Cir. 2020) (subjective speculation amounted to no more than a disagreement with employer's business rationale).

What matters on summary judgment is not Plaintiff's perception or characterization of events, but whether there are genuine issues of material fact upon which a reasonable jury could find that Mr. Argyle did not sincerely believe the legitimate, non-discriminatory reasons underlying his decision to terminate. Vélez v. Thermo King de P.R., Inc., 585 F.3d 441, 452 (1st Cir. 2009) ("in assessing pretext, [our] focus must be on the perception of the decisionmaker, that is, whether the employer believed its stated reason to be credible"); Kouvchinov v. Parametric Tech. Corp., 537 F.3d 62, 70 (1st Cir. 2008) ("[I]t is the decisionmaker's reasonable belief that guides the inquiry, not whether the employee was or was not guilty of the suspected misconduct.").

While the parties quibble around the edges of the record evidence, there is simply no genuine issue of material fact in dispute to warrant a jury trial on the central issue of pretext. Rather, the undisputed record evidence demonstrates that:

- Mr. Argyle supported Plaintiff's hire and then spent internal capital to launch and seed a fund for Plaintiff to manage. (Defendants' Statement of Facts ("Facts"), ¶¶16-17; 44-45[Dkt. No. 55]).

- Mr. Argyle, who did not have day-to-day supervisory responsibilities over Plaintiff and communicated with her just a few times a year, received information from a number of individuals that Plaintiff had a poor attitude, did not accept feedback, was not collaborative and was not contributing sufficiently to the investment dialogue. (Facts, ¶¶24-25, 30, 39-40, 49-51, 54-57, 60, 81, 89).

- Mr. Argyle's talking points for his 2015 year-end meeting with Plaintiff reflected these themes (P. Facts, ¶45) as did his talking points a full year later in preparation for his 2016 year-end meeting, after receiving still further negative feedback from a variety of sources, including Plaintiff's dismal rankings amongst her peers. (P. Facts, ¶ 67).

- After their 2016 year-end meeting, Mr. Argyle sent Plaintiff an email outlining his serious concerns and advising Plaintiff that her "short to medium term imperative" was to respond to his feedback. Plaintiff never responded.[2] (Facts, ¶¶74-78).

- By early May 2017, Mr. Argyle was still open to the idea of Plaintiff remaining with Wellington if she provided a "genuine response" to his feedback. (Facts, ¶82, Ex. 19 to Declaration of Henry Philip).

- In June 2017, having received no response from Plaintiff, Mr. Argyle made his decision to terminate her employment. (Facts, ¶¶91-93).

In an unsuccessful effort to create a dispute of material fact on pretext, Plaintiff first argues that Mr. Argyle could not sincerely have believed the employment relationship was "futile" in June 2017, because she had told Mr. Mattiko on May 31, 2017, that "her feelings toward Wellington would likely greatly improve if she was afforded the client access that she had worked so hard to achieve." (Opp. Br. 16) (Emphasis added). This argument of counsel is not evidence sufficient to defeat summary judgment. Brader, 983 F.3d at 56. Moreover, this evidence actually supports the stated legitimate reasons for her termination. Six months after her year-end meeting with Mr. Argyle (during which she had delivered the same ultimatum), Plaintiff still had not moved past her disappointment concerning the timing of the fund launch and lack of client access, further illustrating that she had not "embraced" Mr. Argyle's feedback. (Facts, ¶¶71, 75).

Plaintiff next argues that a factual question exists on pretext because a jury listening to the secret recordings could find that she had a good attitude and accepted feedback. (Opp. Br. 16-17). In so arguing, Plaintiff improperly urges the Court to substitute its judgment for that of Wellington's based on conclusions it drew over the course of Plaintiff's employment. See

---

[2] Plaintiff's post-hoc claims she did not read this critical email from her manager in the several weeks before her maternity leave began and that she had decided it was best for her not to respond upon her return, even if true, are irrelevant. (P. Facts. ¶80). They do not raise a jury question as to Mr. Argyle's belief that Plaintiff had defied his explicit directive. Brader, 983 F.3d at 59 (1st Cir. 2020) ("Remember: as sole decisionmaker, [the supervisor] is our focus".)

Rodríguez-Cardi v. MMM Holdings, Inc., 936 F.3d 40, 48-49 (1st Cir. 2019).  Moreover, contrary to Plaintiff's self-serving characterizations, no reasonable juror hearing the recordings would find that Plaintiff displayed a good attitude or was accepting of feedback – she was stuck on what she perceived to be broken business promises and never showed any inclination to consider, much less respond to, Mr. Argyle's clearly articulated concerns.

