UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GIGI KAI ZI CHAN,<br><br>    Plaintiff,<br><br>    v.<br><br>WELLINGTON MANAGEMENT COMPANY LLP and CHARLES ARGYLE,<br><br>    Defendants. | Civil Action No. 1:19-CV-11605-WGY |

**PLAINTIFF'S [PROPOSED] SUR-REPLY IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is not a case where, as Defendants assert in their reply brief, the parties merely "quibble around the edges of the record evidence." To be sure, the parties have provided the Court with an extensive factual record that leaves little doubt about *what* happened. The question presented, however, is not about *what* happened, but rather *why*.

Answering that question requires credibility determinations, weighing evidence and drawing inferences—in other words, a jury.[1]

---

[1] In addition to the substantive arguments addressed herein, Defendants also argue that Plaintiff's opposition should be "disallowed as untimely." As reflected in Exhibit A, Plaintiff's counsel reached out to Defendants' counsel prior to the filing deadline to inquire if they had any objection to Plaintiff filing slightly late due to the need to sort through various redaction and confidentiality issues. Defendants' counsel advised that they did not. (Counsel for Plaintiff thereafter spoke with the Court clerk to confirm that no motion would be necessary.) Given Defendants' previous consent to the tardy-filing, it is somewhat perplexing why they now "object." In any event, Plaintiff did not "cavalierly disregard[]" any Court deadlines, and to the extent the Court deems necessary, Plaintiff respectfully requests that the extension be granted *nunc pro tunc*.

I.      **Defendants' Reply Argues to the Wrong Standard**

While Defendants give occasional lip-service to the summary judgment standard, the substance of their arguments generally ignore the Court's obligation to "draw all reasonable inferences in favor of the nonmoving party, and ... not make credibility determinations or weigh the evidence." Winfield v. Keefe, 357 F. Supp. 3d 90, 94 (D. Mass. 2019), aff'd, No. 19-1304, 2020 WL 7069743 (1st Cir. Jan. 29, 2020) quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

For example, Defendants dispute that the following statement, made by Plaintiff during her November 2, 2016 meeting with Charles Argyle, was referencing past complaints of discrimination:

> Just because I look young, just because I'm female, just because I'm Chinese, doesn't mean that people can talk down to me. That's what I've said. Every single time.

Defendants Response to Plaintiff's Local Rule 56.1 Statement of Undisputed Facts, ¶ 73. Given the clarity of this statement, it is hard to imagine how Defendants could possibly claim Plaintiff was not referencing past complaints of discrimination. (What else could she have meant when she said "That's what I've said. Every single time"?) But even if the point were debatable, Plaintiff's assertion that this was a reference to past complaints of discrimination is neither "argument of counsel," nor a "subjective characterization of the evidence." It is a reasonable inference that can— and must—be drawn in Plaintiff's favor for purposes of summary judgment.

Similarly, Defendants reply brief often—and somewhat subtly—frames arguments in a manner that would improperly shift the burden of proof at summary judgment to Plaintiff. For example, Defendants characterize a portion of Plaintiff's pretext argument as being that "Mr. Argyle could not sincerely have believed the employment relationship was 'futile' in June 2017."

Reply at 5. But that is not Plaintiff's argument, as it is not Plaintiff's burden. A reasonable jury could very well find that Mr. Argyle did have such a sincere belief. However, a reasonable jury could also find that he did not. And it is the latter possibility that requires denial of Defendants' motion for summary judgment.

Defendants' reply also somewhat obfuscates applicable law, suggesting the conduct that spurred Plaintiff's internal complaints—such as the comments made at the AP&P—were not actually discriminatory. Reply at 3-4. This issue, however, is immaterial to the present motion. Defendants have conceded for purposes of summary judgment that Plaintiff's complaints were protected activity under Massachusetts law. Further, as explained in Plaintiff's opposition brief, Massachusetts is a "pretext only" jurisdiction. See Opposition at 14. Where, as here, a defendant concedes that the plaintiff can meet her prima facie case, evidence of pretext provides a legally sufficient basis for a jury to infer discriminatory animus. See Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 682-83 (2016). Consequently, Plaintiff has no burden to offer independent evidence of discriminatory bias. The question presented solely concerns pretext.

