UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GIGI KAI ZI CHAN,<br><br>       Plaintiff,<br><br>       v.<br><br>WELLINGTON MANAGEMENT<br>COMPANY LLP and CHARLES ARGYLE,<br><br>       Defendants. | Civil Action No. 1:19-CV-11605-WGY |

**PLAINTIFF GIGI KAI ZI CHAN'S
OPPOSITION TO MOTION TO QUASH TRIAL SUBPOENA**

Plaintiff Gigi Kai Zi Chan ("Ms. Chan" or "Plaintiff") hereby submits her opposition to the motion quash filed by third-party Mina Koide ("Ms. Koide"). For the reasons that follow, there are no grounds for quashing the subpoena, and Ms. Koide should be required to appear and give testimony as commanded by the subpoena.

## I.     Ms. Koide Possesses Relevant Information

As referenced in her motion, Ms. Koide is the plaintiff in an action currently pending in Massachusetts Superior Court against (among others) Wellington Management Company LLP and Charles Argyle. Attached as Exhibit A hereto is a copy of Ms. Koide's court complaint. Attached as Exhibit B is a copy of the Charge of Discrimination ("Charge") that Ms. Koide filed in advance of her court complaint.

The facts alleged by Ms. Koide bear striking resemblance to those here. Like Ms. Chan, Ms. Koide is an Asian female. Like Ms. Chan, Ms. Koide was an investment professional at Wellington supervised by Charles Argyle. Exhibit A, p. 1. Like Ms. Chan, Ms. Koide alleges that

she was treated less favorably than her male, predominantly white, colleagues with respect to various conditions of her employment, including "disparate allocation of marketing resources, disparate allocation of assets under management, [and] denials of promotion and professional development." Id. Like Ms. Chan, Ms. Koide alleges that Defendants terminated her employment after she complained about this disparate treatment.

"There is substantial precedent—including from the First Circuit—recognizing that evidence of an employer's treatment of other employees of the same protected class as the plaintiff is admissible, under Rule 404(b) of the Federal Rules of Evidence, on the question of whether the employer acted with the prohibited discriminatory intent in its actions toward the plaintiff." L'Etoile v. New England Finish Sys., Inc., 575 F. Supp. 2d 331, 335 (D.N.H. 2008) (citing Cummings v. Std. Register Co., 265 F.3d 56, 63 (1st Cir.2001); Brown v. Trs. of Boston Univ., 891 F.2d 337, 349–50 (1st Cir.1989); Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1286 (11th Cir.2008); Ansell v. Green Acres Contracting Co., 347 F.3d 515, 520–25 (3d Cir.2003); Heyne v. Caruso, 69 F.3d 1475, 1479 (9th Cir.1995); Spulak v. K Mart Corp., 894 F.2d 1150, 1156 (10th Cir.1990); Elion v. Jackson, 544 F.Supp.2d 1, 8–9 (D.D.C.2008); Zubulake v. UBS Warburg LLC, 382 F.Supp.2d 536, 544 (S.D.N.Y.2005)); see also Calobrisi v. Booz Allen Hamilton, Inc., 660 F. App'x 207, 209–10 (4th Cir. 2016) ("As a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent.") (quoting Spulak v. K Mart Corp., 894 F.2d 1150, 1156 (10th Cir. 1990)).

In determining the admissibility of such evidence, courts typically consider "whether the other discriminatory behavior described is close in time to the events at issue in the case, whether the same decisionmakers were involved, whether the witness and the

plaintiff were treated in a similar manner, and whether the witness and the plaintiff were otherwise similarly situated." Calobrisi, 660 F. App'x at 209–10. Here, each of these factors weigh heavily in favor of admissibility.

