UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GIGI KAI ZI CHAN<br><br>Plaintiff,<br><br>v.<br><br>WELLINGTON MANAGEMENT COMPANY LLP AND CHARLES ARGYLE,<br><br>Defendants. | Civil Action No. 19-cv-11605-WGY |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION *IN LIMINE* TO EXCLUDE TESTIMONY THAT
PLAINTIFF EXPERIENCED EMOTIONAL DISTRESS RELATED
TO HER EMPLOYMENT AT WELLINGTON PRIOR TO HER TERMINATION**

Defendants Wellington Management Company LLP ("Wellington")[1] and Charles Argyle ("Argyle")[2] (jointly, the "Defendants") respectfully move *in limine* to exclude testimony that Defendants' alleged conduct caused of Plaintiff emotional distress prior to her termination.

**RELEVANT FACTUAL BACKGROUND**

On July 9, 2018, Plaintiff filed a charge against Wellington with the Massachusetts Commission Against Discrimination alleging discrimination and retaliation. Plaintiff thereafter commenced this lawsuit on July 24, 2019, claiming that her September 2017 termination was discriminatory on the basis of her gender, race/national origin, disability/pregnancy, as well as in

---

[1] Plaintiff was employed by Wellington Management Hong Kong ("WMHK"). However, Wellington is not contesting co-employment for purposes of this litigation.

[2] Charles Argyle timely moved for summary judgment on the only count asserted against him, Count 6, which purported to allege a cause of action for tortious interference. The Court ruled as follows: "As to Counts 5 and 6 the motions are allowed insofar as they are duplicative of discrimination counts, but to the extent there is evidence of tortious interference summary judgment is denied."  See Dkt. No. 77. Due to the lack of any evidence of tortious interference, the claim against Mr. Argyle should be dismissed prior to trial, but he joins in this motion because as of the date of the filing of this motion, he remains named as a Defendant on the docket.

retaliation for purportedly complaining about her discriminatory treatment. The only adverse job action within the meaning of M.G.L. c. 151B to which Plaintiff was ever subjected and/or that occurred within the applicable limitations period of 300 days, was the termination of her employment on September 12, 2017. See M.G.L. c. 151B, § 9.

## ARGUMENT

In order to pursue a claim of discrimination or harassment, a plaintiff is required to file a claim with the EEOC or MCAD within 300 days of the alleged unlawful conduct or action. *See* G.L. c. 151B, § 5; 42 U.S.C. § 2000e-5(e)(i). Plaintiff filed her Charge with the EEOC on July 9, 2018. As a result, any alleged acts of discrimination or retaliation occurring prior to September 12, 2017 -- 300 days prior to the date Plaintiff filed the Charge -- are time-barred.

Furthermore, Plaintiff cannot invoke the continuing violation doctrine to rescue her time-barred claims. For the continuing violation doctrine to apply, Plaintiff must plausibly allege that: 1) at least one discriminatory act occurred within the limitations period; 2) the alleged timely discriminatory act has a substantial relationship to the alleged untimely discriminatory acts; and 3) earlier violations outside the limitations period did not trigger Plaintiff's awareness and duty to assert her rights. *See Ocean Spray Cran., Inc. v. MCAD*, 441 Mass. 632, 642-43 (2004). Here, even assuming that Plaintiff's September 12, 2017 termination constitutes an "anchoring event" sufficient to satisfy the first element, the untimely alleged acts that Plaintiff might attempt to shoehorn into a continuing violation fail to satisfy either the second or third elements. As an initial matter, there is no substantial relationship between Plaintiff's time-barred apparent hostile workplace allegations and any anchoring event within the limitations period. Plaintiff alleges that "almost immediately upon joining the firm, Ms. Chan found that Wellington was infected with a sexist and racist culture . . . with managers regularly engaging in sexual banter and other derogatory

behavior." *Compl.* ¶22. She further alleges that "female employees were compelled to dance on a mirrored dance floor while wearing dresses [at a] particularly raucous office party." *Compl.* ¶ 23. Plaintiff also claims that she "was subjected to unwelcome touching and other conduct of a sexual nature." *Compl.* ¶ 23. These allegations have no relationship or bearing on Plaintiff's claim of discriminatory and retaliatory termination which occurred two years after these events supposedly occurred. *See Comiskey v. Hannaford Bros., Co.*, 2018 U.S. Dist. LEXIS 107919, at *23 (D. Mass. June 28, 2018) (continuing violation doctrine did not rescue time-barred hostile work environment claim when anchoring event within limitations period "involved no objectively or subjectively offensive harassment" and therefore could not "serve as a hook for a continuing violation claim"); *Siupa v. Astra Tech, Inc.*, 2013 U.S. Dist. LEXIS 128925, at *34-35 (D. Mass. Sept. 10, 2013) (continuing violation doctrine did not apply when untimely allegations of harassment "took place at company-wide sales meetings and other similar functions involving social as well as business elements" and discipline was imposed which "signaled the end of the original hostile work environment"); *Lukacinsky v. Pan. Serv. Co.*, 2004 U.S. Dist. LEXIS 25846, at *71-72 (D. Mass. Nov. 29, 2004) (claim was time barred when hostile work environment ended months before termination and "thus there is no anchor violation within the limitations period"); *Desrosiers v. Great Atl. & Pac. Tea Co.*, 885 F. Supp. 308, 313 (D. Mass. 1995) ("thematic relationship between the sexual harassment and the later retaliation and termination is not sufficient to make out a continuing violation").

