UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GIGI KAI ZI CHAN<br><br>Plaintiff,<br><br>v.<br><br>WELLINGTON MANAGEMENT COMPANY LLP AND CHARLES ARGYLE,<br><br>Defendants. | Civil Action No. 19-cv-11605-WGY |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
*IN LIMINE* TO PRECLUDE COMPARISON EVIDENCE REGARDING THE
TREATMENT OF NON-SIMILARLY SITUATED WELLINGTON EMPLOYEES**

Defendants Wellington Management Company LLP ("Wellington")[1] and Charles Argyle[2] ("Defendants") respectfully move *in limine* to exclude any evidence regarding the treatment of other Wellington employees not similarly situated to Gigi Kai Zi Chan ("Plaintiff"). It is anticipated that Plaintiff intends to offer evidence comparing aspects of her experience to other Wellington employees, such as the timing of the launch of their respective investment funds and the support provided to them by Wellington, purportedly to show discriminatory treatment. This is a termination case in which the jury must decide whether Wellington terminated Plaintiff's employment for discriminatory or retaliatory reasons. Evidence comparing non-similarly situated employees' treatment should be excluded as both irrelevant and unfairly prejudicial.

---

[1] Plaintiff was employed by Wellington Management Hong Kong ("WMHK"). However, Wellington is not contesting co-employment for purposes of this litigation.

[2] Charles Argyle timely moved for summary judgment on the only count asserted against him, Count 6, which purported to allege a cause of action for tortious interference. The Court ruled as follows: "As to Counts 5 and 6 the motions are allowed insofar as they are duplicative of discrimination counts, but to the extent there is evidence of tortious interference summary judgment is denied." See Dkt. No. 77. Due to the lack of any evidence of tortious interference, the claim against Mr. Argyle should be dismissed prior to trial, but he joins in this motion because as of the date of the filing of this motion, he remains named as a Defendant on the docket.

I.      **RELEVANT FACTUAL BACKGROUND**

Wellington hired Plaintiff as an Equity Research Analyst in 2014 in Hong Kong, reporting to Mr. Argyle, Director, Global Equity Portfolio Management ("GEPM"). Mr. Argyle, who was in Boston, had minimal contact with Plaintiff. Tom Baxter, Associate Director, GEPM, located in Hong Kong, had the most day-to-day interactions with Plaintiff. Plaintiff was initially assigned to the Emerging Markets ("EMO") team led by portfolio manager Greg Mattiko. As an Equity Research Analyst, Plaintiff's responsibilities were to research and recommend equities for Mr. Mattiko to buy and sell as the portfolio manager of EMO.

A "mixed picture" developed concerning Plaintiff's employment, including her presentation style and communication skills, her level of engagement and collaboration and the quality and quantity of her contributions to the EMO team and to the broader investment dialogue at Wellington. Perhaps most concerning in Wellington's feedback-intensive environment was Plaintiff's unwillingness to accept constructive criticism.

Despite having accepted an Equity Research Analyst role, Plaintiff was adamant about her desire to take on portfolio management responsibilities. Although not mentioned in her offer letter, Plaintiff claims that she had been promised such responsibilities in the pre-hire process. In 2015, hoping to eliminate Plaintiff's distraction and increase her engagement at the Firm, Mr. Argyle supported the launch and seeding of the China Growth fund for Plaintiff to manage. Unfortunately, Plaintiff's attitude, level of engagement and contributions thereafter remained poor. She seemed aggrieved and dissatisfied, complaining about perceived slights such as the size of the fund, the lack of client access, etc. Plaintiff openly discussed opportunities she had to work elsewhere, prompting Wellington and Mr. Argyle to question her commitment to the Firm.

By November 2016, with Plaintiff's peer feedback ranking her amongst the lowest of more than 100 investors in GEPM and no discernible improvement, Mr. Argyle delivered a clear

message to Plaintiff in her year-end review meeting (which Plaintiff secretly recorded). Mr. Argyle told Plaintiff that things were going "very" poorly. He told her she had a final opportunity to turn things around. Mr. Argyle thereafter sent Plaintiff an email identifying the specific areas in which Plaintiff's performance was lacking and directed her to acknowledge and respond to the feedback. Plaintiff never even sent a reply email.

Upon Plaintiff's return from a maternity leave on April 5, 2017, there was no demonstrable change or improvement. Instead, in a May 31, 2017 meeting with Mr. Mattiko, which Plaintiff also secretly recorded, she remained entrenched in her grievances over alleged broken business promises, and stated that the onus was on Wellington – not her – to change. They had reached a fork in the road. Mr. Argyle, once Plaintiff's biggest supporter, had to admit defeat. Thus, in June 2017, he made the decision to terminate Plaintiff's employment, in consultation with Mr. Mattiko and Mr. Philip. Wellington notified Plaintiff of the termination on September 11, 2017. Plaintiff commenced this lawsuit on July 24, 2019, claiming that her termination was discriminatory on the basis of her gender, race/national origin, disability/pregnancy, as well as in retaliation for purportedly complaining about her discriminatory treatment.[3]

Plaintiff's sole claim in this case arises from the termination of her employment in September 2017. She has not raised a pay disparity claim in her Complaint nor has she suggested one within her discovery responses or deposition testimony. Nevertheless, Defendants expect that Plaintiff may seek to introduce testimony and other evidence about the treatment of other employees as supposed evidence of Defendants' discriminatory animus. Specifically,

---

[3] The only adverse job action within the meaning of M.G.L. c. 151B to which Plaintiff was ever subjected and/or that occurred within the applicable limitations period of 300 days, was the termination of her employment on September 11, 2017. See M.G.L. c. 151B, § 9.

