UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GIGI KAI ZI CHAN,

    Plaintiff,

    v.

WELLINGTON MANAGEMENT COMPANY LLP, and CHARLES ARGYLE,

    Defendants.

Civil Action No: 1:19-CV-11605-WGY

**PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE EXPERT TESTIMONY
OF LAURA R. STEINER AND MALCOLM S. COHEN**

    Defendants seek to offer expert testimony on the issue of mitigation of damages. This testimony should be excluded under Rule 702 of the Federal Rules of Evidence. Of the three opinions set forth in the defense experts' report (see **Exhibit A**), the first two (which claim that (1) Ms. Chan would have been an "attractive" job candidate and (2) criticize the reasonableness of her job search efforts after her termination) offer no specialized knowledge or interpretation of the cited facts that would be beyond the ken of the judge and jury. As such, they are unhelpful to the finder of fact under Rule 702(a). They also improperly instruct the jury how to decide the ultimate issue of reasonableness. The third opinion seeks to draw a conclusion about the time period within which Ms. Chan supposedly could have found replacement employment. This opinion lacks adequate foundation—it is based on data that does not adequately "fit" the elements of Defendants' mitigation burden under Massachusetts law—and its methodology is unsound given the general labor statistics data it cites and its ultimate specific conclusion about Ms. Chan's job search. See McGovern ex rel. McGovern v. Brigham & Women's Hosp., 584 F. Supp. 2d 418, 426 (D. Mass. 2008) (Young, J.) (citing General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997)).

I.      **Background**

Under Massachusetts law,[1] "basic principles of equity and fairness mandate that the burden of proof [on mitigation] must remain on the employer because the employer's illegal discharge of the employee precipitated the search for another job." Sheriff of Suffolk Cty. v. Jail Officers & Emps. of Suffolk Cty., 465 Mass. 584, 594–95 (2013).

The Massachusetts standard for proving a failure to mitigate is exacting. To carry this burden, a defendant must prove that "(a) one or more discoverable opportunities for comparable employment were available in a location as convenient as, or more convenient than, the place of former employment, (b) the improperly discharged employee unreasonably made no attempt to apply for any such job, and (c) it was reasonably likely that the former employee would obtain one of those comparable jobs." Id. at 592 (citing Black v. School Committee of Malden, 369 Mass. 657, 661–62 (1976).) In Sheriff, the Supreme Judicial Court favorably cited case law from federal courts that have interpreted the concept of "comparable employment" quite narrowly. That is, an "unemployed or underemployed claimant need not go into another line of work, accept a demotion, or take a demeaning position." Id. at 593. Instead, comparable employment means "employment that offers similar long-term benefits and opportunities for promotion as compared to the original position," and "[i]n order for the work to be comparable or substantially similar, the new position must afford a plaintiff **virtually identical promotional opportunities, compensation, job responsibilities, working condition, and status as the former position**." Id. (citing Greenway v. Buffalo Hilton Hotel, 951 F. Supp. 1039, 1061 (W.D.N.Y.1997), aff'd as modified, 143 F.3d 47 (2d Cir.1998)) (emphasis added).

---

[1] In this diversity case, the Federal Rules of Evidence set the standard for admissibility, while the substantive law of the Commonwealth of Massachusetts supplies the standard for mitigation of damages. Fitzgerald v. Expressway Sewerage Const., Inc., 177 F.3d 71, 74 (1st Cir. 1999).

2

Seeking to address this burden, Defendants' experts offer what appear to be three opinions, as follows:

> Opinion 1. "Ms. Chan's . . . qualifications make her an attractive candidate in her occupation and labor markets,"
>
> Opinion 2. "Ms. Chan's post-Wellington job search had numerous issues which could have negatively affected her ability to find replacement employment," and
>
> Opinion 3. ". . .given a reasonable job search, someone with Ms. Chan's experience and qualifications would be able to find replacement employment within 36.7 weeks, which is the 75th percentile duration of unemployment for her occupational group."

Ex. A at 13–14.

These opinions are not adequate to the task at hand. McGovern, 584 F. Supp. 2d at 424.

