UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GIGI KAI ZI CHAN<br><br>Plaintiff,<br><br>v.<br><br>WELLINGTON MANAGEMENT COMPANY LLP AND CHARLES ARGYLE,<br><br>Defendants. | Civil Action No. 19-cv-11605-WGY |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION *IN LIMINE* TO PRECLUDE EVIDENCE OF THE
COMPENSATION OF ANY WELLINGTON EMPLOYEE OTHER THAN PLAINTIFF**

Defendants Wellington Management Company LLP ("Wellington")[1] and Charles Argyle[2] ("Defendants") respectfully move *in limine* to exclude any evidence of compensation paid by WMC to any current or former employee, other than Gigi Kai Zi Chan ("Plaintiff"). This is a termination case in which the jury must decide whether Wellington terminated Plaintiff's employment for discriminatory or retaliatory reasons. It is not a pay disparity case and other Wellington employees' compensation has no bearing on her liability or damages claims. Accordingly, such evidence should be excluded as both irrelevant and unfairly prejudicial.

---

[1] Plaintiff was employed by Wellington Management Hong Kong ("WMHK"). However, Wellington is not contesting co-employment for purposes of this litigation.

[2] Charles Argyle timely moved for summary judgment on the only count asserted against him, Count 6, which purported to allege a cause of action for tortious interference. The Court ruled as follows: "As to Counts 5 and 6 the motions are allowed insofar as they are duplicative of discrimination counts, but to the extent there is evidence of tortious interference summary judgment is denied." See Dkt. No. 77. Due to the lack of any evidence of tortious interference, the claim against Mr. Argyle should be dismissed prior to trial, but he joins in this motion because as of the date of the filing of this motion, he remains named as a Defendant on the docket.

I.      **RELEVANT FACTUAL BACKGROUND**

Wellington hired Plaintiff as an equity research analyst in 2014 in Hong Kong, reporting to Mr. Argyle, Director, Global Equity Portfolio Management ("GEPM"). Mr. Argyle, who was in Boston, had minimal contact with Plaintiff. Tom Baxter, Associate Director, GEPM, located in Hong Kong, had the most day-to-day interactions with Plaintiff. Plaintiff was initially assigned to the Emerging Markets ("EMO") team led by portfolio manager Greg Mattiko. As an equity research analyst, Plaintiff's responsibilities were to research and recommend equities for Mr. Mattiko to buy and sell as the portfolio manager of EMO.

A "mixed picture" developed concerning Plaintiff's employment, including her presentation style and communication skills, her level of engagement and collaboration and the quality and quantity of her contributions to the EMO team and to the broader investment dialogue at Wellington. Perhaps most concerning in Wellington's feedback-intensive environment was Plaintiff's unwillingness to accept constructive criticism.

Despite having accepted an equity research analyst role, Plaintiff was adamant about her desire to take on portfolio management responsibilities. Although not mentioned in her offer letter, Plaintiff claims that she had been promised such responsibilities in the pre-hire process. In 2015, hoping to eliminate Plaintiff's distraction and increase her engagement at the Firm, Mr. Argyle supported the launch and seeding of the China Growth fund for Plaintiff to manage. Unfortunately, Plaintiff's attitude, level of engagement and contributions thereafter remained poor. She seemed aggrieved and dissatisfied, complaining about perceived slights such as the size of the fund, the lack of client access, etc. Plaintiff openly discussed opportunities she had to work elsewhere, prompting Wellington and Mr. Argyle to question her commitment to the Firm.

By November 2016, with Plaintiff's peer feedback ranking her amongst the lowest of more than 100 investors in GEPM and no discernible improvement, Mr. Argyle delivered a clear

message to Plaintiff in her year-end review meeting (which Plaintiff secretly recorded).  Mr. Argyle told Plaintiff that things were going "very" poorly.  He told her she had a final opportunity to turn things around.  Mr. Argyle thereafter sent Plaintiff an email identifying the specific areas in which Plaintiff's performance was lacking and directed her to acknowledge and respond to the feedback.  Plaintiff never even sent a reply email.

Upon Plaintiff's return from a maternity leave on April 5, 2017, there was no demonstrable change or improvement.  Instead, in a May 31, 2017 meeting with Mr. Mattiko, which Plaintiff also secretly recorded, she remained entrenched in her grievances over alleged broken business promises, and stated that the onus was on Wellington – not her – to change.  They had reached a fork in the road.  Mr. Argyle, once Plaintiff's biggest supporter, had to admit defeat.  Thus, in June 2017, he made the decision to terminate Plaintiff's employment.  Wellington notified Plaintiff of the termination on September 11, 2017.

