## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GIGI KAI ZI CHAN<br><br>Plaintiff,<br><br>v.<br><br>WELLINGTON MANAGEMENT<br>COMPANY LLP AND CHARLES ARGYLE,<br><br>Defendants. | Civil Action No. 19-cv-11605-WGY |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE TESTIMONY THAT PLAINTIFF'S MISCARRIAGES WERE CAUSALLY RELATED TO HER EMPLOYMENT AT WELLINGTON

Defendants Wellington Management Company LLP ("Wellington")[1] and Charles Argyle[2] ("Defendants") respectfully move *in limine* to exclude any evidence of any miscarriages Plaintiff had during (or after) her employment at Wellington because Plaintiff has no evidence of causation and because the prejudicial effect of even the mention of miscarriages substantially outweighs any remote probative value.

### RELEVANT FACTUAL BACKGROUND

Plaintiff commenced this lawsuit on July 24, 2019, claiming that her September 2017 termination was discriminatory on the basis of her gender, race/national origin, disability/pregnancy, as well as in retaliation for purportedly complaining about alleged

---

[1] Plaintiff was employed by Wellington Management Hong Kong ("WMHK").  However, Wellington is not contesting co-employment for purposes of this litigation.

[2] Charles Argyle timely moved for summary judgment on the only count asserted against him, Count 6, which purported to allege a cause of action for tortious interference.  The Court ruled as follows:  "As to Counts 5 and 6 the motions are allowed insofar as they are duplicative of discrimination counts, but to the extent there is evidence of tortious interference summary judgment is denied."  See Dkt. No. 77. Due to the lack of any evidence of tortious interference, the claim against Mr. Argyle should be dismissed prior to trial, but he joins in this motion because as of the date of the filing of this motion, he remains named as a Defendant on the docket.

discriminatory treatment. The only adverse job action within the meaning of M.G.L. c. 151B to which Plaintiff was ever subjected and/or that occurred within the applicable limitations period of 300 days, was the termination of her employment on September 11, 2017.  See M.G.L. c. 151B, § 9.  In the Complaint, Plaintiff alleges she suffered three miscarriages as a result of "toxic environment" she claims she endured during her employment with Wellington.  *Compl.* at ¶ 36. At her deposition, she testified she had seven miscarriages due to this emotional distress during her employment, received medical treatment for one, and did not otherwise seek or receive any diagnoses, medical treatment or medical advice relating to the other six.[3]  *See Transcript of Oct. 7, 2020 Deposition of Gigi Chan*, pp. 97-100, attached hereto as Exhibit B.  Based on this, it is anticipated that Plaintiff intends to testify that she suffered at least one if not multiple miscarriages due to emotional distress she claims she endured during the time she worked for Wellington. Defendants have filed a related motion *in limine* to exclude all evidence of any alleged damages relating to pre-termination events, including these alleged miscarriages.  This motion focuses on the fact that all evidence of miscarriages must be excluded for the additional reasons that there is a complete lack of causation evidence and that under Rule 403 the prejudicial effect of any evidence of miscarriages outweighs its probative value.

### ARGUMENT

The law is clear that under Massachusetts law, "expert testimony is required to establish medical causation."  *Milward v. Rus-Oleum Corp.*, 820 F.3d 469, 476 (1st Cir. 2016) (quoting *Reckis v. Johnson & Johnson*, 471 Mass. 272, 28 N.E.3d 445, 461 (Mass. 2015); *see also McIntyre v. Rentgrow, Inc.*, Civil Action No. 18-cv-12141-ADB, 2021 U.S. Dist. LEXIS 157939, at *29 (D.

---

[3] Plaintiff claims she sought medical treatment with Dr. Michelle Tsui and Dr. Brigitte Salama for care associated with a miscarriage in November 2015 *See* Pl's Resp. to Def.s' Interrog. No. 16, attached hereto as Exhibit A. Plaintiff also produced a limited set of medical bills associated with this first trimester miscarriage.

Mass. July 16, 2021) (quoting *Wenning v. On-Site Manager, Inc.*, 2016 U.S. Dist. LEXIS 81126, *20 (S.D.N.Y. June 22, 2016) (explaining that a plaintiff cannot simply on her own testimony for claims of emotional distress where she "has not submitted any affidavits or declarations, expert testimony, or other evidence" and must allege "reasonable detail and not rely on conclusory statements"); *Pitts v. Wingate at Brighton, Inc.*, 972 N.E.2d 74, 79 (Mass. App. Ct. 2012) ("Expert testimony is necessary where proof of medical causation lies outside the ken of lay jurors").  Other courts have especially noted the need for expert testimony in the extraordinary instance where a plaintiff alleges that a miscarriage was causally related to a defendant's conduct.  *See Barnes v. Anderson*, 202 F.3d 150, 160 (2d Cir. 1999) (concluding that "a miscarriage is the sort of complex injury for which expert medical evidence of causation is required").

Plaintiff has not disclosed such expert testimony.  Nor did Plaintiff identify the two physicians whom she claims treated her in November 2015 as potential witnesses in her initial disclosures or interrogatory answers.  Indeed, there is no evidence beyond Plaintiff's ipse dixit of such a causal connection.  Plaintiff is not qualified to offer such an opinion.  *See id.; see also Acevedo-Milán v. Home Etc. Incorporado*, No. 18-1526 (GAG), 2020 U.S. Dist. LEXIS 183450, at *59 (D.P.R. Oct. 1, 2020).  The evidence that Plaintiff might offer, her own testimony that she experienced six other miscarriages during her employment at Wellington, does nothing to establish causation.

In addition to lacking any reliability, such testimony would clearly run afoul of Rule 403 as the introduction of Plaintiff's speculation would undoubtedly cause unfair prejudice, confuse the issues, and mislead the jury. *See* Fed. R. Evid. 403.  Any miscarriage is a profoundly sympathetic event and if Plaintiff is permitted to blame Defendant for its occurrence, that would plainly risk significant bias against Defendant that is without any factual basis.  As for probative

value, there is none for the reasons stated more fully in Defendants' *Motion In Limine* To Exclude Evidence That Plaintiff Experienced Emotional Distress Related To Her Employment At Wellington Prior To Her Termination.  Further, even if her causal perception had some probative value, which it does not, it would be substantially outweighed by the danger of unfair prejudice. *See* Fed. R. Evid. 403.  Because Plaintiff cannot offer any competent evidence that her purported miscarriages are in any way causally related to her termination, Plaintiff should not be permitted to offer her own rank speculation of such a connection.  Indeed, since Plaintiff's alleged miscarriages are only relevant to her claim of emotional distress, she should be precluded from offering any testimony about her claimed miscarriages.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court exclude any testimony by Plaintiff concerning the alleged cause of her miscarriages.

Respectfully Submitted,

WELLINGTON MANAGEMENT COMPANY
and CHARLES ARGYLE,

By their attorneys,

*/s/ Stephen T. Paterniti*
Stephen T. Paterniti, BBO# 564860
JACKSON LEWIS P.C.
75 Park Plaza, 4th Floor
Boston, Massachusetts  02116
TELE: (617) 367-0025
FACSIMILE: (617) 367-2155

Beverly Garofalo
Admitted Pro Hac Vice
JACKSON LEWIS P.C.
90 State House Square
Hartford, Connecticut 06109
TELE:  (860) 331-1535
Dated: September 28, 2021          FACSIMILE: (860) 247-1330

4

## <u>CERTIFICATE OF SERVICE</u>

This hereby certifies that on September 28, 2021, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Stephen T. Paterniti*
Jackson Lewis P.C.

4811-0139-9804, v. 3