# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GIGI KAI ZI CHAN,

      Plaintiff,

         v.

WELLINGTON MANAGEMENT
COMPANY LLP and CHARLES ARGYLE,

      Defendants.

Civil Action No. 1:19-CV-11605-WGY

## PLAINTIFF GIGI KAI ZI CHAN'S ANSWERS AND OBJECTIONS TO DEFENDANT WELLINGTON MANAGEMENT COMPANY LLP'S FIRST SET OF INTERROGATORIES

      Pursuant to Fed. R. Civ. P. 26 and 33, Plaintiff Gigi Kai Zi Chan ("Plaintiff") submits the following objections and answers to Defendant's Interrogatories.  The following answers and objections are based on information reasonably available to Plaintiff as of the date of this response.  Plaintiff reserves the right, consistent with the applicable Rules, to revise, amend, correct, supplement, modify, or clarify her objections and answers to the Interrogatories as appropriate.

## RESPONSES

### INTERROGATORY NO: 1:

      Please state Plaintiff's name; address; date of birth; place of birth; marital status (including spouse's name and date of marriage if applicable); number, ages and names of children.

**Objection:**    Plaintiff objects to this request insofar as it seeks information such as her children's names that is not relevant to any party's claims or defenses, as, to that extent, it exceeds the scope of discovery permitted under Fed. R. Civ. P. 26.

**Answer:** Subject to and without waiving the foregoing objections, Plaintiff responds that Plaintiff's name is Gigi Kai Zi Chan. Her address is 375 Route des Prades, 12130 St Geniez d'Olt, France. Her date of birth is 17 August 1978 and her place of birth is Hong Kong. Plaintiff is married to Maxence Vinot, and their date of marriage is 12 August 2014. Plaintiff has two children, whose ages are 1 year, and 3 years.

**INTERROGATORY NO: 2:**

Identify each and every license, degree or certificate Plaintiff has received, and identify each and every educational institution Plaintiff attended, and state the dates of attendance, whether Plaintiff received a degree or certificate therefrom, and the nature and the date of the degree or certificate, if applicable.

**Objection**: Plaintiff objects to this interrogatory on the grounds that it is overly broad and that the burden imposed by this interrogatory is not proportional to the needs of the case, and therefore, it exceeds the scope of discovery permitted under Fed. R. Civ. P. 26, particularly to the extent it contains no temporal limitation and fails to define or limit the request for "every license, degree, or certificate" to credentials relevant to Plaintiff's career in finance.

**Answer:** Subject to and without waiving the foregoing objections, Plaintiff identifies the following substantial summary of her education and professional credentialing since the age of 18.

Plaintiff attended St. Hilda's College, Oxford University from October 1996 to June 1999 and obtained a Bachelor of Arts in Philosophy, Politics and Economics in 1999 and a Master of Arts in Philosophy, Politics and Economics in 2010. Plaintiff attended The University of Law (formerly The College of Law) from September 1999 to June 2000 and obtained a Postgraduate Diploma in Law in 2001. Plaintiff was awarded Chartered Financial Analyst (CFA) charterholder in 2004 (3 exams passed on 25 Jan 2001). Plaintiff has been awarded the following professional licensing ('Approved

2

Person' to perform controlled function CF30 (Customer function) from the Financial Conduct

Authority (United Kingdom) issued on 25 February 2008, Module 5 from the Monetary

Authority of Singapore (Singapore) issued on 31 January 2012, Type 1 (Dealing in Securities)

from the Securities & Futures Commission (Hong Kong) issued on 7 May 2012 and Type 9

(Asset Management) from the Securities & Futures Commission (Hong Kong) on 5 August

2015.

### INTERROGATORY NO: 3:

Identify each and every employer by whom Plaintiff has been employed, other than
WMHK, including each employer's last known address and telephone number, and identify each
period of employment, self-employment, consulting, or other business/independent contractor
relationship. For each such period of self-employment, consulting or other business relationship,
state:

(a)  The date(s) of each such employment, self-employment, consulting, or other
business relationship, and Plaintiff's job titles and the duties performed by Plaintiff
for each employer or in self-employment, consulting, or other business relationship;

(b) Plaintiff's rate or rates of pay during each of the above positions, or consulting, or
other business relationship including identification of any raise or raises in pay in
connection with any of the positions, with the dates thereof; and a description of any
employee benefits Plaintiff received in connection with each employment, self-
employment, consulting, or other business relationship; and any other compensation
or remuneration received by Plaintiff in connection with each employment, self-
employment, consulting, or other business relationship;

(c) The reason for the termination or conclusion of each employment, self-employment,
consulting, or other business relationship, including but not limited to a statement of
whether the severance of such employment was voluntary or involuntary; and identify
each and every document upon which Plaintiff relied in answering, or which relates in
any way to the information requested in this interrogatory; and

(d) The name(s) of each supervisor or manager of Plaintiff in each position.