Plaintiff also inexplicably argues that a reasonable jury could find that Human Resources and Mr. Mattiko had fabricated observations they provided to Mr. Argyle about Plaintiff's lack of collaboration and contribution.  (Opp. Br. 17).  However, Plaintiff has failed to direct the Court to admissible evidence to support this implausible claim.  Henderson, 977 F.3d at 29 ("In opposing summary judgment, the plaintiff bears the burden of producing evidence sufficient to rebut defendant's arguments but cannot rely on 'conclusory allegations, improbable inferences . . . or rank speculation' . . .") (citations omitted).  Moreover, even if such evidence existed (it does not), it would have no bearing on the critical issue on summary judgment, namely, whether Mr. Argyle believed the reasons for termination.  See Vélez, 585 F.3d at 452; Kouvchinov, 537 F.3d at 70.

Lastly, Plaintiff argues that Mr. Argyle's testimony that he was struggling under the circumstances to justify Plaintiff's continued high compensation is not credible because Plaintiff's employment did not immediately terminate.  (Pl. Opp. 15-16).  As a threshold issue, the fact that Plaintiff was not notified of the termination until a few months after Mr. Argyle's decision does not undermine Mr. Argyle's sincere belief, acting as the steward of the firm's resources, that her employment was not justified in the long run.  Plaintiff does not cite to any evidence that at the time Mr. Argyle made the decision he had anticipated any delay in implementation.  See Robinson v. Town of Marshfield, 950 F.3d 21, 25 (1st Cir. 2020) (focus of pretext inquiry is "the perception of the decisionmaker").  On the contrary, Mr. Argyle stated he wanted the termination completed

"as soon as prudently possible." (Ex. 22 to Declaration of Henry Philips, attached as Ex. A to Defendants' Rule 56.1 Statement of Facts). Similarly, Plaintiff's entirely speculative argument that her future value to Wellington exceeded her compensation fails to raise a triable issue of fact as to Mr. Argyle's genuine belief, on balance, that he could not justify Plaintiff's continued employment.  When, as here, courts are "faced with employment decisions that lack a clear discriminatory motive," it "may not sit as super personnel departments, assessing the merits -- or even the rationality -- of employers' nondiscriminatory business decisions." <u>Rodríguez-Cardi</u>, 936 F.3d at 48-49.

### C.  Plaintiff has Not Raised a Triable Issue on her Retaliation Claims

Plaintiff has failed to overcome Defendants' argument that she has not offered evidence of "causation" to raise a jury question on even a <u>prima</u> <u>facie</u> case of retaliation.  (D. Br., 14-16). Plaintiff makes passing reference to "temporal proximity," but offers no analysis or record cites. (Pl. Opp. 17).  There is no temporal proximity.  Plaintiff alleges she first complained of her perception of disparate treatment in December 2014 – <u>two and one-half years</u> before the termination decision.  (Facts, ¶¶44-45, 92, 103).   Plaintiff was not subjected to an adverse job actions in those intervening years.  On the contrary, <u>after</u> she claims to have complained repeatedly, Mr. Argyle championed the seeding and launch of a fund for Plaintiff to manage.  (Facts, ¶¶16-17; 44-45[Dkt. 68]).  Plaintiff's self-serving dismissal of negative feedback as necessarily tied to her alleged protected activity is not evidence sufficient to defeat summary judgment.[3]  Were this so, then no employer could ever address performance concerns, much less terminate, an employee who alleges to have raised concerns of discrimination.  <u>See</u> <u>King v. Town of Hanover</u>, 116 F.3d

---

[3] In fact, Plaintiff alleges that she received a "positive" review in January 2015, <u>after</u> she had allegedly complained of discriminatory treatment a month prior.  (P. Facts ¶17).

965, 968 (1st Cir. 1997) ("It is insufficient for [a plaintiff] to simply recount that he complained and that he was disciplined . . . later."); Billings v. Town of Grafton, 441 F. Supp. 2d 227, 243 (D. Mass. 2006) ("[Plaintiff] must put forth evidence that the stated reasons for the [specific adverse action] were pre-textual. It is not enough that her allegations of . . . harassment set in motion a chain of events that led to her transfer.").

Even if Plaintiff had offered sufficient evidence of causation, summary judgment is still warranted insofar as she relies upon the same inadequate "evidence" of pretext to satisfy her burden on her claims of retaliation.[4]  (Opp. Br. 17).