**II.     A Reasonable Jury Could Find in Plaintiff's Favor**

Disputes about motive rely inherently on circumstantial evidence and, therefore, are ill-suited for resolution at summary judgment. This case is no different. There is no one, single piece of evidence that would compel a jury to find in Plaintiff's favor. Taken as a whole, however, there is an ample factual basis—set forth in Plaintiff's Statement of Additional Material Facts ("SAMF")—for a jury to find that Plaintiff was terminated (i) because of her membership in a protected class and/or (ii) because of her protected activity.

Although Defendants suggest that the Court can ignore most of this evidence and decide the case based solely on two audio recordings, that is not the way summary judgment works.

Whatever the Court's impression may be of the recordings,[2] the Court can neither disregard other material evidence nor supplant the jury's role as factfinder. In short, what matters is not how the Court views the recordings, but how a reasonable jury could perceive the recordings when considered in connection with all other record evidence.

As set forth in Plaintiff's opposition brief, there are numerous inferences a reasonable jury could draw to sustain Plaintiff's claims. Indeed, while Defendants have gone to great lengths trying to paint Plaintiff's tenure at Wellington has wholly unsuccessful—even falsely claiming that Plaintiff was on a "performance watch at the end of 2015"[3]—the record evidence paints a very different picture. Prior to her protected activity, Plaintiff was not only excelling in her role, but was being encouraged by Wellington to "manage portfolios as she did before joining Wellington." SAF ¶¶ 17-20.

A reasonable jury could (and would) find that Plaintiff's protected activity caused a significant shift in how she was viewed at Wellington. That shift is well documented. SAF ¶ 35-39. And the fact that Plaintiff complained of discrimination repeatedly over a long period of time makes her claim of retaliation stronger, not weaker. Plaintiff's November 2, 2016 meeting with Mr. Argyle was effectively a crescendo, with Plaintiff stating in no uncertain terms

> Just because I look young, just because I'm female, just because I'm Chinese, doesn't mean that people can talk down to me. That's what I've said. Every single time.

SAF ¶ 73. Given the context in which this statement was uttered, there is little doubt that Mr. Argyle heard Plaintiff loud and clear. Not only was Plaintiff just weeks away from giving birth,

---

[2] Notably, Plaintiff and Defendants seem equally convinced that the recordings are supportive of their respective positions.

[3] See Response to Defendants' Statement of Facts, ¶ 41.

but another Asian female had recently raised similar complaints of discrimination against Wellington. SAF ¶ 64; Exhibit U.

Likewise, contrary to Defendants' assertions otherwise, the "temporal proximity" between Plaintiff's complaints and her termination is readily apparent. The decision to terminate Plaintiff's employment occurred less than two months after she returned from maternity leave. SAF ¶¶ 79, 84. During that time, Plaintiff had been making diligent efforts to address the alleged concerns expressed by Mr. Argyle in November 2016. SAF ¶ 80.  Subsequent to her return from leave, however, no one had communicated to Plaintiff any dissatisfaction with her work performance. In fact, even during her May 31, 2016 meeting with Mr. Mattiko, he did not express any concern with Plaintiff's contribution to the EMO team.  SAF ¶ 82. Rather, the focus was on whether Plaintiff's view of Wellington—as expressed in her November 2, 2016 meeting with Mr. Argyle—had changed. And it hadn't.

So why was Plaintiff terminated? That is a question for the jury, which could reasonably conclude that it was <u>not</u> because she was earning too much, and <u>not</u> because her employment situation was "futile," and <u>not</u> because of any claimed failure to support the EMO team.[4] The motion for summary judgment must therefore be denied.