Like Ms. Chan, the gravamen of Ms. Koide's complaint pertains to events occurring in 2015 and 2016. Exhibit A, ¶¶ 25-68. Further, both Ms. Chan and Ms. Koide complained about this disparate treatment to the same person—Wellington's then-CEO Brendan Swords—at roughly the same time, with Ms. Chan complaining in December 2015 and Ms. Koide complaining in January 2016. Compare Exhibit A, ¶ 40 with Exhibit C (Plaintiff's Interrogatory Answers), p. 12.  As noted in Ms. Koide's motion, there was no coordination between Ms. Koide and Ms. Chan in bringing these complaints forward—they were simply experiencing similar treatment at the same time.

Second, Ms. Koide's allegations also involve the same decision-makers. Indeed, Ms. Koide and Ms. Chan were supervised by the exact same group of individuals—Tom Baxter, Charles Argyle, and Brendan Swords.[1]

Third, the evidence will show that Ms. Koide and Ms. Chan were treated in a similar manner. As noted above, Ms. Koide alleges that she was treated less favorably than her male, predominantly white, colleagues with respect to various conditions of her employment, including "disparate allocation of marketing resources, disparate allocation of assets under management, [and] denials of promotion and professional development." As reflected in the Complaint, as well as Exhibits C and E, Ms. Chan experienced similar disparate treatment with respect to the launch of her China Growth Fund and Wellington's refusal to permit Ms. Chan to pursue other

---

[1] While Defendants may claim that Mr. Swords was not involved in the decision to terminate Ms. Chan's employment, there is evidence from which a jury could conclude otherwise. For example, Mr. Argyle testified that the performance review he received from Mr. Swords in late-2016 asserted that "I wasn't doing my job well enough because Ms. Chan was still in Hong Kong" and that "Charles has an issue in Hong Kong he has to deal with." Exhibit D.

advantageous opportunities. Further, like Ms. Koide, Ms. Chan alleges that she suffered retaliation—including the termination of her employment—as a consequence of bringing her complaints forward.

Fourth, while no two employees are ever exactly the same, the evidence will show that Ms. Koide and Ms. Chan were similarly situated in every material way. Although they sat in different offices, they reported through the exact same management team. Likewise, while they were of different national origin—Ms. Koide is of Japanese descent, Ms. Chan Chinese—they shared the status of being Asian females, which was in sharp contrast to the Western European, white men who comprised the vast majority of Wellington's partnership. In short, whatever differences may exist between Ms. Koide and Ms. Chan are not so great as to render this evidence irrelevant.

Lastly, Ms. Koide's testimony is particularly relevant because it is anticipated that Defendants will claim at trial that they did not understand Plaintiff's complaints about her working conditions to be related to any alleged racial or sex discrimination. Evidence of Ms. Koide's complaints is critical to assessing the validity of that claim, as it provides important context for the jury to evaluate Defendants' state of mind at the time it was receiving and responding to Ms. Chan's continued complaints throughout 2016.

## II.  The Subpoena Does Not Seek Privileged Information and Does Not Impose an Undue Burden

If called to testify at trial, Plaintiff anticipates that Ms. Koide would be questioned concerning just three topics: (1) the treatment she experienced at Wellington, (2) the complaints she made to Wellington and the MCAD about that treatment, and (3) the actions that Wellington took in response to her complaints. None of that information is privileged. Nor does requiring Ms. Koide to appear as a witness to testify concerning these matters impose any undue burden. While

it is understandable that Ms. Koide would not want to give Wellington's counsel (which is the same counsel that represents Wellington in the Superior Court action) an extra opportunity to subject her to cross-examination, that interest does not trump her obligation to appear as a witness when summoned to provide relevant testimony in this matter.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the motion to quash be denied.

*/s/ Patrick J. Hannon*
Patrick J. Hannon (BBO# 664958)
Hartley Michon Robb Hannon, LLP
155 Seaport Blvd., 2nd Floor
Boston, MA 02210
P: (617) 723-8000
F: (617) 447-2800
phannon@hmrhlaw.com

## CERTIFICATE OF SERVICE

This hereby certifies that on September 15, 2021, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Patrick J. Hannon*
Patrick J. Hannon