With respect to the third element of the continuing violation doctrine -- the requirement that Plaintiff establish that earlier violations outside the limitations period did not trigger her awareness and duty to assert her rights -- Plaintiff's allegations in the Complaint make explicitly clear that she cannot meet her burden because, if her allegations are believed, she possessed all of

3

the information needed to articulate a claim and did so repeatedly. Plaintiff alleges that she "initially tolerated much of this behavior" but "was compelled to speak up when it appeared that Wellington's sexism and racism were negatively impacting her career." Compl. ¶ 30. Plaintiff asserts that she "spoke up" on September 14, 2015 and numerous times in the fall of 2015. Compl. ¶ 31, 34. Plaintiff also asserts that she complained of discriminatory treatment during a November 2016 meeting she had with Mr. Argyle. Compl. ¶ 51.

In light of the foregoing, there is simply no legal or factual basis for Plaintiff to have waited to assert claims based on this alleged harassment or discrimination. As one court explained under similar circumstances:

> If the victim of sexual harassment perceives the unlawful conduct as undesirable and complains to a supervisor, asking that the harassment cease, she must know the conduct is discriminatory. . . . She therefore had a duty to assert her rights as to these violations in a timely manner.

*Desrosiers*, 885 F. Supp. at 313 (continuing violation could not save plaintiff's hostile work environment claim when plaintiff definitively knew that conduct was "improper and unlawful" yet failed to assert a claim within requisite time). By her own admission, Plaintiff was aware of the alleged unlawful harassment and discrimination when she complained to her supervisors. Therefore, because Plaintiff knew or should have known of her obligation to assert her legal rights, yet she failed to do so, she cannot establish the third element necessary to invoke the continuing violation doctrine. *See Shervin v. Partners Healt. Sys.*, 804 F.3d 23, 25-26 (1st Cir. 2015) (holding that plaintiff's "time-barred discrimination and retaliation claims could not be rescued through the continuing violation doctrine" because a reasonable person in her position would not have thought the situation would improve and would have asserted her rights); *Windross v. Barton Prot. Servs.*, 586 F.3d 98, 103 (1st Cir. 2009) (holding that plaintiff's "attempt to invoke the continuing violation doctrine to rescue some of the claims from dismissal misses the mark because [plaintiff]

4

reasonably believed that earlier violations were discriminatory"); *Cuddyer*, 434 Mass. at 533 (adopting the federal requirement that in order to apply the continuing violation doctrine, plaintiff must demonstrate the prior acts did not have a degree of permanence to them that would otherwise trigger an employee's awareness of and duty to assert his or her rights). Yet, Plaintiff did not make any claim about her employment with Wellington until she filed a Charge exactly 300 days from her termination.

Because Plaintiff cannot recover any damages, including emotional distress damages, that she claims she suffered as a result of these time-barred incidents, she should not be permitted to offer testimony and other evidence about them. *See M.L. v. S.N.*, 85 Mass. App. Ct. 1107, 2014 LEXIS 354, *12-15 (2014 Unpub.) (upholding the preclusion of evidence related to time-barred acts alleged to have caused emotional distress). This is not a speculative concern as Plaintiff alleges that the "toxic environment at Wellington took a toll on her health. Ms. Chan had difficulty sleeping. She lost a significant amount of weight." *Compl.* ¶ 36. Such testimony is irrelevant to the claims to be decided by the jury.

Allowing Plaintiff to offer testimony and evidence about the distress she felt at Wellington prior to her termination should also be barred under Rule 403 as it would undoubtedly cause unfairly prejudice, confuse the issues, and mislead the jury. *See* Fed. R. Evid. 403. If a jury were to award Plaintiff damages for her emotional distress, it would be impossible to disentangle her recoverable damages if it has heard evidence of time-barred distress. Thus, even if her time-barred distress had some probative value, which it does not, such probative value would be substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court exclude any testimony by Plaintiff concerning alleged pre-termination distress.

Respectfully Submitted,

WELLINGTON MANAGEMENT COMPANY LLP and CHARLES ARGYLE,

By their attorneys,

*/s/ Stephen T. Paterniti*
Stephen T. Paterniti, BBO# 564860
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, Massachusetts 02116
TELE: (617) 367-0025
FACSIMILE: (617) 367-2155

Beverly Garofalo
Admitted *Pro Hac Vice*
JACKSON LEWIS P.C.
90 State House Square
Hartford, Connecticut 06109
TELE: (860) 331-1535
FACSIMILE: (860) 247-1330

Dated: September 28, 2021

## **CERTIFICATE OF SERVICE**

      This hereby certifies that on September 28, 2021, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                                           */s/ Stephen T. Paterniti*
                                                          Jackson Lewis P.C.

4837-9840-3068, v. 3