Defendants expect Plaintiff to offer evidence that at least two men were treated more favorably than her with regard to the launch and support of their funds. She is likely to claim that a Portfolio Manager Jun Oh was treated more favorably than her because he proposed his China Contrarian fund in August 5, 2015 and it was approved within three months. Defendants also expect Plaintiff to testify that Mr. Mattiko was treated more favorably than her because his EMO fund was launched within six months of his arrival at Wellington.  She may argue that in contrast, her fund took longer to get approved and she had to go through the Philosophy and Process Panel.

Although neither of these issues are adverse actions in this case, Plaintiff is expected to argue that they are relevant to prove the alleged animus underlying the termination decision because she is a Chinese female and they are not.[4]  Attending the Asian PPP as contemplated and implemented in 2015 was for investors who were not yet managing money at Wellington. Plaintiff was not yet managing money at Wellington when she presented to the Asia PPP. without having to present to the Philosophy and Process Panel.

## II.     ARGUMENT

### A.     Plaintiff Cannot Demonstrate the Relevance of So-Called Comparator Evidence

To be relevant, evidence of how another employee was treated in comparison to Plaintiff is only relevant if the other employee is "similarly situated in material respects." *Perkins v. Brigham & Women's Hosp.*, 78 F.3d 747, 751 (1st Cir. 1996); *see Kosereis v. Rhode Island*, 33 F.3d 207, 214 (1st Cir. 2003) (comparators must be "'similarly situated to [the employee] in all relevant respects" (quoting *Conward*, 171 F.3d at 20)).  Absent a showing that any Wellington

---

[4] Plaintiff may also intend to offer other evidence in an attempt to compare her experience to Mr. Mattiko, Mr. Oh, or others.

employee was similarly situated to Plaintiff, anecdotal evidence about them is not probative of the termination decision, which is the sole issue in this case. *Rios v. Aramak Corporation*, 139 F. Supp. 2d 210, 216 (D.P.R. 2001) ("Anecdotes about other employees cannot establish that discrimination was a company's standard operating procedure unless those employees are similarly situated to the plaintiff."); *cf. Perkins*, 78 F. 3d at 751 (holding that the proponents of anecdotal evidence must demonstrate that the cases are "fair congeners" – i.e. roughly equivalent and similarly situated) (citing *Dartmouth Review v. Dartmouth College*, 889 F. 2d 13, 19 (1st Cir. 1989)). In determining if two employees' situations are substantially similar, courts often rely on factors such as performance, qualification, conduct, and job duties. *Trs. of Health & Hosps.*, *Trs. of Health & Hosps. of Boston, Inc. v. MCAD*, 871 N.E.2d 444, 451 (Mass. 2007).

Plaintiff bears the burden of demonstrating that another Wellington employee is a comparator before such evidence can be presented to the jury. *Daumont-Colón v. Cooperativa de Ahorro y Crédito de Caguas*, 982 F.3d 20, 30 (1st Cir. 2020) (upholding the exclusion of comparator evidence after trial proffer). "Material distinctions between the two sets of circumstances increase the danger that any such inference would amount to no more than mere speculation, and the district court bears the responsibility of separating the wheat from the chaff." *Id.*

To be similarly situated to Plaintiff, the other Wellington employee must at a minimum: 1) be an Equity Research Analyst, not Portfolio Manager; 2) under the same supervisor; 3) and who otherwise "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Perkins*, 78 F.3d at 751 (quoting *Smith v. Allen Health Sys.*, 302 F.3d 827, 835 (8th Cir. 2002)), quoted in *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 114 (1st Cir. 2015) (rejecting comparators).

Plaintiff cannot establish an adequate comparator in this case but has indicated she intends to present numerous false comparisons between herself and other Wellington employees. While it is unclear how many such false comparisons Plaintiff plans to make, she has confirmed that she intends to renew her summary judgment claim that Mr. Oh or Mr. Mattiko were treated more favorably in launching their respective funds. Neither Mr. Oh nor Mr. Mattiko were similarly situated to Plaintiff.