## II. Opinions 1 and 2 are Not Helpful and Invade The Province of the Jury.

The Defense experts' first two opinions are inadmissible for at least two reasons.

First, under Rule 702(a), expert testimony is not admissible unless "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." The defense experts' first two opinions cannot pass this basic commonsense test. In Sections III and IV of their report (which form the apparent basis for Opinions 1 and 2), the experts summarize various facts adduced in discovery about Plaintiff's professional background and post-Wellington job search efforts. But critically, the experts do not add to this summary of facts <u>any analysis, context, or specialized perspective</u> that interprets those facts. Rather, Opinions 1 and 2 are simply tacked on to the end of a factual summary that offers the jury no help interpreting those facts beyond what it already possesses from its own common sense. Moreover, nowhere in the report do the experts claim to have any "specialized knowledge" relevant to interpret the "attractiveness" of Ms. Chan's particular qualifications for her particular

3

field, or from which to gauge the diligence of her job search efforts. For this reason alone, the first two opinions fail to qualify as "helpful," and must be excluded.

Compounding this deficiency, secondly, Opinion 2 amounts to an improper attempt to tell the jury how it should resolve an ultimate issue of reasonableness. While Opinion 2 is phrased somewhat carefully as a purported expression that "numerous issues" could have "negatively affected" Ms. Chan's job search, the experts' report goes on to draw a contrast in Opinion 3 between (a) Ms. Chan's efforts discussed in Opinion 2 and (b) the length of time during which someone with Ms. Chan's experience and qualifications conducting a "reasonable job search" supposedly would have taken to get a job.[2] Opinion 3 gives no indication what it means by the word "reasonable" beyond the implication that it means something other than Ms. Chan's efforts discussed within Opinion 2. Implicitly, Opinion 2 is simply a conclusion about reasonableness.

While Rule 704 permits expert opinions to embrace an "ultimate issue," federal courts have repeatedly excluded expert testimony that seeks simply to tell the jury whether a mitigating former employee's job search effort was reasonable. E.g., Petrulio v. Teleflex Inc., No. CIV.A. 12-7187, 2014 WL 5697309, at *15 (E.D. Pa. Nov. 5, 2014) ("Allowing Dr. Sodikoff to opine that plaintiff did not use reasonable efforts in searching for other employment would improperly substitute Dr. Sodikoff's judgment for that of the trier of fact."); Castelluccio v. Int'l Bus. Machines Corp., No. 3:09CV1145 DJS, 2012 WL 5408420, at *2 (D. Conn. Nov. 6, 2012) (same); Roniger v. McCall, No. 97 Civ. 8009(RWS), 2000 WL 1191078, at *5 (S.D.N.Y. Aug. 22, 2000) (same). Notably,

---

[2] As discussed further below, the experts neglect to consider that the governing legal standard for mitigation demands a significantly more specific inquiry than merely whether a person has conducted a "reasonable job search." Defendants bear the burden to prove (a) the actual existence of comparable jobs, (b) an unreasonable failure by Plaintiff to apply for those particular jobs, and (c) a reasonable likelihood that Plaintiff would have gotten one of those particular jobs. Sheriff of Suffolk Cty., 465 Mass. at 592.

4

each of the foregoing opinions permitted experts to compare the plaintiff's job search efforts against an objective standard that was within the expert's specialized knowledge. But here, the defense experts do not offer any objective standard against which to measure the reasonableness of Ms. Chan's job search efforts. Indeed, the only standard they cite against which to gauge Ms. Chan's job search efforts is *Ms. Chan's own experience from 2014*, when she first secured her job offer at Wellington (Ex. A at 6). This only further reinforces that the defense experts offer no specialized perspective to help the jury beyond what the jury can already determine from the evidence on its own.

### III. Opinion 3 Lacks Adequate Foundation and Fails to Bridge the Vast 'Analytical Gap' Between its Premises and Conclusion, Making it Unreliable.