Plaintiff commenced this lawsuit on July 24, 2019, claiming that her termination was discriminatory on the basis of her gender, race/national origin, disability/pregnancy, as well as in retaliation for purportedly complaining about her discriminatory treatment.[3]

Plaintiff's sole claim in this case arises from the termination of her employment in September 2017.  She has not raised a pay disparity claim in her Complaint nor has she suggested one within her discovery responses or deposition testimony.  Nevertheless, Defendants expect that Plaintiff may seek to introduce testimony and other evidence about compensation paid to other employees on two grounds.  First, Plaintiff may argue that if white males were paid more than her, that would be evidence of Defendants' discriminatory animus.

---

[3] The only adverse job action within the meaning of M.G.L. c. 151B to which Plaintiff was ever subjected and/or that occurred within the applicable limitations period of 300 days, was the termination of her employment on September 11, 2017.  See M.G.L. c. 151B, § 9.

Additionally, or alternatively, Plaintiff may attempt to offer it purportedly to support her claim for damages. WMC respectfully seeks an order prohibiting Plaintiff from offering any such evidence herself or inquiring about such evidence from WMC's witnesses at trial because it is irrelevant and unduly prejudicial.

## II.  ARGUMENT

### A.  Plaintiff Cannot Demonstrate the Relevance of Compensation Paid to Other Wellington Employees

In order for the compensation of other employees to even conceivably be relevant, the other employees must be comparators. To be a comparator, the other employee must be similarly situated in material respects." *Perkins v. Brigham & Women's Hosp.*, 78 F.3d 747, 751 (1st Cir. 1996); *see also Garcia v. Bristol-Myers Squibb Co.*, 535 F.3d 23, 31 (1st Cir. 2008) (comparators "must 'closely resemble one another in respect to relevant facts and circumstances.'") (quoting *Conward v. Cambridge Sch. Comm.*, 171 F.3d 12, 20 (1st Cir. 1999)); *Kosereis v. Rhode Island*, 33 F.3d 207, 214 (1st Cir. 2003) (comparators must be "'similarly situated to [the employee] in all relevant respects" (quoting *Conward*, 171 F.3d at 20)). To be similarly situated as Plaintiff, the other Wellington employee must be an Equity Research Analyst, not Portfolio Manager, who worked in the Hong Kong office, under the same supervisor and who otherwise "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Perkins*, 78 F.3d at 751 (quoting *Smith v. Allen Health Sys.*, 302 F.3d 827, 835 (8th Cir. 2002)), quoted in *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 114 (1st Cir. 2015) (rejecting comparators).

Plaintiff has not asserted a pay disparity claim, which would be time barred in any event, nor did she seek comparator discovery in this case. In determining if two employees' situations are substantially similar, courts often rely on factors such as performance, qualification, conduct,

4

and job duties. *Trs. of Health & Hosps.*, *Trs. of Health & Hosps. of Boston, Inc. v. MCAD*, 871 N.E.2d 444, 451 (Mass. 2007). Plaintiff cannot establish an adequate comparator in this case. Moreover, the only compensation discovery Plaintiff conducted was an interrogatory seeking "the compensation paid to each individual serving as a portfolio manager in GEPM from 2017 to present." Defendants objected to that interrogatory both because Plaintiff was not a portfolio manager and because it was seeking post-termination information. Thus, there is no reliable information on which Plaintiff could even claim that she was compensated differently that her comparators, even if this were her claim. But, again, it is not.

Absent a showing that any Wellington employee was similarly situated to Plaintiff, anecdotal evidence presented by them is not probative of the personnel decision at issue in this case. *Rios v. Aramak Corporation*, 139 F. Supp. 2d 210, 216 (D.P.R. 2001) ("Anecdotes about other employees cannot establish that discrimination was a company's standard operating procedure unless those employees are similarly situated to the plaintiff."); *cf. Perkins*, 78 F. 3d at 751 (holding that the proponents of anecdotal evidence must demonstrate that the cases are "fair congeners" – i.e. roughly equivalent and similarly situated) (citing *Dartmouth Review v. Dartmouth College*, 889 F. 2d 13, 19 (1st Cir. 1989)).

### B. Compensation Paid to Individuals with Job Duties Vastly Different than Plaintiff's Job Duties is Irrelevant

The report of Plaintiff's expert Frank Carr discusses the 2008 compensation of a Wellington partner obtained by Mr. Carr from public records. Mr. Carr does not base his calculation of front pay damages on Plaintiff becoming a partner, (which even he concedes is "difficult to predict"), the report goes on to gratuitously discuss this partner's compensation from more than ten years ago purportedly because its size buttresses his opinions about the compensation that Plaintiff might possibly have received in the future had she remained

employed by Wellington. Mr. Carr acknowledges, however, that he lacks the "data to confirm if other Wellington partners were compensated more or less than" this single cherry-picked partner. The compensation received by a single partner is therefore not a reliable measure of overall partner compensation, which, in any case, Mr. Carr concedes is not relevant because he cannot predict Plaintiff would have become a partner had she remained at Wellington. This gratuitous information should therefore be precluded as irrelevant. The same holds true for compensation earned by others at Wellington.