**Objection**:      Plaintiff objects to this interrogatory on the grounds it seeks information that is

not relevant to any party's claims or defenses, is overly broad and the burden imposed by this

interrogatory is not proportional to the needs of the case, and therefore, it exceeds the scope of

discovery permitted under Fed. R. Civ. P. 26, particularly to the extent it contains no temporal

limitation, seeks information that is already within Defendants' possession, and seeks

identification of "each and every document upon which Plaintiff relied in answering." Plaintiff

further objects to this interrogatory to the extent that it seeks Privileged Information.

**Answer:**      Subject to and without waiving the foregoing objections, Plaintiff provides the

following information with respect to employers other than WMHK and Wellington

Management Company LLP, since the completion of her post-secondary education.

| **Information Requested** | **Answers** |
|---|---|
| | |
| Employer: | Columbia Threadneedle Investments |
| Address and Telephone Number | 78 Cannon St, London EC4N 6AG, UK |
| Dates of Employment | October 30, 2000 until October 10, 2013 |
| Job Titles and Duties | 1. Title: Fund Manager (March 2004-October 2013)<br>2. Title: Trainee Fund Manager (October 2000-February 2004) |
| Rates of Pay (annual unless otherwise stated) | 1. April 2013 to October 2013:  Basic salary SGD250,000, Housing allowance SGD6,000 per month (cash)<br>2. April 2012 to March 2013:  Basic salary SGD250,000, Housing allowance SGD6,000 per month (cash), Profit share SGD267,500 (cash), Ameriprise restricted Stock Units SGD43,750, Threadneedle Fund Deferral SGD43,750<br>3. April 2011 to March 2012 (Singapore based from October 2011 onwards):  Basic salary: GBP105,000 increased to SGD250,000 from October 2011 onwards, Housing allowance SGD6,000 per month (cash), Profit share GBP328,812 (cash), Equity Incentive plans SGD60,000<br>4. April 2010 to March 2011:  Basic salary GBP90,000, Profit share GBP100,000 (cash), Equity Incentive Plan GBP100,000<br>5. April 2009 to March 2010:  Basic salary GBP85,000, Profit share GBP80,000 (cash), Equity Incentive Plan GBP22,497<br>6. April 2008 to March 2009:  Basic salary GBP85,000, Profit share GBP60,000 (cash), Equity Incentive Plan: GBP17,820<br>7. April 2007 to March 2008:  Basic salary GBP77,500, Cash incentive award GBP225,000, Crescendo Fund Remuneration GBP10,000 (cash), Equity Participation Plan GBP74,251 |

| | |
|---|---|
| | 8. April 2006 to March 2007:  Basic salary GBP72,500 increased to GBP77,500 from November 2006 onwards, Corporate Bonus GBP190,584 (cash), Equity Incentive Plan GBP62,895 |
| | 9. April 2005 to March 2006:  Basic salary GBP55,000 increased to GBP65,000 from October 2005 onwards, Corporate bonus GBP90,194 (cash), Equity Incentive Plan GBP29,756 |
| | 10. April 2004 to March 2005:  Basic salary GBP44,000 increased to GBP50,000 from November 2004 onwards, Corporate Bonus GBP27,075, Equity Incentive Plan  GBP8,935 |
| | 11. April 2003 to March 2004:  Basic salary GBP34,000 increased to GBP40,000 from November 2003 onwards, Bonus GBP13,120 (cash) |
| | 12. April 2002 to March 2003:  Basic salary GBP31,000, Bonus GBP6,200 (cash) |
| | 13. April 2001 to March 2002:  Basic salary GBP25,000 increased to GBP27,500 from May 2001 onwards, Bonus GBP5,800 (cash) |
| | 14. October 2000 to March 2001:  Basic salary GBP25,000, Bonus GBP1,500 (cash) |
| Benefits (annual unless stated otherwise) | 1. October 2011 to September 2013:  CPF equivalent (17% of basic salary or SGD42,500 paid in cash), Healthcare scheme |
| | 2. October 2000 until September 2010:  UK defined benefits and CPF equivalent, Healthcare scheme |

**INTERROGATORY NO: 4:**

For each position Plaintiff held while employed by WMHK, state the job titles and dates of each job; the salaries or compensation plans for each job; and, the name of Plaintiff's supervisor or immediate superior in each position.

**Objection:**     Plaintiff objects to this interrogatory to the extent it seeks information concerning her employment with WMHK and Wellington Management Company LLP, as such information is already within Defendants' possession and, therefore, the interrogatory imposes an undue burden.