Lastly, Plaintiff argues that even if her "poor attitude" and "unwillingness to accept feedback" were the real reasons for her termination, they are so "intertwined" with her alleged protected activity that a jury could find these reasons to be retaliatory.  (Pl. Opp. 17-18).  Again, the Court should disregard argument of counsel lacking in legal support. Castro-Davis, 612 F.3d at 68.  Moreover, it is self-evident that an employee can complain of discrimination and still have a poor attitude and be unwilling to accept feedback.  Indeed, Plaintiff admits that observations of her "attitude of pessimism that prevent[ed] her from integrating" were "shared by many" at the firm.  (Pl. Opp. 17). What Plaintiff has not done in her Opposition is provide evidentiary support for her conclusory assertion that longstanding and widely held concerns about Plaintiff's performance deficiencies did, in fact, emanate from her alleged complaints of perceived discrimination. For example, Plaintiff asserts in conclusory fashion that observations about her unwillingness to accept feedback "stemmed from" her alleged complaints about the AP&P panel in 2015. (Pl. Opp. 18). However, this unsupported allegation is undermined by record evidence,

---

[4] Defendants accept as true Plaintiff's claims she complained about discrimination solely for purposes of summary judgment.

such as project manager Elizabeth Hogbin's comment about Plaintiff's difficulties and denials in receiving feedback after her June 2016 presentation to GRG. (Facts, ¶¶47-51).

## III.   THE DERIVATIVE TORTIOUS INTERFERENCE CLAIMS AGAINST WELLINGTON AND MR. ARGYLE SHOULD BE DISMISSED

In her Opposition, Plaintiff argues that her common-law tortious interference claims should survive summary judgment for the same reasons as her statutory discrimination claims. However, having failed to raise a triable issue of material fact on her discrimination claims, Plaintiff's tortious interference claim against Mr. Argyle should also be dismissed.

Moreover, even if Plaintiff's G.L. c. 151B claims survive summary judgment, Plaintiff has now made clear that she has no additional or different evidence to support her tortious interference claims against Wellington and Mr. Argyle – they are entirely derivative of her claims of discrimination and retaliation against Wellington. (Opp. Br. 18). Based on this acknowledgment, the tortious interference claims against Wellington and Mr. Argyle should be dismissed as they are simply "recast" discrimination claims. Moreover, as to Mr. Argyle, Plaintiff should not be permitted to circumvent the administrative requirements of G.L. c. 151B by asserting common-law claims against him that derive entirely from the same theories and evidence as her statutory claims. See Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C., 474 Mass. 382, 415, 50 N.E.3d 778, 783 (2016) (upholding dismissal of a tortious interference claim on the grounds that a claim that is "merely a recast version of a claim that could have been made under Mass. Gen. Laws ch. 151B . . . is barred by that statute's exclusivity provision"); see also Eichenholz v. Brink's Inc., Case No. 16-cv-11786-LTS, 2019 U.S. Dist. LEXIS 35522, *27-29 (D. Mass. Mar. 9, 2019) ("Insofar as the plaintiff's common law claim is merely a recast version of a claim that could have been made under G.L. c. 151B, it is barred by that statute's exclusivity provision. . . . Eichenholz's tortious interference claim is merely a backdoor way of bringing his

discrimination claim, which is not proper under the statute."); cf. Galletly v. Coventry Healthcare, 956 F. Supp. 2d 310, 314-15 (D. Mass. 2013) (refusing to dismiss the plaintiff's breach of contract claim as a recast discrimination claim because it alleged that the defendant had violated its employee handbook by failing to afford the plaintiff promised alternative discipline prior to termination).  Having conceded that her common law claims are entirely redundant of her 151B claims, the claims against Wellington and Mr. Argyle in Counts V and VI are barred and Mr. Argyle should be dismissed from the lawsuit.

Respectfully Submitted,
Defendants,

WELLINGTON MANAGEMENT COMPANY LLP and CHARLES ARGYLE

By their attorneys,

*/s/ Stephen T. Paterniti*
Stephen T. Paterniti, BBO# 564860
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, Massachusetts  02116
TELE: (617) 367-0025
FACSIMILE: (617) 367-2155

Beverly Garofalo
Admitted *Pro Hac Vice*
JACKSON LEWIS P.C.
90 State House Square
Hartford, Connecticut 06109
TELE:  (860) 331-1535
FACSIMILE:  (860) 247-1330

Dated:  April 14, 2021

## <u>CERTIFICATE OF SERVICE</u>

This hereby certifies that on April 14, 2021, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Stephen T. Paterniti*
Jackson Lewis P.C.

4824-2626-1220, v. 1