### III. <u>Defendants are not Entitled to Summary Judgment on Plaintiff's Interference Claim</u>

Defendants' reply brief asserts—for the first time—that summary judgment should be granted on the tortious interference claims because they are "entirely derivative of [Plaintiff's]

---

[4] Again, there is no evidence that Mr. Mattiko expressed any dissatisfaction with Plaintiff's contribution to the EMO team until <u>after</u> she engaged in protected activity. Nor is there any mention of such dissatisfaction in Mr. Matiko's September 1, 2016 email setting forth his review of Plaintiff's performance. SAF ¶ 66. It is only after Mr. Argyle is counseled by HR to "document" performance deficiencies, SAF ¶ SAF ¶ 67; Exhibit N, Tab 30, that Mr. Mattiko provides an email criticizing Plaintiff in that regard. SAF ¶ 68.

claims of discrimination and Retaliation against Wellington." Reply at 9-10. While this argument should be rejected because it was not timely raised, it also happens to fail as a matter of law. Massachusetts courts have repeatedly held that Chapter 151B does not preempt common-law remedies, including the tort of intentional interference with contractual relations, that pre-date Chapter 151B. Weber v. Cmty. Teamwork, Inc., 434 Mass. 761, 781 n.41 (2001) (citing Comey v. Hill, 387 Mass. 11, 20 (1982) ("The statute broadens existing remedies rather than requiring resort to it as exclusive of all other remedies.")).

Further, even if Chapter 151B did provide for such preemption, it would only apply here if Wellington were found to be Plaintiff's "employer." While Defendants have conceded that issue for purposes of summary judgment, Defendants have retained the right to raise it at trial. Accordingly, Plaintiff should be permitted to retain this alternative theory of liability.

## CONCLUSION

Plaintiff respectfully requests that the motion for summary judgment be denied.

>                              */s/ Patrick J. Hannon*
>                              Patrick J. Hannon (BBO# 664958)
>                              Hartley Michon Robb Hannon, LLP
>                              155 Seaport Blvd., 2nd Floor
>                              Boston, MA 02210
>                              P: (617) 723-8000
>                              F: (617) 447-2800
>                              phannon@hmrhlaw.com

## CERTIFICATE OF SERVICE

I, Patrick J. Hannon, counsel for Plaintiff, Gigi Kai Zi Chan, hereby certify that on May 3, 2021, I caused a copy of the within document to be served upon counsel of record via filing with Court's CM/ECF system.

    */s/ Patrick J. Hannon*
    Patrick J. Hannon

# EXHIBIT A

# Patrick J. Hannon

| | |
|---|---|
| **From:** | Walsh, Sarah W. (Boston) <Sarah.Walsh@jacksonlewis.com> |
| **Sent:** | Wednesday, March 31, 2021 3:09 PM |
| **To:** | Patrick J. Hannon; Paterniti, Stephen T. (Boston) |
| **Cc:** | Garofalo, Beverly W. (Hartford) |
| **Subject:** | RE: Chan - transcripts |
| **Attachments:** | DEF 00009487_Redacted.pdf; DEF 00009641_Redacted.pdf; DEF 00012386_Redacted.pdf; DEF 00028189_Redacted.pdf; DEF 00028703_Redacted.pdf; DEF 00000068_Redacted.pdf; DEF 00004660_Redacted.pdf; DEF 00006071_Redacted.pdf; DEF 00006681_Redacted.pdf |

Hi Patrick,

We do not have any issue if you are unable to get on file by 6.

Attached are our redacted documents.  Please let us know if you have any questions.

Thanks so much,
Sarah



**Sarah W. Walsh**
Attorney at Law
**Jackson Lewis P.C.**
75 Park Plaza
4th Floor
Boston, MA 02116
Direct: (617) 305-1239 | Main: (617) 367-0025 | Mobile: (617) 548-2442
Sarah.Walsh@jacksonlewis.com | www.jacksonlewis.com

Visit our resource page for information and guidance on COVID-19's workplace implications

**From:** Patrick J. Hannon <phannon@hmrhlaw.com>
**Sent:** Wednesday, March 31, 2021 1:01 PM
**To:** Walsh, Sarah W. (Boston) <Sarah.Walsh@jacksonlewis.com>; Paterniti, Stephen T. (Boston) <Stephen.Paterniti@jacksonlewis.com>
**Cc:** Garofalo, Beverly W. (Hartford) <Beverly.Garofalo@jacksonlewis.com>
**Subject:** RE: Chan - transcripts


**[EXTERNAL SENDER]**

Thanks, Sarah. I've got someone working on pulling that together for you, and hope to have it for you shortly. To the extent I don't leave you enough time to get it done before I file, we'll file placeholders as you suggest.

Given the various moving pieces, I'm expecting we won't get this on file until after 6pm. In my experience, the court won't have a problem with that, but let me know if you do.