First, both were Portfolio Managers, rather than Research Analysts like Plaintiff, at the time they sought approval for their funds. Both Mattiko and Oh were team leaders of teams comprised of themselves as the PM and analysts supporting them. In fact, Plaintiff was one of those analysts supporting Mr. Mattiko. Mr. Mattiko had been hired in 2013 by Wellington expressly to create and lead an Emerging Markets team and launch a fund. Mr. Oh had been working at Wellington as an investor for several years prior to Plaintiff's hiring, and had previously launched a number of contrarian funds with the same or similar philosophy and process.

Moreover, there is no evidence that would allow for a determination that Mr. Mattiko, Mr. Oh, or others were "otherwise engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. For example, one of Plaintiff's primary contentions for comparison purposes is that Oh and Mattiko did not have to present to a panel referred to as Asian PPP prior to the launch of their funds while Plaintiff did. But the Asia PPP was not created until 2015 and did not exist when Mr. Mattiko's fund, EMO was approved and launched. This is an obvious differentiating circumstance that would lead to a false comparison.

Another important differentiating factor lies in the fact that attending the Asian PPP as contemplated and implemented in 2015 was for investors who were not yet managing money at Wellington. Plaintiff was not yet managing money at Wellington when she presented to the Asian PPP. Although Mr. Mattiko and Mr. Oh sought and obtained approval to launch funds during Plaintiff's employment, both were already managing money at Wellington at the time they did so.

Plaintiff also has no evidence of market conditions, marketability and market timing of EMO, China Contrarian fund, or China Growth Fund that would permit for any conclusion that they should be considered as comparable in terms of how long it took to approve or launch each fund into the market. These issues are widely variable, and can influence whether, when and how a fund is approved, launched and supported. Indeed, the three funds are dissimilar. Mr. Mattiko's EMO fund is not limited to the China equities market. Mr. Oh is a contrarian investor, which is a different style and approach than Plaintiff.

In addition, contrary to Plaintiff's allegations, Mr. Oh or Mr. Mattiko did not have similar performance deficiencies as Plaintiff. There is absolutely no evidence that either Mattiko or Oh, was identified by Wellington as having a poor attitude. Thus, there is no reliable information on which Plaintiff could even claim that she was treated differently than these supposed comparators, even if this were her claim. Accordingly, at the relevant times, Mr. Oh and Mr. Mattiko were not similarly situated as Plaintiff and the jury should not hear evidence on an inherently false comparison between them. *See Welgoss v. Mass. DOT*, 2016 Mass. App. Unpub. LEXIS 1045 at *6 (summary judgment for employer where plaintiff and younger comparator were not similarly situated because they had "different title[s], received different pay

and benefits, performed separate and independent duties," and plaintiff "occupied a management position" while the comparator did not).

### B. The Admission of So-Called Comparator Evidence Would be Unduly Prejudicial and Speculative

Even if Plaintiff could demonstrate some remote theory that evidence of the treatment of other Wellington employees is relevant, it should be excluded nonetheless because the probative value of such evidence is substantially outweighed by the danger of unfair prejudice and confusion of the issues. Fed. R. Evid. 403. Extended evidentiary presentations about whether Plaintiff did or did not get her fund approved as quickly as other individuals at Wellington, or whether their approval process happened in exactly the same way, fundamentally distracts from the issue to be tried: whether Plaintiff's termination was unlawful. Thus, the jury could be confused into believing that the 2015 China Growth Fund approval process is somehow relevant to her claim of unlawful discharge two years later. Wellington's approval of Plaintiff's China Growth Fund was not an adverse action but an effort to support a disgruntled employee. Plaintiff should not be permitted to present wholly unsupported speculation about other fund approval processes in which she did not participate and has no direct knowledge.

There is no probative value to information about the treatment of other Wellington employees by individuals not involved in the decision to terminate Plaintiff's employment and so Plaintiff is in no way prejudiced by the exclusion of such information. Conversely, such evidence could be extremely prejudicial as it would encourage the jury to make a liability determination based on time-barred events. At minimum, it would confuse the jury into believing Plaintiff is alleging a disparate claim, when the only issue before the jury is whether the termination was discriminatory or retaliatory.

Accordingly, the Court should exclude this type of argument, testimony, and other evidence.

### III. <u>CONCLUSION</u>

Based on the foregoing, Defendants respectfully request the Court to grant this motion *in limine* in its entirety.

                                                                                     Respectfully Submitted,

WELLINGTON MANAGEMENT COMPANY and CHARLES ARGYLE,

By their attorneys,

*/s/ Stephen T. Paterniti*
Stephen T. Paterniti, BBO# 564860
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, Massachusetts 02116
TELE: (617) 367-0025
FACSIMILE: (617) 367-2155

Beverly Garofalo
Admitted Pro Hac Vice
JACKSON LEWIS P.C.
90 State House Square
Hartford, Connecticut 06109
TELE: (860) 331-1535
FACSIMILE: (860) 247-1330

Dated: September 28, 2021

## **CERTIFICATE OF SERVICE**

This hereby certifies that on September 28, 2021, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Stephen T. Paterniti*
Jackson Lewis P.C.

4819-0755-2764, v. 3