The defense experts' third opinion purports to identify a time period within which a person with Ms. Chan's qualifications and experience would have secured a job, given a "reasonable" job search. As support for this claim, the experts point to three items: (1) results of a searches for job postings for purportedly similar jobs filtered by keyword and geography;[3] (2) statistics on national and local unemployment rates within (a) all jobs and within (b) "Management" or "Business and Financial Operations" jobs in the United States, and (3) statistics on duration of unemployment within "Management," and "Business, and Financial Operations" jobs in the United States. Opinion 3 lacks the requisite foundation and "fit" to the facts and issues in this case, and does not reliably apply its premises to its conclusion, as it leaps across a vast "analytical gap" without adequate explanation. Joiner, 522 U.S. at 146.

---

[3] This data is contained in a series of voluminous appendices to the defense experts' report. Plaintiff has attached one short excerpt of this data, which is discussed below. Full copies of the appendices are available to be provided to the Court upon request.

A. <u>Opinion 3 Lacks the Requisite 'Fit' to the Facts of this Case.</u>

Under <u>Daubert</u>, expert evidence must have a valid connection to the pertinent inquiry and adequately address the facts of the particular case. <u>McGovern</u>, 584 F. Supp. 2d at 423 ("The first step of the <u>Daubert</u> inquiry pertains to relevance: to be admissible, an expert's testimony must have a 'valid . . . connection to the pertinent inquiry.''") (citing <u>Cipollone v. Yale Indus. Prods.</u>, 202 F.3d 376, 380 (1st Cir. 2000) (quoting <u>Daubert</u>, 509 U.S. at 592); <u>United States v. Jones</u>, 762 F. Supp. 2d 270, 275 (D. Mass. 2010) (Young, J.), <u>aff'd</u>, 689 F.3d 12 (1st Cir. 2012) ("Penrod's proffered testimony, however, appears to be of limited helpfulness because it does not address directly the particular facts of this case.") As this Court explained in <u>McGovern</u>, this threshold relevance issue can be characterized as one of "fit":

> The Supreme Court has described this consideration as one of "fit," <u>Daubert</u>, 509 U.S. at 591, 113 S.Ct. 2786 (quoting <u>United States v. Downing</u>, 753 F.2d 1224, 1242 (3d Cir.1985)), explaining that expert testimony not relating to an issue in the case "is not relevant and, ergo, non-helpful." <u>Id.</u> (quoting 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 702[02], pp. 702–18 (1988)).

It is well established that relevancy is "gauged in light of the underlying substantive law." <u>Bielunas v. F/V Misty Dawn, Inc.</u>, 621 F.3d 72, 76 (1st Cir. 2010) (quotation marks omitted).

Here, Opinion 3 lacks the requisite "fit" to the factual and substantive legal issues at hand, as it fails to identify jobs that qualify as "comparable employment." For one thing, under Massachusetts law the duty of mitigation does not require a plaintiff to accept a demotion. <u>Sheriff of Suffolk Cty.</u>, 465 Mass. at 593. Despite this, the experts ignore the fact Ms. Chan launched the China Growth Fund in July 2016, meaning she had become a portfolio manager by the time of her termination in September 2017.[4] Thus, the Defendants' experts have mistakenly focused on the

---

[4] Indeed, the experts fault Ms. Chan for not applying to research analyst roles. See Ex. A at 6, item 4. This merely demonstrates their ignorance of the factual question their opinion is supposed to be answering, which is to identify discoverable <u>comparable</u> jobs to which Ms. Chan unreasonably

job Ms. Chan had when she was hired, not the portfolio manager position she held as of her wrongful termination. See id. at 7.[5]

Moreover, under Massachusetts law a defendant cannot satisfy the burden to prove a failure to mitigate merely by (as Defendants' experts claim to have done here) identifying jobs with similar keywords in their titles to the one last held by the plaintiff. Instead, "comparable employment" requires a showing of, among other things, comparable (1) compensation, (2) promotional opportunities, (3) long-term benefits, and (4) status. Sheriff of Suffolk Cty., 465 Mass. at 593. Here, the defense experts' methodology fails to address any of these prerequisites, which is fatal to the relevance of their opinion. The jury would have no basis from which to discern whether any of the jobs in the defense experts' appendices would have actually compensated Ms. Chan at the level she had achieved at Wellington, as opposed to paying her potentially hundreds of thousands of dollars less.[6] Nor could the jury discern whether the jobs identified by the experts offered similar long-term benefits such as lucrative incentive compensation from the management of specific funds (as will be explained by Ms. Chan's damages expert), or an eventual opportunity

---

failed to apply and which she would have been reasonably likely to obtain. Sheriff of Suffolk Cty., 465 Mass. at 593.