As stated previously, there is no reliable information on the compensation of other Wellington employees. Moreover, compensation is based on a number of factors so it would be misleading and unreliable if admitted in some anecdotal fashion. The only compensation relevant to Plaintiff's claims for damages are her earnings at Wellington which included: (1) her base salary; (2) discretionary incentive compensation; (3) discretionary corporate bonuses; (4) a housing stipend; and (5) pension contributions. The earnings of any other Wellington employee have nothing to do with Plaintiff's claims. Thus, any evidence about the compensation provided to any Wellington employee other than Plaintiff would be irrelevant to Plaintiff's claims and therefore should be excluded. *Stathos v. Bowden*, 728 F.2d 15, 19 (1st Cir. 1984).

### C. The Admission of Evidence of Compensation of Other Wellington Employees Would be Unduly Prejudicial and Speculative

Even if Plaintiff could demonstrate some remote theory that evidence of the compensation paid to other Wellington is relevant, it should be excluded nonetheless because the probative value of such evidence is substantially outweighed by the danger of unfair prejudice and confusion of the issues. Fed. R. Evid. 403.

In this case, references to information pertaining to the financial position of other Wellington employees might lead to impermissible inferences about existence of "deep pockets"

that might activate the jury's economic prejudices. In *TXO Production Corp. v. Alliance Resources Corp.*, 509 U.S. 443 (1993), for example, the jury considered the defendant's wealth, when determining how much to award plaintiff, leading the plaintiffs to "enjoying a windfall because they [had] the good fortune to have a defendant with a deep pocket." *Id.* at 490. Courts in this circuit have addressed concerns regarding prejudice to defendants when evidence of financial status is put before the jury at trial. *See La Plante v. Am. Honda Motor Co.*, 27 F.3d 731, 740 (1st Cir. 1994) (holding that Honda's profits from ATV sales should not be admitted on retrial due to its prejudicial nature); *Burnett v. Ocean Props.*, No. 2:16-cv-00359-JAW, 2018 U.S. Dist. LEXIS 181424, at *8 (D. Me. Oct. 23, 2018) (suggesting that questions of liability and compensatory damages and the question of punitive damages should be bifurcated, with evidence of Defendant's wealth excluded from the first phase, in order to address concern of prejudice to defendant); *Hearts with Haiti, Inc. v. Kendrick*, 141 F. Supp. 3d 99, 122 n.14 (D. Me. 2015) ("It may be that if a defendant were a big, out-of-state business, the trial court would limit evidence of net worth."); *Curtis Mfg. Co. v. Plasti-Clip Corp.*, 933 F. Supp. 94, 101 (D.N.H. 1995) (finding that any probative value of defendant's current financial condition was clearly outweighed by the danger of unfair prejudice that would be created by presenting such evidence to a jury).

Here, there is no probative value to information about the compensation of other Wellington employees and so Plaintiff is in no way prejudiced by the exclusion of such information. Conversely, such compensation could be extremely prejudicial if provided to the jury as it would to unfairly suggest to the jury that Wellington has deep pockets while, at the same time, invoking undue sympathy for the Plaintiff by depicting a David and Goliath scenario.

Allowing evidence about the compensation of WMC employees would also confuse the jury into believing Plaintiff is alleging a pay disparity claim, when she has asserted no such claim.

Accordingly, the Court should exclude this type of argument, testimony, and other evidence.

### III. CONCLUSION

Based on the foregoing, Defendants respectfully request the Court to grant this motion *in limine* in its entirety.

Respectfully Submitted,

WELLINGTON MANAGEMENT COMPANY
and CHARLES ARGYLE,

By their attorneys,

*/s/ Stephen T. Paterniti*
Stephen T. Paterniti, BBO# 564860
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, Massachusetts  02116
TELE: (617) 367-0025
FACSIMILE: (617) 367-2155

Beverly Garofalo
Admitted Pro Hac Vice
JACKSON LEWIS P.C.
90 State House Square
Hartford, Connecticut 06109
TELE:  (860) 331-1535
FACSIMILE: (860) 247-1330

Dated:  September 28, 2021

**CERTIFICATE OF SERVICE**

      This hereby certifies that on September 28, 2021, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                                  */s/ Stephen T. Paterniti*
                                                  Jackson Lewis P.C.

4848-7358-0796, v. 4