**Answer:**     Subject to and without waiving the foregoing objection, Plaintiff answers that during the time she was employed by WMHK, her only other employer was Wellington

Management Company LLP.

### **INTERROGATORY NO: 5:**

State whether Plaintiff has ever applied for unemployment compensation benefits, workers' compensation benefits, income replacement benefits, disability benefits, social security, supplemental security income, any other benefit of a similar nature to the preceding list regardless of nomenclature, or benefits under any policy of insurance. If the answer is in the affirmative, identify the governmental agency(ies) or department(s), company(ies) or entities to whom such application was made; state the date of the application; the disposition of the application; the amount of the benefit paid, if any; and identify each and every document related to any such application and the disposition thereof.

**Objection**:    Plaintiff objects to this interrogatory on the grounds that it is overly broad and vague, that it seeks irrelevant information, and that the burden imposed by this interrogatory is not proportional to the needs of the case, particularly as it contains no temporal limitation; does not define "benefit of a similar nature"; and refers to "any policy of insurance" without limiting such policies to forms of insurance given in the employment context or for the purpose of replacing income; and seeks identification of "each and every document" that is "related to" certain applications for benefits; and therefore, it exceeds the scope of discovery permitted under Fed. R. Civ. P. 26. Plaintiff further objects to this interrogatory to the extent it seeks Privileged Information.

**Answer:**    Subject to and without waiving the foregoing objections, to the best of her knowledge and recollection, Plaintiff has never applied for unemployment compensation benefits, workers' compensation benefits, income replacement benefits, disability benefits, social security, supplemental security income, any other benefit of a similar nature to the preceding list regardless of nomenclature, or benefits under any policy of insurance on account of lost employment.

## **INTERROGATORY NO: 6:**

If Plaintiff currently is receiving any disability, social security or supplemental security security benefits or any similar benefits regardless of nomenclature, state: the regularity with with which payments are made; the amount of such payments; the name and address of the entity the entity making such payment; and the name and address of any health care provider who completed medical documentation or certifications, which were provided to any such entity.

**Objection**:       Plaintiff objects to this interrogatory on the grounds that it is vague in its use of

the phrase "any similar benefits."

**Answer**:       Subject to and without waiving the foregoing objections, Plaintiff states that she is

not receiving short-term disability benefits or long-term disability benefits. Plaintiff states that

she is not receiving Social Security Disability Insurance Benefits or Supplemental Security

Income from the Social Security Administration of the United States, nor is she receiving any

benefits which she believes to constitute "similar benefits," based on her understanding of that

term.

## **INTERROGATORY NO: 7:**

If Plaintiff made any statement(s) in any form to any person regarding any of the events or happenings referred to in the Complaint, state the name and address of the person(s) to whom such statements were made, the names and addresses of the persons presently having custody of such statements or having heard such statements, the date each was given, and the content of each statement.

**Objection:**       Plaintiff objects to this interrogatory on the grounds that it is vague insofar as it

does not define the terms "statement" or "happenings." Plaintiff further objects to this

interrogatory on the grounds it seeks information that is not relevant to any party's claims or

defenses, is overly broad and the burden imposed by this interrogatory is not proportional to the

needs of this case, particularly to the extent it is not limited to the "events or happenings referred

to in the Complaint" that are in dispute. Plaintiff further objects to this interrogatory to the extent

it seeks Privileged Information.

**Answer:**       Subject to and without waiving the foregoing objections, Plaintiff identifies the

following list of the oral and written statements that, to the best of Plaintiff's present knowledge and recollection, she recalls having made to other persons at Wellington in which she alleged or complained of incidents of discriminatory or retaliatory behavior towards her. The personal addresses of the recipients listed below are unknown to Plaintiff.

1. On December 16, 2014, Plaintiff orally stated to Greg Mattiko words to the following effect: "Things have not been easy. Colleagues are hostile. Investors have talked to me like a junior person because as an Asian woman I look young. I think there has been some misunderstanding. When I joined I was told by Henry Philip that there would be a fund to run within six to twelve months. It has already been six months and it does not seem it will happen."

2. On or about March 24, 2015, Plaintiff orally stated to Greg Mattiko that colleagues continued to be disrespectful.  When asked for examples, Plaintiff gave the following: that Dan Maguire's comment ("China is full of crap") was racist and belittling of her experience; that Steve Richter physically backing her up against the wall was intimidating for her as a woman.

3. On June 3, 2015, Plaintiff orally stated to Tom Baxter that the environment at Wellington in Hong Kong was hostile.  Plaintiff also stated that she believed Mr. Baxter had not introduced her in the same manner as the firm was doing with new employees (sent via emails to all employees of Wellington).  She added that Mr. Baxter did not mention her past achievements and credentials even though it was highlighted for new employees more junior than Plaintiff.