1

Patrick J. Hannon
Hartley Michon Robb Hannon LLP
155 Seaport Boulevard, 2nd Floor
Boston, MA 02210-2968
Main: (617) 723-8000
Direct: (617) 447-2819
Fax: (617) 447-2800
www.hmrhlaw.com

---

**From:** Walsh, Sarah W. (Boston) <Sarah.Walsh@jacksonlewis.com>
**Sent:** Wednesday, March 31, 2021 12:12 PM
**To:** Paterniti, Stephen T. (Boston) <Stephen.Paterniti@jacksonlewis.com>; Patrick J. Hannon <phannon@hmrhlaw.com>
**Cc:** Garofalo, Beverly W. (Hartford) <Beverly.Garofalo@jacksonlewis.com>
**Subject:** RE: Chan - transcripts

Hi Patrick,

Reaching out as Steve is out of pocket.  Bev and I are around and available so please make sure to include us when you send your opposition and depo excerpts.

We should have the redacted emails to you shortly.  We are trying to be as organized and efficient on those as possible to make it easy on your end to include them.

Regarding the deposition transcripts, in the event that we do not have sufficient time to review prior to filing, please be prepared to include placeholders for today's filing  We want to be mindful of the protective order in place.  We will turn those around to you as soon as possible but given the time wanted to reach out just in case we are unable to get our redactions to you by your filing deadline.

Thanks,
Sarah


**Sarah W. Walsh**
Attorney at Law
**Jackson Lewis P.C.**
75 Park Plaza
4th Floor
Boston, MA 02116
Direct: (617) 305-1239 | Main: (617) 367-0025 | Mobile: (617) 548-2442
Sarah.Walsh@jacksonlewis.com | www.jacksonlewis.com

Visit our resource page for information and guidance on COVID-19's workplace implications

---

**From:** Paterniti, Stephen T. (Boston) <Stephen.Paterniti@jacksonlewis.com>
**Sent:** Wednesday, March 31, 2021 6:39 AM
**To:** Patrick J. Hannon <phannon@hmrhlaw.com>
**Cc:** Walsh, Sarah W. (Boston) <Sarah.Walsh@jacksonlewis.com>; Garofalo, Beverly W. (Hartford) <Beverly.Garofalo@jacksonlewis.com>
**Subject:** Re: Chan - transcripts

2

Patrick - We need the deposition excerpts ASAP. I am unavailable after 9 this morning. We're also going to need more time than noon today to get back to you on everything.

**Stephen T. Paterniti**
Attorney at Law
**Jackson Lewis P.C.**
75 Park Plaza
4th Floor
Boston, MA 02116
Direct: (617) 305-1221 | Main: (617) 367-0025
Stephen.Paterniti@jacksonlewis.com | www.jacksonlewis.com

Visit our resource page for information and guidance on COVID-19's workplace implications

---

**From:** Patrick J. Hannon <phannon@hmrhlaw.com>
**Sent:** Tuesday, March 30, 2021 9:02:48 PM
**To:** Paterniti, Stephen T. (Boston) <Stephen.Paterniti@jacksonlewis.com>
**Cc:** Walsh, Sarah W. (Boston) <Sarah.Walsh@jacksonlewis.com>
**Subject:** RE: Chan - exhibits re: HHMI/Rich Pender

**[EXTERNAL SENDER]**

That should be fine.

Patrick J. Hannon
Hartley Michon Robb LLP
155 Seaport Boulevard, 2nd Floor
Boston, MA 02210-2968
Main: (617) 723-8000
Direct: (617) 447-2819
Fax: (617) 447-2800
www.hartleymichonrobb.com

---

**From:** Paterniti, Stephen T. (Boston)
**Sent:** Tuesday, March 30, 2021 9:01 PM
**To:** Patrick J. Hannon
**Cc:** Walsh, Sarah W. (Boston)
**Subject:** Re: Chan - exhibits re: HHMI/Rich Pender

Thanks. For the two exhibits you attached with highlighted text, are you okay with same approach vis a vis first initials for names even in the highlighted text?

**Stephen T. Paterniti**
Attorney at Law
**Jackson Lewis P.C.**
75 Park Plaza
4th Floor
Boston, MA 02116