[5] It appears the "keyword" approach utilized by the experts is also somewhat inexact. For example, one of the jobs the experts identify in Hong Kong is a role for Citi entitled "GCB Assistant Vice President Problem Management." See **Exhibit B** (excerpt of defense expert report, Appendix C-1, at 7). Ms. Chan was a portfolio manager, not a problem manager.

[6] The Court need not delve into the details of Ms. Chan's compensation for purposes of this motion, as the defense experts fail to provide any compensation information for the purported comparator jobs at all. However, it is of note that the defense experts fail to account for Ms. Chan's expected incentive compensation from managing the China Growth Fund (which will be the subject of testimony from Ms. Chan's damages expert Frank Carr) when making their assumption as to her last compensation level at Wellington. The criticisms that the defense experts lodge at Ms. Chan based on her compensation expectations (see Ex. A at 5–6, item 3) reflect their lack of familiarity with the facts.

for elevation to partnership. The defense experts therefore fail to show that they have identified any "comparable" job under the applicable legal standards.

As Opinion 3 is not an apples-to-apples comparison, it is irrelevant to the task at hand. Daubert, 509 U.S. at 597. For that reason alone it should be excluded.

### B. Opinion 3 Relies Upon Irrelevant Data that Renders its Methodology Sound.

The ultimate conclusion reached by Opinion 3, that a hypothetical person with Ms. Chan's qualifications and experience conducting a "reasonable" job search could have replaced her employment in 36.7 weeks, relies upon data that bears no rational relationship to the facts of this case. For example, the data cited by the experts about unemployment rates and length of unemployment covers all jobs within the categories of "Management" and "Business and Financial Operations Occupations," as defined by the U.S. Bureau of Labor Statistics. See Ex. A at 3 (cited source no. 18). These job categories, however, are vast—lumping together professions as disparate as "Food Service Managers," "Funeral Home Managers," "Agents and Business Managers of Artists, Performers, and Athletes," and "Tax Examiners and Collectors, and Revenue Agents." See attached **Exhibit C**, which is an excerpt of the defense experts' cited source no. 18 (Ex. A at 3).

Remarkably, the very methodology used by the defense experts—drawing a highly specific conclusion about the amount of time in which Plaintiff could have replaced her employment based on general labor statistics across broad job categories—is one that federal courts have repeatedly found unreliable under Daubert. Speights v. Arsens Home Care Inc., No. CV 19-2343, 2020 WL 6343263, at *5 (E.D. Pa. Oct. 29, 2020); Petrulio, 2014 WL 5697309, at *16; Castelluccio, 2012 WL 5408420, at *4 (D. Conn. Nov. 6, 2012); Roniger, 2000 WL 1191078, at **3–4. The following discussion by the Castelluccio court is particularly instructive:

> Castelluccio was an IBM Vice President at the time of his termination in 2008. . . .
> In his report, Dr. Sodikoff specifies that he relied upon data from the U.S. Department of Labor's Bureau of Labor Statistics concerning "Management,

8

> Professional and Related Occupations" job seekers. . . . At his deposition, Dr. Sodikoff testified that the "Management, Professional and Related Occupations" category would include lawyers, dentists, doctors, and "should" also include dental hygienists and paralegals. . . . Dr. Sodikoff further acknowledged that the occupational categories he utilized in forming his opinion did not differentiate between employees at different compensation rates, and that it was "certainly possible" that the "Management, Professional and Related Occupations" category "would lump together, for example, a 65,000 dollar a year dental hygienist with a CEO of a Fortune 500 or 100 company making 20 or 30 times that compensation[.]"
> . . . .
> "In order to be reliable, Sodikoff's opinion as to when [Castelluccio] should have found comparable work should be based on information that is pertinent to [Castelluccio's] field." Roniger, 2000 WL 1191078, at *3. The Court does not agree with the defendant that Dr. Sodikoff's opinion is based on "statistical data regarding the normal length of a job search by comparably situated executives." . . . **The Court concludes instead that the statistical data Dr. Sodikoff relied upon to form his opinion as to when Castelluccio should have found comparable employment was not sufficiently pertinent to Castelluccio's field to be considered reliable.**

Castelluccio, 2012 WL 5408420, at *4–5 (emphasis added).