4. On September 14, 2015, Plaintiff orally stated to Tom Baxter that her experience at the firm had not been that of a collaborative culture, contrary to what had been

8

described during the hiring process.  She mentioned incidents including Dan Maguire's racist and belittling comment "China is full of crap" and Steve Richter's physical intimidation. Plaintiff complained that she was not being given responsibilities and opportunities commensurate with her skill and experience because, as an Asian female, she was assumed to be junior.  Plaintiff concluded with the following statement: "I feel like I am at a party where I'm not welcomed".

5.  On September 22, 2015, Plaintiff orally stated to Greg Mattiko and Philip Fan that following her recent presentation at the Process and Philosophy Panel, she received inappropriate and hostile feedback.  Plaintiff added that Jun Oh even criticized her appearance by saying words to the effect of "you look ridiculous".  Plaintiff told Mr. Mattiko and Mr. Fan that, she believed she would not have been spoken to like that if she had been a male.  On discovering from Mr. Mattiko that he had never been required to face the same Panel prior to launching his fund, Plaintiff queried as to why she had to and not others.

6.  On or about October 7, 2015, Plaintiff emailed Charles Argyle to request a call to complain about what happened during the Process and Philosophy Panel.  During the call, Plaintiff orally stated to Mr. Argyle the feedback she received was disrespectful, in particular Jun Oh's comments.

7.  On October 12, 2015, during a call initiated by Cheryl Duckworth, Plaintiff orally stated that Mr. Oh's comments at the Philosophy and Process Panel were disrespectful and inappropriate for any forum.

8.  On October 14, 2015, during a meeting to discuss the launch of the China fund, in response to Tom Baxter's insistence that Jun Oh was only trying to be constructive,

Plaintiff orally stated that it was clear that Mr. Oh's comments were meant to be disrespectful and belittling, and in fact, this was representative of her experience at Wellington. She added that she would not have been spoken to like that if she had been a male. When pushed for further examples of disrespectful behavior, Plaintiff reported that as recently as two days prior, Steve Richter had pushed her out of the way to speak to their shared assistant, and that this also would not have happened if Plaintiff had been a male.

9. On or about November 26, 2015, at a lunch requested by Erin Murphy, in response to Ms. Murphy's insistence that Jun Oh was only trying to be constructive, Plaintiff orally stated that it was clear that Mr. Oh's comments were meant to be disrespectful and that she would not have been spoken to like that if she had been a male.

10. On or about November 27, 2015, in response to Greg Mattiko's insistence that Jun Oh was only trying to be constructive, Plaintiff orally stated that it was clear that Mr. Oh's comments were meant to be disrespectful and that she would not have been spoken to like that if she had been a male. Plaintiff further added that she was sick and tired of people in the firm trying to cover up for Mr. Oh. Plaintiff also queried as to why Mr. Oh received preferential treatment in the launch of his China Fund.

11. On or about December 2, 2015, Plaintiff complained to Jean Hynes that she had faced disrespectful and hostile treatment since joining Wellington, most notably at the Process and Philosophy Panel. She stated that Jun Oh even criticized her appearance, saying words to the effect of "you look ridiculous". She rhetorically asked Hynes whether she thought she would have been spoken to like that if she had been a male. Plaintiff questioned as to why launching a fund was more onerous for her than for her

male colleagues with a similar level of experience, citing as an example the Process and Philosophy Panel which, she had been told, was a pre-requisite for her to launch a fund, but not for others.  Plaintiff stated that she believed this treatment was due to her being an Asian female and assumed to be junior.

12. On or about December 4, 2015, Plaintiff complained to Brendan Swords that she had faced disrespectful and hostile treatment since joining Wellington, most notably at the Process and Philosophy Panel.  She stated that Jun Oh even criticized her appearance, saying words to the effect of "you look ridiculous".  She stated that she didn't think she would have been spoken to like that if she had been a male.  She questioned as to why launching a fund was more onerous for her than for her male colleagues with a similar level of experience, citing as an example the Process and Philosophy Panel which she had been told was a pre-requisite for her to launch a fund, but not for others.  Plaintiff stated that she believed this treatment was due to her being an Asian female and assumed to be junior.

13. On December 4, 2015, Plaintiff orally complained to Charles Argyle about the delay she was facing in her fund launch, in particular when compared with Jun Oh's China fund launch.  Also, Plaintiff questioned as to why her fund launch was more onerous than those of Greg Mattiko and Dirk Enderlein.  Furthermore, Plaintiff cited as an example the Process and Philosophy Panel, which Tom Baxter had told her was a pre-requisite to launching her own fund, even though Wellington had never required any of its experienced male fund managers to do the same.  Plaintiff stated her belief that she had been treated differently because she was an Asian female and assumed to be junior. Plaintiff further stated that she had received disrespectful treatment.  When

11

pressed by Mr. Argyle to give examples of such, Plaintiff cited the following incidents: Jun Oh speaking to her in a belittling manner at the Process and Philosophy Panel; then, Steve Richter's aggressive behaviors on two occasions; and, as recently as the day before, Nilesh Undavia's astonishment that Plaintiff could be in a position to be a Portfolio Manager and launch a fund. Further, Plaintiff stated to Mr Argyle "I demand to be treated with respect."