In this case, the defense experts' methodology suffers from the same flaw. The length of Ms. Chan's job search efforts cannot be extrapolated from U.S. labor statistics on length of unemployment at such a broad range of jobs. See Kumho Tire Co. v. Carmichael, 526 U.S. 137, 154 (1999) (trial court must assess "the reasonableness of [the expert] using such an approach, along with [the] particular method of analyzing the data thereby obtained, to draw a conclusion regarding the particular matter to which the expert testimony was directly relevant.") (emphasis added).

The U.S. Supreme Court has also long held that "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." McGovern, 584 F. Supp. 2d. at 424 (quoting Joiner, 522 U.S. at 146). Here, however, the defense experts offer nothing beyond their own *ipse dixit* to explain the relevance of the unemployment rate data they cite for "Management" and "Business and Financial Operations Occupations" jobs, or indeed the data for all jobs across a select handful

9

of countries. That is, the experts claim that "A lower unemployment rate indicates a more favorable market for jobseekers." Ex. A at 10. However, the experts do not explain the connection between that factual premise (which cites no authority in support, however intuitive it may sound) to the conclusion that Ms. Chan specifically could have found "comparable employment" within a certain range of time.[7]

Finally, the foregoing reliability problems are even further compounded in this case by the fact that the defense experts do not explain the phrase "reasonable job search" that forms the critical premise of Opinion 3. To the extent a "reasonable" job search is a job search that results in a job within the time period that it takes a typical person in the job categories of "Management" and "Business and Financial Operations Occupations" to get a job, then that premise suffers from the analytical problems discussed above: it is not adequately tailored to the Massachusetts legal standard for "comparable employment," which narrows the scope of jobs Ms. Chan had a duty to apply for; and it draws an unacceptably specific conclusion from highly general data without any explanation. These factors together lead to an inescapable conclusion: Opinion 3 is unreliable.

## IV.    Conclusion

The testimony of the defense experts should be excluded from the trial.

---

[7] **Nor indeed is the defense experts' claim necessarily true**. For example, the source cited in footnote 41 of the experts' report contains no less than two different quotations from former Chairpersons of the Federal Reserve cautioning that lower levels of unemployment do not necessarily indicate it has become easier to get a job. See Fed. Reserve Bank of S.F., "What labor market indicators do the FOMC members look at when making their decision?" (Oct. 2013), https://www.frbsf.org/education/publications/doctor-econ/2013/october/labor-market-indicators-monetary-policy-unemployment-rate/ (quoting Chairman Ben Bernanke: "The tendency of recent job losers to leave the labor force likely masks some of the effects of job cuts on the unemployment rate, so that the current measured level of unemployment may understate the extent of job loss or the difficulty of finding new work," and then-Vice Chair Janet Yellen: "A decline in unemployment, when it is not accompanied by sufficiently strong growth, may not indicate a substantial improvement in the labor market outlook.") In any event, the defense experts' cited unemployment rate data are not relevant, since they pertain to *all jobs in the U.S. economy.*

        Respectfully submitted,

        */s/   Hampton M. Watson*
        Patrick J. Hannon (BBO #664958)
        Hampton M. Watson (BBO #705983)
        Hartley Michon Robb Hannon LLP
        155 Seaport Boulevard, 2nd Floor
        Boston, MA 02210
        phannon@hmrhlaw.com
        hwatson@hmrhlaw.com
        (617) 723-8000
        Attorneys for Plaintiff

Date: September 28, 2021

## CERTIFICATE OF SERVICE

    I, Hampton M. Watson, counsel for Plaintiff, hereby certify that on September 28, 2021, I caused a copy of the within document to be filed using the Court's CM/ECF system, which will send notification of such filing electronically to all registered participants.

        */s/   Hampton M. Watson*
        Hampton M. Watson