14. On December 22, 2015, Plaintiff orally stated to Greg Mattiko that, during a meeting on 4 December 2015, Charles Argyle's attitude had been patronizing, and he had made discriminatory comments to the effect of Plaintiff's portfolio management experience being worth less than other Portfolio Managers in the firm. Plaintiff also complained that during a meeting on or about 3 December 2015 Kenny Abrams spoke down to her, telling her not to rise above her station. Plaintiff further stated that it smacked of tokenism when Mr. Abrams told her that there could only be one "China person" in the firm and that person was Bo Meunier, whereas the same does not hold for other countries or regions.

15. On December 29, 2015, Plaintiff complained to Phil Perulmuter that she had faced disrespectful and hostile treatment since joining Wellington, most notably at the Process and Philosophy Panel. She stated that Jun Oh even criticized her appearance, saying words to the effect of "you look ridiculous". She stated that she didn't think she would have been spoken to like that if she had been a male. She questioned as to why launching a fund was more onerous for her than for her male colleagues with a similar level of experience, citing as an example the Process and Philosophy Panel which she had been told was a pre-requisite for her to launch a fund, but not for

others.  Plaintiff stated that she believed this treatment was due to her being an Asian female and assumed to be junior.

16. On March 3, 2016, in response to Ray Helfer urging Plaintiff to be patient, Plaintiff stated that it was not easy to be "patient" when people were treating her with disrespect, and that she would not have been treated in this manner if she were not a Chinese female.

17. On June 14, 2016, Plaintiff orally stated to Charles Argyle that the reasons GRG gave to cancel the marketing meetings did not make sense.  She added that the last minute nature of the decision showed a lack of respect to Plaintiff and that she could not see anyone else in the firm being treated in this manner.

18. On 14 June 14, 2016, in response to Greg Mattiko describing the feedback from GRG as "complete bullshit", Plaintiff orally stated words to the effect that she "just can't see this happening to someone who is not an Asian female".

19. On or about October 5, 2016, in recounting a conversation with Tom Baxter a few days prior, Plaintiff told Greg Mattiko that senior management said what 'the Chinese client' wanted was "ridiculous".  Plaintiff orally stated to Mr. Mattiko that it did not seem as though Wellington applied its motto 'client, firm, self' equally to all clients, and the disrespect shown to 'the Chinese client' amounted to racism.

20. On October 19, 2016, in response to Kenny Abrams comparing Plaintiff's career profile to that of Greg Mattiko, Dirk Enderlein, and Niraj Bhagwat, Plaintiff orally stated that there were significant differences between her experience in launching a fund and theirs.

21. On November 2, 2016, in response to Charles Argyle claiming that Plaintiff had been saying for the last two years, "Look at me, I'm a superstar", Plaintiff stated to Mr. Argyle that in fact, what she had been saying was that she should not be treated as though she had no experience at all, and that "Just because I'm female, just because I'm Chinese, doesn't mean that people can talk down at me. That's what I've said. Every single time."

22. On or about May 26, 2017, in response to Henry Philip asking Plaintiff's thoughts about the conversation she had with Mr. Argyle on 2 Nov 2016, Plaintiff stated that her thoughts had not changed.

23. On May 31, 2017, in response to Greg Mattiko implying that Plaintiff was asking Wellington to "bend over backwards" to get her book to grow, Plaintiff orally stated that all she wanted was "some demonstration that there could be a roadshow, or some marketing access" and that two minutes at the end of a meeting did not constitute access, as Tom Baxter had claimed earlier.  Further, Plaintiff complained about Charles Argyle's intimidating behavior during their meeting on 2 November 2016, stating "I don't think any message needs to be shouted at let alone I was eight months pregnant".

24. On July 25, 2017, after reporting a trading error that negatively impacted client assets, Plaintiff orally stated to Greg Mattiko that she was not being taken seriously, and that "the conversation could have been a lot shorter if there was no attempt to cover up."

25. On August 31, 2017, Plaintiff orally stated to Alex Qian that she "call it racism" when Wellington discriminate against one type of client in favor of another type of client.

14

Plaintiff further answers that discovery is ongoing, and that she reserves the right to supplement,

revise, or otherwise amend this answer as discovery proceeds.

### INTERROGATORY NO: 8:

Identify each and every person whom Plaintiff may call as a witness at a trial of this matter and the nature of the testimony to be elicited.

**Objection**:     Plaintiff objects to this interrogatory on the grounds that it is overly broad and it

exceeds the scope of discovery under Fed. R. Civ. P. 26.

**Answer**:     Subject to and without waiving the foregoing objection, Plaintiff refers to the

persons identified in Plaintiff's Initial Disclosures.

Plaintiff further answers that discovery is ongoing, and that she reserves the right to supplement,

revise or otherwise amend this answer as discovery proceeds.

### INTERROGATORY NO: 9:

Identify each and every person whom Plaintiff or a representative thereof has contacted or interviewed in connection with this matter, but whom Plaintiff does not intend to call as a witness at a trial of this matter.

**Objection:**     Plaintiff objects to this interrogatory on the grounds that it seeks Privileged

Information.

### INTERROGATORY NO: 10:

Identify each expert witness whom Plaintiff intends to call at a trial of this matter and, for each such expert witness, please provide the following information: his or her name, residential address and business address; the subject matter on which the expert is expected to testify; the substance of the facts and opinions to which the expert is expected to testify; a summary of the grounds for each such opinion; and all such other information required by Fed. R. Civ. P. 26.

**Objection**:     Plaintiff objects to this interrogatory as premature and to the extent it seeks to

impose discovery obligations beyond those required under the Federal Rules of Civil Procedure.

No decisions have yet been made with regard to trial or to expert witnesses; Plaintiff will

disclose the identities of any expert witnesses that she intends to call at trial of this matter and

any other information required to be disclosed concerning the expert witness(es) and his/her/their

testimony in accordance with all applicable rules and court orders.

### INTERROGATORY NO: 11:

Identify each and every individual Plaintiff believes has knowledge of any facts
pertaining to the allegations in the Complaint and give a detailed description of the facts that
Plaintiff believes are possessed by each such person.

**Objection:**     Plaintiff objects to this interrogatory on the grounds that it is overly broad and

that the burden imposed by this interrogatory is not proportional to the needs of the case,

particularly to the extent it seeks information pertaining to facts or allegations in the Complaint

that are not in dispute, and as such, it exceeds the scope of discovery permitted under Fed. R.

Civ. P. 26. Plaintiff further objects to this interrogatory to the extent it seeks Privileged

Information.

**Answer:**     Subject to and without waiving the foregoing objection, Plaintiff refers

Defendants to the persons identified in the parties' respective Initial Disclosures.

Plaintiff further answers that discovery is ongoing, and that she reserves the right to supplement,

revise or otherwise amend this answer as discovery proceeds.

### INTERROGATORY NO: 12:

Describe in complete detail each item of damage, including amounts, for which Plaintiff
intends to seek recovery at trial, the manner in which such amount has been calculated, and the
specific basis and support for said amount.

**Objection**:     Plaintiff objects to this interrogatory to the extent it seeks Privileged Information.

**Answer:**     Subject to and without waiving the foregoing objection, Plaintiff states that she

seeks an award of back pay, front pay, compensatory damages (including for emotional distress),

punitive damages, attorney's fees, interest and costs. The calculation of Plaintiff's damages is

dependent upon discovery that has not yet been conducted and/or completed, and will be the

subject of expert testimony, which will be disclosed in accordance with the scheduling order

entered in this matter.

## INTERROGATORY NO: 13:

State whether Plaintiff has made any efforts to seek new employment or to enter into any business, independent contractor or consulting relationship with any person or entity since September 2017. If so, state:

(a) The name and address of each potential employment, person, or entity, to which Plaintiff made application, including the date of each such application and the position for which application was made;

(b) The name and address of any employment agency, career counselor or other employment recruiter with whom Plaintiff had contact, including, in addition, the date such contact was made and the nature of the contact;

(c) Describe in complete detail any other efforts Plaintiff made, which are not identified in response to the preceding subparagraph of this interrogatory, to obtain employment or to enter into any business, independent contractor or consulting relationship; and

(d) Identify each and every document reflecting or relating to Plaintiff's efforts to seek new employment, or to enter into any business, independent contractor or consulting relationship.

**Objection:**     Plaintiff objects to this interrogatory to the extent that it is overly broad and that

the burden imposed by this interrogatory is not proportional to the needs of this case, exceeding

the scope of discovery under Fed. R. Civ. P. 26, particularly insofar as subpart (d) seeks

identification of cumulative and redundant documents and information that is not relevant to any

fact in material dispute.

**Answer:**     Subject to and without waiving the foregoing objections, Plaintiff has made

reasonably diligent efforts to obtain comparable employment. These efforts have included

monitoring movement of China PMs among peer group using a combination of network,

financial websites (eg, Bloomberg, Morningstar, Citywire) and asset management company

websites to identify potential employment opportunities. Plaintiff also communicated with

numerous recruiters to identify potential comparable employment opportunities. At present,

Plaintiff recalls communicating with the following recruiting firms:

Capital Access
DAMAC Group
DMO Group

17

Egon Zehnder
Eymieu Partners
Global Sage
Heidrick and Struggles
Lascaux Partners
Lawbrook
Novo Partners
Phaidon International
RGF Search
Russell Reynolds
Sapphire Partners
Spencer Stuart
SSK Consulting
Stanton Chase
Tardis

The following table identifies the specific opportunities for which Plaintiff can presently recall

formally applying:

| Potential Employer | Date of Application | Position Sought |
|---|---|---|
| Vontobel | June 23, 2020 | Head of Asian Equities |
| Principal Finance | June 23, 2020 | China Portfolio Manager |
| Schroders | June 17, 2020 | Portfolio Manager, Deputy Head of Asia ex-Japan |
| Kuwait Investment Company | March 24, 2020 | China Equity Portfolio Manager |
| Blackrock | March 14, 2020 | China Equity Portfolio Manager |
| Alliance Bernstein | March 14, 2020 | Portfolio Manager, Head of China |
| EGF Asset Management | May 6, 2019 | Portfolio Manager, Greater China |
| Carmignac | November 22, 2018 | Pan Asia Portfolio Manager / Head of Emerging Market |
| Franklin Templeton | November 11, 2018 | Portfolio Manager, Head of China |

Plaintiff further answers that discovery is ongoing, and that she reserves the right to supplement,

revise or otherwise amend this answer as discovery proceeds.

**INTERROGATORY NO: 14:**

State whether Plaintiff has previously instituted litigation or administrative charges (such as claims at the Equal Employment Opportunity Commission or the Massachusetts Commission Against Discrimination or any other U.S. or foreign agency, court, or tribunal) against any company, state, municipality or any other organization by which she was or had been employed or applied for employment. If the answer is in the affirmative, state the date each suit or administrative action was commenced; the name and address of the agency or other forum in which it was commenced; the substance of each such complaint; the name and address of any attorney who represented Plaintiff in that proceeding; the outcome or present status of each matter; and identify each and every document upon which Plaintiff relied in answering or which in any way relates to the information requested in this interrogatory.

**Answer:**      Plaintiff states that except with regard to this case, she has not previously

instituted litigation or administrative charges against any employer.

**INTERROGATORY NO: 15:**

If Plaintiff contends that she was unable to work at any time from her separation of employment with WMHK to the present due to any mental or physical condition, state the condition which prevented Plaintiff from working; the period of time she could not work; the name and address of any physician or other healthcare provider who treated her during that period.

**Answer**:      Plaintiff answers that she gave birth to her second child on September 20, 2019.

Had she been employed at the time, Plaintiff likely would have taken a maternity leave of some

duration, depending upon the specific role and its requirements. Plaintiff's healthcare providers

in connection with the birth are as follows:

| Treating Healthcare Providers: | Hospital Antoine-Beclere AP-HP |
|---|---|
| Address of Healthcare Provider | 157 Rue de la Porte de Trivaux, 92140 Clamart, France |
| Healthcare Provider | Pr Alexandra Benachi, Gynecologist/Obstetrician, Chief of Department |

Plaintiff further answers that discovery is ongoing, and that she reserves the right to supplement,

revise or otherwise amend this answer as discovery proceeds.

**INTERROGATORY NO: 16:**

Identify each and every physician, psychiatrist, psychologist, social worker or other healthcare provider whom Plaintiff visited, consulted or from whom Plaintiff received treatment relative to any physical, mental or emotional condition Plaintiff alleges Defendants caused. For each physician or other healthcare provider identified, state his or her address; his or her occupation; his or the area of specialization, if any; the date plaintiff first consulted that person or entity; the condition for which treatment was sought; the diagnosis that was rendered; the nature of the treatment rendered; and whether Plaintiff is presently receiving treatment or consultation from such person or entity.

**Objection:**     Plaintiff objects to this interrogatory on the grounds that it is vague, confusing, and unintelligible to the extent it seeks information relating to the undefined term "condition[s]" and modifies such term using the confusing phrase "Plaintiff alleges Defendants caused"; such phrases do not correspond in any precise manner to the allegations in the Complaint concerning, *inter alia*, the "conditions" of pregnancy, or miscarriages, childbirth, or emotional distress. Plaintiff further objects to this interrogatory to the extent it calls for her to give an expert medical opinion as to the etiology or cause of her symptoms or "conditions" as she understands that term, as Plaintiff is not a medical expert. Plaintiff further objects to this request to the extent that it is overly broad and that the burden imposed by this request is not proportional to the needs of the case, insofar as it seeks information concerning "conditions" for which Plaintiff does not seek to recover, because to that extent, it exceeds the scope of discovery permitted under Fed. R. Civ. P. 26. Plaintiff further objects to this request to the extent that it seeks Privileged Information.

**Answer:**     Subject to and without waiving the foregoing objections, Plaintiff states that she is not a medical expert and cannot give an expert opinion as to the cause or etiology of her symptoms or "conditions" as she understands that term; nevertheless, Plaintiff identifies the following responsive information based on the symptoms, events, and "conditions" (as she understands that term) to which she believes Defendants' unlawful conduct may have contributed.

20

| Treating Healthcare Providers: | Dr. Michelle Tsui | Dr. Brigitte Salama |
|---|---|---|
| Address of Healthcare Provider | Premier Medical Centre, Suite 718-733 Central Building, 1 Pedder Street, Central, Hong Kong | 3 Avenue du President Wilson, 75116 Paris, France |
| Occupation of Healthcare Provider | Doctor | Doctor |
| Specialization of Healthcare Provider | Gynecologist / Obstetrician | Gynecologist / Obstetrician |
| Date Treatment Was Sought | November 16, 2015 November 20, 2015 | November 27, 2015 |
| Diagnosis Rendered | Silent miscarriage 1st trimester miscarriage for medical evaluation | Miscarriage |
| Treatment Rendered | Misoprol prescribed for medical management of miscarriage (ie to expel fetus) | Cytotec (to treat postpartum bleeding due to poor contraction of uterus) and pelvic ultrasound to verify uterus is empty |
| Whether Plaintiff is Presently Receiving Treatment or Consultation | No | No |

**INTERROGATORY NO. 17:**

Identify each and every physician, psychiatrist, psychologist, social worker or other healthcare provider whom Plaintiff visited, consulted or from whom Plaintiff received treatment relative to any physical, mental or emotional condition Plaintiff suffered at any time from January 1, 2014 to the present, not identified in response to Interrogatory Nos. 15 and 16. For each physician or other healthcare provider identified, state his or her address; his or her occupation; his or her area of specialization, if any; the date Plaintiff first consulted that person or entity; the condition for which treatment was sought; the nature of the treatment rendered; the diagnosis that was rendered; and whether Plaintiff is presently receiving treatment or consultation from such person or entity.

**Objection**:     Plaintiff objects to this interrogatory on the grounds that it seeks information that

is, by definition, not relevant to any claim or defense in this matter, and as such exceeds the

scope of discovery under Fed. R. Civ. P. 26. Plaintiff further objects to this interrogatory on the

grounds that it seeks Privileged Information.

**INTERROGATORY NO. 18:**

Please describe all Internet social media sites such as *Facebook*, *Twitter*, and that Plaintiff has or had an account with from January 1, 2014 to date, including Plaintiff's user name, html address of main page, approximate frequency of postings, and approximate date range Plaintiff had the account.

**Objection**:    Plaintiff objects to this interrogatory on the grounds that it is vague insofar as it does not define the ambiguous term "Internet social media sites." Plaintiff further objects to this interrogatory on the grounds that it is overly broad, and the burden imposed by this interrogatory is not proportional to the needs of this case; therefore, it exceeds the scope of discovery under Fed. R. Civ. P. 26, particularly to the extent it seeks Plaintiff's "frequency of postings."

**Answer**:    Subject to and without waiving the objections set forth above, Plaintiff identifies the following "Internet social media sites," to the best of her understanding of that term, with which she has an account:

| Site | Main Page URL | Approximate Date Range Plaintiff Had the Account |
|------|---------------|---------------------------------------------------|
| LinkedIn | https://www.linkedin.com/in/gigi-chan-7628a/?originalSubdomain=hk | From 2008 to present |

**INTERROGATORY NO. 19:**

Please list all e-mail addresses that Plaintiff has or had since January 1, 2014 to date.

**Answer**:    Plaintiff identifies the following email addresses:  gkzchan@gmail and hotgeeg@hotmail.com

Signed and sworn under the pains and penalties of perjury this __24ᵗʰ__ day of September 2020.

_____
Gigi Kai Zi Chan

As to objections:

*/s/ Patrick J. Hannon*
Patrick J. Hannon (BBO# 664958)
Hartley Michon Robb, LLP
155 Seaport Blvd., 2nd Floor
Boston, MA 02210
P: (617) 723-8000
F: (617) 447-2800
phannon@hartleymichonrobb.com

## CERTIFICATE OF SERVICE

I, Patrick J. Hannon, counsel for Plaintiff, Gigi Kai Zi Chan, hereby certify that on September 24, 2020, I caused a copy of the within document to be served by email upon counsel of record.

*/s/ Patrick J. Hannon*
Patrick J. Hannon