UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GIGI KAI ZI CHAN,

        Plaintiff,

        v.

WELLINGTON MANAGEMENT
COMPANY LLP and CHARLES ARGYLE,

        Defendants.

Civil Action No.:  1:19-cv-11605-WGY

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

GIGI KAI ZI CHAN

By her attorneys,

*/s/ Patrick J. Hannon*

Patrick J. Hannon (BBO #664958)
Hampton M. Watson (BBO #705983)
Hartley Michon Robb Hannon LLP
155 Seaport Boulevard, 2nd Floor
Boston, MA 02210
phannon@hmrhlaw.com
hwatson@hmrhlaw.com
(617) 723-8000
Attorneys for Plaintiff

## CASE DESCRIPTION __ PRE-CHARGE

INSTRUCTION NO. 1.

The plaintiff, Gigi Chan, claims that she was unlawfully terminated from her employment with Defendant Wellington Management Company LLP ("Wellington"). Plaintiff brings these claims against two Defendants: Wellington, which the parties agree was her employer and Charles Argyle, whom the parties agree was her supervisor.

Plaintiff's claims against Wellington fall into two categories. One is what we generally call discrimination. Massachusetts law—which is the law that the parties have agreed applies here—prohibits employers from discriminating against employees based on certain protected characteristics, such as race or sex. To succeed on her discrimination claim, Plaintiff will need to prove to you that Wellington terminated her employment because of either her sex, race/national origin, or pregnancy, or some combination thereof.

Plaintiff's other claim against Wellington is for retaliation. Massachusetts law prohibits employers from retaliating against employees for having engaged in legally protected conduct— such as making good faith complains about discrimination. Note that Plaintiff's retaliation claim is different from her discrimination claim, as to succeed in proving retaliation Plaintiff need not convince you that she was actually subjected to discrimination. Rather, Plaintiff must prove that she raised concerns about discrimination in a legally protected manner, and that her termination would not have occurred but for that protected activity.

Plaintiff's claim against Charles Argyle is for tortious interference. To succeed on this claim, Plaintiff must prove that Mr. Argyle caused the termination of her employment with Wellington, and that he did so with "actual malice," meaning "a spiteful, malignant purpose, unrelated to the legitimate corporate interest."

# DISCRIMINATION

INSTRUCTION NO. 2.          Plaintiff's Burden of Proof[1]

To prove a claim for discrimination, the plaintiff must show four elements: membership in a protected class, adverse employment action, discriminatory animus, and causation. In this case Ms. Chan is a member of a protected class by virtue of her sex, female; her pregnancy status, and her race and national origin, that is, Asian or Chinese.

To prove her claim for discrimination, Ms. Chan must prove to you by a preponderance of the evidence that discriminatory animus was the determinative cause of Wellington's termination of her employment.

"Determinative cause" means that the discriminatory animus was a material and important reason that Wellington terminated Ms. Chan's employment. Ms. Chan need not prove that animus was the only cause of her termination.[2]

---

[1] Instruction based on: Mass. CPJI, c. 5 Employment Discrimination, § 5.2.1 Liability, Plaintiff's Burden of Proof.

[2] Lipchitz v. Raytheon Co., 434 Mass. 493, 506 n.19 (2001).

INSTRUCTION NO. 3.        Motive, Intent, or State of Mind[3]

It is unlawful to discharge a person, because of her sex, pregnancy, race, or national origin. Thus, to decide this case, you will have to inquire into and determine Wellington's motive, intent, or state of mind.

---

[3] Mass. CPJI § 5.2.2 Motive, Intent, or State of Mind.

INSTRUCTION NO. 4.      Unexamined Bias[4]

Discriminatory animus can be established even if an employer is not aware of his or her bias. Employment decisions that are made because of stereotypical thinking about people because of their sex, race, national origin, or pregnancy status, whether conscious or unconscious, violate the Massachusetts law prohibiting discrimination. Stereotypical thinking occurs when an employer categorizes people on the basis of broad generalizations.[5] For example, if the performance of an employee, male or female, suffers as a result of family responsibilities (or any other personal obligation or interest), the employer is free to respond accordingly; however, an employer is not free to assume that a woman, because she is a woman, will necessarily be a poor worker because of family responsibilities.[6]

---

[4] Mass. CPJI § 5.2.2(c), Motive, Intent, or State of Mind – Unexamined Bias.

[5] Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 399–400 (2016); Bulwer v. Mt. Auburn Hosp., 473 Mass. 672, 686 (2016); (disparate treatment in the evaluation process can be combined with stereotypical thinking to lend support to a finding of discrimination); Lipchitz v. Raytheon Co., 434 Mass. 493, 503 n.16 (2001).

[6] Burns v. Johnson, 829 F.3d 1, 15 (1st Cir. 2016); Chadwick v. WellPoint, Inc., 561 F.3d 38, 44–45 (1st Cir. 2009).

INSTRUCTION NO. 5.       Attributable Bias[7]

Discriminatory animus can be established where the actual decision maker has a discriminatory motive, where there is a discriminatory atmosphere, or where the decision maker's actions were influenced by others' discriminatory animus.[8] For example, if a woman is frustrated in her attempts to work cooperatively by the sexist attitudes and actions of her male co-workers, and you find that the atmosphere caused the termination of her employment, then the decision was motivated by discriminatory animus.[9]

---

[7] Mass. CPJI § 5.2.2(d) Motive, Intent, or State of Mind – Attributable Bias.

[8] Bulwer v. Mt. Auburn Hosp., 473 Mass. 672, 688 (2016) (where an "expanded review" by the clinical competence committee based its conclusions on evaluations and testimony from supervising physicians, the motives of the supervisors were impugned to the decision makers, and the employer could not insulate its decision by "interposing an intermediate level of persons in the hierarchy of decision" (internal quotation marks omitted)); Moser v. Cheney, 32 Mass. L. Rptr. 221, 2014 WL 3048783, at *9 (Super. Ct. 2014); Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 403 (2016); Mole v. Univ. of Mass., 442 Mass. 582, 598–99 (2004); Cariglia v. Hertz Equip. Rental Corp., 363 F.3d 77, 83, 85–86 (1st Cir. 2004) (applying Massachusetts law).

[9] See Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 911 (1st Cir. 1988) (quoting McKenna v. Weinberger, 729 F.2d 783, 790 (D.C.Cir.1984) ("[w]here a woman is frustrated in her attempts to work cooperatively by the sexist attitudes and actions of her male co-workers, she is a victim of discrimination [and] [h]er dismissal, even where the work environment has degenerated completely, [is] in violation of Title VII.")).

INSTRUCTION NO. 6.      Direct Evidence[10]

Sometimes motive, intent, or state of mind and causation[11] can be proved directly. Direct evidence is evidence that, if believed, would result in a highly probable inference that a forbidden bias was present in the workplace. Examples of direct evidence include: facially discriminatory employment policies, statements of a defendant that suggest a discriminatory attitude toward persons of a certain sex, race, or national origin, or towards pregnant persons; testimony of a witness describing what his or her state of mind was; or testimony of a witness about what a decision maker said that would be reflective of his or her state of mind.[12]

---

[10] Instruction based on: Mass. CJPI § 5.2.2(a) Motive, Intent, or State of Mind - Direct Evidence.

[11] Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 39-40 (2005).

[12] Chief Justice for Admin. & Mgmt. of Trial Court v. MCAD, 439 Mass. 729, 732 & n.11 (2003); Wynn & Wynn v. MCAD, 431 Mass. 665, 666-67 n.20 (2000), overruled on other grounds by Stonehill Coll. v. MCAD, 441 Mass. 549, 563 n.17 (2004); see also Northeast Metro. Reg'l Vocational Sch. Dist. Sch. Comm. v. MCAD, 31 Mass. App. Ct. 84, 89-90 (1991) (statements by two decision makers that "we do not want a woman in that position" and "what we need is a big strong man who can come to the committee and fight" constitute direct evidence of discrimination).

INSTRUCTION NO. 7.    Circumstantial Evidence[13]

Motive, intent, or state of mind may also be proved indirectly or circumstantially.[14] You may examine Wellington's actions and words, and all of the surrounding circumstances, to help you determine what Wellington's motive, intent, or state of mind was when Wellington discharged Ms. Chan.

The law does not dictate any distinction between the weight to be given direct or circumstantial evidence; that is up to the jury. Circumstantial evidence permits you to draw reasonable inferences from facts in evidence. The inference proposed from the evidence need only be reasonable; it need not be the only one possible.[15]

---

[13] Mass. CPJI § 5.2.2(b), Motive, Intent, or State of Mind – Circumstantial Evidence.

[14] Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 396 (2016); Bulwer v. Mt. Auburn Hosp., 473 Mass. 672, 680–81 (2016); Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34, 39 (2005).

[15] Commonwealth v. Kilburn, 426 Mass. 31, 34–35 (1997); Commonwealth v. Dostie, 425 Mass. 372, 376 (1997); Brown v. Commonwealth, 407 Mass. 84, 89 (1990).

INSTRUCTION NO. 8.      Proving Discrimination by Circumstantial Evidence – Pretext[16]

Circumstantial evidence of discrimination can include proof that the reason given by Wellington for Ms. Chan's termination is not true—in other words, that the reason was pretextual. If more than one reason was given, circumstantial evidence includes proof that at least one of the reasons given was not true.

Categories of circumstantial evidence demonstrating pretext can include[17]:

- conflicting performance evaluations,

- stereotypical thinking by the employer or those in charge,

- that the employer gave "shifting explanations" for its adverse action,[18] and

- Weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's stated reasons.[19]

- Whether comparators—other employees who were similarly situated in terms of performance, qualifications and conduct, but who were not of the same race, sex, pregnancy status, or national origin as Ms. Chan—were treated differently.

The inference of discrimination from pretext is allowable because experience indicates that people do not generally act in a totally arbitrary manner, without any underlying reasons, especially in a business setting. In a situation where the legitimate reason or reasons advanced by the employer for taking an adverse action are rejected as not being the true reasons, one can reasonably conclude that the employer based its decision on impermissible consideration.[20]

---

[16] Instruction based on: Mass CPJI § 5.2.3(a) Proving Discrimination by Circumstantial Evidence – Pretext, and § 5.2.3(h) Business Judgment.

[17] Bulwer v. Mt. Auburn Hosp., 473 Mass. 672, 684-87 (2016) (as to all bullets except as otherwise noted).

[18] Velez v. Thermo King de Puerto Rico, Inc., 585 F.3d 441, 449 (1st Cir. 2009); see also Bulwer v. Mount Auburn Hosp., 86 Mass. App. Ct. 316, 333 (2014), aff'd in part, 473 Mass. 672 (2016).

[19] City of Salem v. Massachusetts Comm'n Against Discrimination, 44 Mass. App. Ct. 627, 643 (1998), overruled on other grounds by DeRoche v. Massachusetts Comm'n Against Discrimination, 447 Mass. 1 (2006); see Bulwer, 473 Mass. at 684; see also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 56 (1st Cir. 2000).

[20] Abramian v. President & Fellows of Harvard Coll., 432 Mass. 107, 118 (2000); Blare v. Husky Injection Molding Sys. Bos., Inc., 419 Mass. 437, 446 (1995).

When considering pretext, your focus must be on Wellington's state of mind, not on whether Wellington's reasoning was right or wrong or whether its business judgment was sound or unsound.[21]

Wellington's stated legitimate reason must be reasonably articulated and nondiscriminatory, but does not have to be a reason that you, the jury, would act on or approve. An employer's reasons for its decision may be "unsound or even absurd," but if they are neither discriminatory nor proven as pretext, the plaintiff cannot prevail.[22]

Evidence of pretext standing alone may, but need not, support an inference of unlawful bias. Therefore, if the plaintiff has persuaded you that at least one of Wellington's reasons is false, you may, but are not required to, infer that Wellington is covering up a discriminatory intent, motive, or state of mind.[23]

---

[21] Northeast Metro. Reg'l Vocational Sch. Dist. Sch. Comm. v. MCAD, 31 Mass. App. Ct. 84, 88-89 (1991).

[22] Tate v. Dep't of Mental Health, 419 Mass. 356, 363 (1995).

[23] Bulwer v. Mt. Auburn Hosp., 473 Mass. 672, 682 (2016); Lipchitz v. Raytheon Co., 434 Mass. 493, 501 (2001).

INSTRUCTION NO. 9.     General Atmosphere of Discrimination[24]

In addition to pretext, circumstantial evidence may also include evidence of a general atmosphere of discrimination at the place of employment. While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination, such evidence may be used to "add color" to the employer's decision-making processes and the influences behind the actions taken with respect to the individual plaintiff.[25]

Likewise, evidence that an employer, acting through its officials and managers, considered an employee's race, sex, pregnancy, or national origin in other employment matters can also support a conclusion that the unlawful bias was a factor in this case.[26]

---

[24] Instruction based on Mass. CPJI, 5.2.3(b), Proving Discrimination by Circumstantial Evidence – General Atmosphere of Discrimination.

[25] Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 686 (2016) ("While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add 'color' to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff") (quoting Conway v. Electro Switch Corp., 825 F.2d 593, 597 (1st Cir.1987)); Lewis v. Area II Homecare for Senior Citizens, Inc., 397 Mass. 761, 767 (1986) ("the employer's general practice and policies concerning employment of racial minorities"); Johansen v. NCR Comten, Inc., 30 Mass. App. Ct. 294, 297–98 (1991) ("hiring and discharge patterns, other acts of discrimination") (citing Smith Coll. v. Massachusetts Comm'n Against Discrimination, 376 Mass. 221, 228 (1978)); Diaz v. Jiten Hotel Mgmt., Inc., 762 F. Supp. 2d 319, 337 (D. Mass. 2011) (noting that statements made in the workplace may be used to demonstrate an environment that "may be hostile in itself or an environment in which discriminatory employment decisions are made and tolerated").

[26] Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 400 (2016) ("there is evidence that women at the firm, and in the ELB section in particular, were subject to discriminatory treatment. . . . 'evidence which may be relevant to the plaintiff's showing of pretext may include the employer's general practice and policies concerning' other members of protected class") (quoting Matthews v. Ocean Spray Cranberries, Inc., 426 Mass. 122, 130 n.4 (1997)); Blare v. Husky Injection Molding Sys. Bos., Inc., 419 Mass. 437, 447 (1995) (citing Lewis v. Area II Homecare for Senior Citizens, Inc., 397 Mass. 761, 767 (1986)); Johansen, 30 Mass. App. Ct. at 298.

INSTRUCTION NO. 10.      Protected Class – Inference

      An employer does not have to discriminate against all members of a class to discriminate against a given member of that class in violation of the law. An employer may discriminate on the basis of sex plus another characteristic, such as race or national origin.[27]

---

[27] Goosby v. Johnson & Johnson Med. Inc., 228 F.3d 313, 321 (3rd Cir. 2000); Chadwick v. WellPoint, Inc., 561 F.3d 38, 43 (1st Cir. 2009) ("sex plus" analysis "refers to the situation where an employer classifies employees on the basis of sex plus another characteristic") (emphasis in original) (internal citation omitted).

INSTRUCTION NO. 11.     Attitudes of Those in Authority[28]

      Unlawful bias on the part of a specific decision maker may be inferred from the attitudes of others in authority in the company, such as company officials and senior managers.[29]

---

[28] Instruction based on Mass. CPJI, 5.2.3(c), Proving Discrimination by Circumstantial Evidence – Attitudes of Those in Authority.

[29] Northeast Metro. Reg'l Vocational Sch. Dist. Sch. Comm. v. MCAD, 31 Mass. App. Ct. 84, 89-90 (1991); Cariglia v. Hertz Equip. Rental Corp., 363 F.3d 77, 85–86 (1st Cir. 2004); Tuli v. Brigham & Women's Hosp., Inc., 566 F. Supp. 2d 32, 49-51 (D. Mass. 2008).

INSTRUCTION NO. 12.        Remarks that Support an Inference of Bias[30]

Discrimination can be inferred from statements reflecting a bias. However, in determining the persuasiveness of those statements on the issue of Wellington's bias, you must consider not only the statements, but the context and circumstances in which they were made.[31]

---

[30] Instruction based on Mass. CPJI, 5.2.3(d), Proving Discrimination by Circumstantial Evidence – Remarks that Support an Inference of Bias.

[31] McMillan v. Massachusetts Soc. for Prevention of Cruelty to Animals, 140 F.3d 288, 300 (1st Cir. 1998); Rochat v. L.E.K. Consulting, LLC, 83 Mass. App. Ct. 1108, 2013 WL 308982, at *6 (2013) (Rule 1:28 decision); Tuli v. Brigham & Women's Hosp., 656 F.3d 33, 39-40 (1st Cir. 2011); Diaz v. Jiten Hotel Mgmt., Inc., 762 F. Supp. 2d 319, 337 (D. Mass. 2011). (discriminatory statements might lead a reasonable juror to conclude that when a speaker is making a decision concerning the employment of a member of the class about which he holds a bias, he might actually be influenced by that bias); Vesprini v. Shaw Indus., Inc., 221 F. Supp. 2d 44, 58 (D. Mass. 2002).

INSTRUCTION NO. 13.        Subjective Criteria[32]

Unlawful bias may also be inferred from evidence that the employer used subjective criteria in making employment decisions.[33]

_____

[32] Instruction based on Mass CPJI § 5.2.3(e), Proving Discrimination by Circumstantial Evidence – Subjective Criteria.

[33] City of Salem v. MCAD, 44 Mass. App. Ct. 627, 643 (1998) ("uncontrolled subjectivity" in the hiring process can be evidence of bias), overruled on other grounds by DeRoche v. MCAD, 447 Mass. 1 (2006); Harrison v. Bos. Fin. Data Servs., Inc., 37 Mass. App. Ct. 133, 138 (1994) ("an informal, subjective mechanism for hiring and promoting employees outside the formal system of job postings. Such subjective conditions have been acknowledged as suspect by a number of courts, deserving of close scrutiny "because of their capacity for masking unlawful bias."); Rifflemacher v. Bd. of Police Comm'rs of Springfield, 27 Mass. App. Ct. 159, 162 (1989) ("open-ended and uncontrolled" selection process); Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 990–91 (1988); Contardo v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 753 F. Supp. 406, 410 (D. Mass. 1990) ("There were no criteria or standards promulgated by the defendant to determine when project coordinators received additional compensation"); see Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 398-400 (2016) (where evaluations challenged plaintiff employee's "level of commitment to her professional development and interest in advancement" and negatively cited plaintiff employee's availability and time spent physically in the office, even though male employees often kept similar schedules);

## **RETALIATION**

INSTRUCTION NO. 14.     Introduction (Retaliation)[34]

The plaintiff does **not** need to establish the underlying discrimination in order to prove retaliation.[35]

---

[34] Instruction based on Mass CPJI § 5.2.9(a) Retaliation – Introduction.

[35] Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 405 (2016) (noting that a claim for retaliation is a separate and distinct from a claim of discrimination and may succeed even if the discrimination claim fails, provided "the claimant can prove that [she] reasonably and in good faith believed that the [employer] was engaged in wrongful discrimination" (internal quotations omitted)); Poon v. Mass. Inst. of Tech., 74 Mass. App. Ct. 185, 200 (2009).

INSTRUCTION NO. 15.        Retaliation Elements (Where Plaintiff Opposed Employer's
Discriminatory Practices)

        In order to recover for retaliation, Ms. Chan must prove to you by a preponderance of the
evidence that (1) Ms. Chan engaged in conduct that is protected under Massachusetts law and (2)
Chan's legally protected conduct was a determinative factor in Wellington's decision to
terminate her employment.[36]

        I will now describe these two elements to you in further detail.

---

[36] Tate v. Dep't of Mental Health, 419 Mass. 356, 364 (1995); Verdrager v. Mintz, Levin, Cohn,
Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 405 (2016).

INSTRUCTION NO. 16.    Protected Conduct[37]

The first element requires that Ms. Chan show that she engaged in protected conduct by opposing what she reasonably believed to be discriminatory treatment. For her conduct to be protected, Ms. Chan does not have to prove that the conduct she opposed actually amounted to unlawful discrimination; rather, she need only show that she had a good faith, reasonable belief that her employer's actions were discriminatory.

Protected opposition includes asking a supervisor to stop engaging in discriminatory conduct or speaking to someone in a position of authority and complaining about the discriminatory conduct. Protected opposition also includes resisting or refusing to acquiesce to discriminatory conduct. A statement of intent to complain about discriminatory conduct to Human Resources is protected. Verbal opposition to discriminatory treatment is protected the same as written opposition to discriminatory treatment.

Opposition to discriminatory treatment is protected even if it is later found that the conduct opposed does not rise to the level of unlawful discriminatory treatment. Rather, the law protects employees engaging in protected conduct, and does not require them to be correct in their reports. Retaliation is forbidden against each incident of protected conduct, not just the first instance. An opposition to what is reasonably believed to be discriminatory treatment may be protected conduct, even if you do not agree that the underlying conduct as issue was discriminatory.

---

[37] Fantini v. Salem State College, 557 F.3d 22, 32 (1st Cir. 2009) (plaintiff need only show good faith, reasonable belief that employer's actions violate law); Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 121-22 (Mass. 2000) (retaliation claim available, even if no underlying discrimination proven); Psy-Ed Corp. v. Klein, 459 Mass. 697, 706 (Mass. 2011) (same); M.G.L. c. 151B, §§ 4(1), 4(4), 4(16A) (scope of protected conduct); Crawford v. Metropolitan Government of Nashville, 555 U.S. 271, 276-77 (2009) ("'Oppose goes beyond 'active, consistent' behavior in ordinary discourse, where we would naturally use the word to speak of someone who has taken no action at all to advance a position beyond disclosing it. ... And we would call it 'opposition' if an employee took a stand against an employer's discriminatory practices not by 'instigating' action, but by standing pat, say, by refusing to follow a supervisor's order to fire a junior coworker for discriminatory reasons."); Rodriguez-Vives v. Puerto Rico Firefighters Corps, 743 F.3d 278, 284 (1st Cir. 2014) (citing Crawford) ("'oppose,' being left undefined by the statute, carries its ordinary meaning: to resist or antagonize; to contend against; to confront; resist; withstand."); Jones v. Walgreen Co., 679 F.3d 9 (1st Cir. 2012) (retaliation is forbidden against all protected conduct, not just the first instance).

INSTRUCTION NO. 17.        Retaliatory Motive[38]

The second element requires you to determine if Wellington terminated Ms. Chan because of her legally protected conduct.

A retaliatory motive can take many forms. It may take the form of anger or hostility towards an employee for raising complaints. Or it may consist of equating internal complaints with a bad attitude, emotional instability, or dishonesty. Retaliatory motive also exists where the employer seeks to "rid the workplace of the complaining employee." For example, it is a retaliatory motive to terminate an employee to reduce "tension" or make the workspace a more comfortable place for the individual or individuals about whom the employee is complaining.

---

[38] Caloia v. Putnam Investments, 2012 U.S. Dist. Lexis 117510 (D. Mass. 2012) (retaliation can take the form of anger at employee); Ruffino v. State St. Bank and Trust Co., 908 F.Supp. 1019, 1040 (D. Mass. 1995) (motive to rid workplace of employee unlawful); Dickinson v. UMass Memorial Medical Group, 2011 Mass. Comm. Discrim. Lexis 6, at 28 (same); College-Town v. MCAD, 400 Mass. 156, 168 (Mass. 1987) (transferring an employee who has complained of harassment to another department to relieve "tension" is retaliation).

INSTRUCTION NO. 18.     Causation[39]

Sometimes there is more than one motivation for an employer's conduct. It is not necessary to find that Ms. Chan's protected conduct was the <u>only</u> motivation for terminating her employment. You may find that Ms. Chan was the victim of unlawful retaliation even if other considerations also motivated the employer at that time. Ms. Chan need only prove to you that but for her protected conduct, she would not have been terminated.

---

[39] <u>Burrage v. United States</u>, 134 S.Ct. 881, 888 (2014) ("but for" factor is the proverbial 'straw that broke the camel's back'); <u>Psy-Ed Corp. v. Klein</u>, 459 Mass. 697, 707 (Mass. 2011) ("a determinative factor"); <u>Lipchitz v. Raytheon Co.</u>, 434 Mass. 493, 501, 506-07 (Mass. 2001) (in indirect evidence case, the plaintiff need not prove all of the employer's articulated reasons are false).

INSTRUCTION NO. 19.     Retaliation and Temporal Proximity[40]

You are permitted to infer retaliation from the timing and sequence of events. This inference may be drawn if adverse action is taken against a satisfactorily performing employee in the immediate aftermath of the employer's becoming aware of the employee's protected activity in protesting or opposing discrimination, or where adverse employment actions follow close on the heels of protected activity. In other words, close proximity in time between Ms. Chan's protected activity and the adverse employment action by Wellington permits an inference of the causal nexus necessary for a finding of retaliation.[41]

You may also infer retaliation from evidence that a pattern of discriminatory or retaliatory conduct began soon after the protected activity and only culminated later in actual adverse action.[42]

---

[40] See Mass. CPJI § 5.2.9(d) Retaliation – Retaliation and Temporal Proximity.

[41] Psy-Ed Corp. v. Klein, 459 Mass. 697, 711 (2011) ("rapid succession" of events supported inference of causal connection between protected conduct and adverse action); Pardo v. Gen. Hosp. Corp., 446 Mass. 1, 19-20 (2006); Mole v. Univ. of Mass., 442 Mass. 582, 592 (2004); Poon v. Mass. Inst. of Tech., 74 Mass. App. Ct. 185, 200 (2009) (substantial interim between alleged retaliation and protected conduct can break causal connection).

[42] Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 407 (2016); Mole v. Univ. of Massachusetts, 442 Mass. 582, 596 (2004) ("a series of retaliatory measures starting shortly after the protected activity can justify the inference that a particular action in that series, although occurring a considerable time later, is still motivated by retaliation").

INSTRUCTION NO. 20.    Retaliation – Circumstantial Evidence[43]

As with discrimination, circumstantial evidence of retaliation may include evidence of a general atmosphere of retaliation at Wellington; evidence that Wellington retaliated against other persons and/or in other matters;[44] and evidence of retaliatory thinking by Wellington or those in charge.[45]

---

[43] See Mass. CPJI §§ 5.2.3(b)–(c), Proving Discrimination by Circumstantial Evidence – General Atmosphere of Discrimination; Attitudes of Those in Authority. See Instructions 8 and 9 and authorities cited, supra.

[44] MacCormack v. Bos. Edison Co., 423 Mass. 652, 664 (1996) ("In the absence of direct proof of retaliation, a plaintiff may introduce relevant evidence such as the demonstration of a general practice and policy of retaliation.")

[45] See Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 409–10 (2016) (decision-maker's statements permitted inference "that he fired the plaintiff because she pursued her discrimination claims while refusing to accept the firm's settlement offer, and that he cited her perceived ethical violations merely as a cover for that unlawful motive").

# DAMAGES

INSTRUCTION NO. 21.      <u>Damages – Generally</u>[46]

If Ms. Chan has proven to you that Wellington unlawfully discriminated or retaliated against her, or both, then you must decide the amount of damages, if any, that will fairly compensate Ms. Chan. The purpose of an award of compensatory damages is to make the plaintiff whole for all the losses that she has suffered because of the defendant's unlawful discrimination or retaliation. Except where I instruct you otherwise, the plaintiff bears the burden of proof on damages.

Uncertainty in the amount of damages does not bar recovery and mathematical precision is not required. However, you must not speculate, conjecture, or guess in awarding damages. The award is acceptable as long as it is based on just and reasonable inferences from the evidence. If you find that Wellington unlawfully discriminated against Ms. Chan, unlawfully retaliated against Ms. Chan, or both, then you may award damages in the following four areas:

1. back pay,

2. front pay,

3. emotional distress, and

4. punitive damages.

I will explain each to you.[47]

---

[46] Mass CPJI § 5.3.1 Damages – Generally.

[47] G.L. c. 151B, § 9; <u>Stonehill Coll. v. MCAD</u>, 441 Mass. 549 (2004) (comparing judicial proceeding for damages to MCAD proceeding); <u>Conway v. Electro Switch Corp.</u>, 402 Mass. 385, 388 (1988).

INSTRUCTION NO. 22.     Back Pay[48]

First, the plaintiff is entitled to back pay, which is the amount of the Ms. Chan's lost earnings from the date of the adverse employment decision until today. This includes all lost salary, incentive compensation, bonuses, and the value of employment benefits that would have accumulated but for Wellington's discriminatory or retaliatory conduct.[49]

---

[48] Instruction based on: Mass. CPJI § 5.3.2 Damages – Back Pay.

[49] Beaupre v. Cliff Smith & Assocs., 50 Mass. App. Ct. 480, 496 n.25 (2000).

INSTRUCTION NO. 23.      Mitigation of Damages[50]

The plaintiff has a duty to limit her damages. However, it is Wellington's burden to prove to you that Ms. Chan failed in her duty to mitigate damages by seeking other employment. Wellington meets this burden only if it has proved to you that:

1. one or more discoverable opportunities for comparable employment were available in a location at least as convenient as the place of former employment;

2. Ms. Chan unreasonably made no attempt to apply for any such job; and

3. it was reasonably likely that Ms. Chan would have obtained one of those comparable jobs.[51]

A comparable job is one that offers similar compensation, long-term benefits, opportunities for promotion, job responsibilities, working conditions, and status. The duty of mitigation does not require Ms. Chan to go into another line of work, accept a demotion, or take a demeaning position.[52]

If Wellington has proven the three elements of mitigation that I have just read to you, then you should reduce any back pay award to Ms. Chan by the amount that Wellington has proven that she could have earned in wages and benefits at the comparable job.

---

[50] Mass. CPJI § 5.3.2(a) Damages – Back Pay – Mitigation of Damages.

[51] Sheriff of Suffolk County v. Jail Officers & Employees, 465 Mass. 584, 592 (2013); Black v. Sch. Comm. of Malden, 369 Mass. 657, 662–63 (1976); Buckley Nursing Home, Inc. v. MCAD, 20 Mass. App. Ct. 172, 185 (1985).

[52] Sherriff of Suffolk Cty. v. Jail Officers and Employees of Suffolk Cty., 465 Mass. 584, 593 (2013).

INSTRUCTION NO. 24.        Front Pay; Reducing Front Pay to Present Value[53]

Second, Ms. Chan is entitled to front pay, which is the amount of damages resulting from the loss of future earnings and benefits that is attributable to Wellington's misconduct. You cannot speculate in awarding front pay; rather, the determination of the amount of the award must be proven with reasonable certainty. You should make reasonable estimates based on the evidence concerning the amount of future earnings, including salary, incentive compensation, bonuses, and the value of benefits that Ms. Chan would have received but for Wellington's unlawful discrimination or retaliation.

In determining front pay, you should consider and weigh the following factors:

1. the amount of earnings, including salary and benefits, that Ms. Chan probably would have received between now and her projected retirement date or date of future employment;

2. Ms. Chan's probable date of retirement or date of future employment;

3. the amount of earnings that Ms. Chan probably will receive from another employer until her retirement;

4. the availability of other employment opportunities; and

5. the possibility of inflation and wage increases in the future.[54]

If you award damages to Ms. Chan for losses she will suffer in the future, keep in mind that a plaintiff cannot be awarded damages that overcompensate the losses that she suffered because of the defendant's conduct.

In order to avoid overpaying Ms. Chan, you must consider that the amount of money you give her today for future losses can be put in the bank, where it can earn interest. So, in making an award for future damages, you must determine the amount of money that, if invested today at a reasonable rate of interest, would in the future provide Ms. Chan with the amount of money that you calculated she will lose in the future as a result of Wellington's conduct.[55]

---

[53] Mass. CPJI §§ 5.3.3, 5.3.3(a). Damages – Front Pay & Reducing front Pay to Present Value.

[54] Selmark Assocs. v. Ehrlich, 467 Mass. 525, 545 n.36 (2014); Haddad v. Wal-Mart Stores, Inc., 455 Mass. 91, 102–03 (2009); Conway v. Electro Switch Corp., 402 Mass. 385, 388–89 (1988); Ventresco v. Liberty Mut. Ins. Co., 55 Mass. App. Ct. 201, 210 (2002); Handrahan v. Red Roof Inns, Inc., 48 Mass. App. Ct. 901, 902 (1999).

[55] Conway v. Electro Switch Corp., 402 Mass. 385, 388–89 & n.3 (1988).

INSTRUCTION NO. 25.     Emotional Distress[56]

    Third, if you find that Ms. Chan has been discriminated against, retaliated against, or both, you may also award her reasonable damages for her emotional distress. Emotional distress includes mental pain, discomfort, indignity, depression, fear, anxiety, or humiliation suffered as a result of the discrimination, the retaliation, or both. Although uncertainty in the amount of damages does not bar recovery and mathematical precision is not required, you must not speculate, conjecture, or guess in awarding damages.[57]

    To recover for her emotional distress Ms. Chan may, but is not required to present evidence of physical injury or physical manifestation of her distress. Nor is she required to show that she sought psychiatric consultation.[58]

    Some factors that you should consider include, but are not limited to:

    1. the nature and character of the alleged harm;

    2. the severity of the harm;

    3. the length of time Ms. Chan has suffered and reasonably expects to suffer; and

    4. whether Ms. Chan has attempted to mitigate the harm (for example, by counseling or by taking medication).[59]

    In addition, Ms. Chan must show a sufficient causal connection between the Wellington's unlawful acts and her emotional distress.[60]

---

[56] Mass. CPJI § 5.3.4 Emotional Distress.

[57] Stonehill Coll. v. MCAD, 441 Mass. 549, 575–76 (2004); Buckley Nursing Home, Inc. v. MCAD, 20 Mass. App. Ct. 172, 182 (1985).

[58] Stonehill Coll. v. MCAD, 441 Mass. 549, 576 (2004).

[59] Stonehill Coll. v. MCAD, 441 Mass. 549, 576 (2004) (declaring these factors in context of MCAD award); Massasoit Indus. Corp. v. MCAD, 91 Mass. App. Ct. 208, 214–15 (2017); Smith v. Bell Atl., 63 Mass. App. Ct. 702, 710 (2005) (applying those factors to jury award, citing Stonehill as "instructive"); see also Restatement (Second) of Torts §§ 905, cmt. i, 912, 917 (1979).

[60] Stonehill Coll. v. MCAD, 441 Mass. 549, 576 (2004).

INSTRUCTION NO. 26.     Punitive Damages[61]

Fourth, if you find that Wellington has intentionally discriminated or retaliated against Ms. Chan, or both, you may consider whether punitive damages are warranted. Punitive damages are different from compensatory damages. Unlike compensatory damages, which compensate the victim for the harm he has suffered, the purpose of punitive damages is to punish the defendant for conduct that is outrageous because of the defendant's evil motive or reckless indifference to the rights of others.[62] You may award punitive damages even absent compensatory damages.[63]

To find that punitive damages should be awarded, you must find that more than intentional discrimination occurred. Punitive damages may be awarded only where the defendant's conduct is outrageous or egregious.[64]

In determining the amount of a punitive damage award, if any, you should consider:

1. the egregious or outrageous character or nature of Wellington's conduct;

2. Wellington's wealth, in order to determine what amount of money is needed to punish Wellington's conduct and to deter any future acts of discrimination or retaliation;

3. the actual harm suffered by Ms. Chan;

4. the magnitude of any potential harm to other victims if similar future behavior is not deterred;

5. whether there was a conscious or purposeful effort to demean or diminish the class of which Ms. Chan is a part, that is, people who are Asian, female, pregnant, or of Chinese descent, or people who protest or oppose discrimination (or if there was a conscious or purposeful effort to demean or diminish Ms. Chan because she was a member of one or more of those classes);

6. whether Wellington was aware that the discriminatory or retaliatory conduct would likely cause serious harm, or recklessly disregarded the likelihood that serious harm would arise;

7. Wellington's conduct after learning that the initial conduct would likely cause harm; and

8. the duration of the wrongful conduct and any concealment of that conduct by Wellington.[65]

---

[61] Instruction based on: Mass. CPJI § 5.3.5 Punitive Damages.

[62] Haddad v. Wal-Mart Stores, Inc., 455 Mass. 91, 106–11 (2009); see also Tryon v. Massachusetts Bay Transportation Auth., 98 Mass. App. Ct. 673, 685–88 (2020).

[63] Bain v. City of Springfield, 424 Mass. 758, 767 (1997);

[64] Haddad, 455 Mass. at 110.

[65] Haddad, 455 Mass. at 110–11; Charles v. Leo, 96 Mass. App. Ct. 326, 347 (2019).

If you do award punitive damages, you should fix the amount by using calm discretion and sound reason.

## **TORTIOUS INTERFERENCE**

INSTRUCTION NO. 27.     In General

Ms. Chan also claims that Mr. Argyle intentionally and improperly interfered with her advantageous employment relationship with Wellington.

In order to prevail on this claim of improper interference with an advantageous employment relationship, Ms. Chan must prove by a preponderance of the evidence that:

1. She had an advantageous employment relationship with Wellington;

2. Mr. Argyle knowingly induced or persuaded Wellington to break that relationship;

3. Mr. Argyle's interference with Ms. Chan's employment relationship with Wellington, in addition to being intentional, was improper in motive or in means; and

4. Ms. Chan was harmed by Mr. Argyle's actions.[66]

---

[66] Weber v. Cmty. Teamwork, Inc., 434 Mass. 761, 781 (2001).

INSTRUCTION NO. 28.      Actual Malice

      If you find that Mr. Argyle was a corporate official acting within the scope of his corporate responsibilities when he interfered with Ms. Chan's employment relationship with Wellington, then Ms. Chan must also prove, fifth, that Mr. Argyle acted with "actual malice," meaning "a spiteful, malignant purpose, unrelated to the legitimate corporate interest."[67]

      You are permitted to find that Mr. Argyle acted with "actual malice" if you find that he acted with intent to unlawfully discriminate against Ms. Chan on the basis of her sex, race, pregnancy, or national origin, or if you find that he acted with intent to unlawfully retaliate against Ms. Chan for her opposition to discrimination.[68]

---

[67] Blackstone v. Cashman, 448 Mass. 255, 260–61 (2007).

[68] Weber v. Cmty. Teamwork, Inc., 434 Mass. 761, 782 (2001) (discriminatory intent); Fraelick v. PerkettPR, Inc., 83 Mass. App. Ct. 698, 708 (2013) (retaliatory intent relating to employee's raising of wage claim); Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 77 (1st Cir. 2001) (retaliatory intent for filing charge of discrimination); Comey v. Hill, 387 Mass. 11, 19 (1982) (intent to discriminate based on age).

INSTRUCTION NO. 29.      Damages for Tortious Interference

If you find for Ms. Chan on her claim for intentional interference with her employment relationship, you may award Ms. Chan damages for the profit or advantage that she would, with reasonable certainty, have enjoyed, were it not for Mr. Argyle's interference.[69] In so doing you may award damages in the four areas I have previously instructed you and according to those instructions: back pay, front pay, emotional distress,[70] and punitive damages.[71]

Ms. Chan is not required to prove her loss of profits with mathematical precision. An element of uncertainty is permitted in calculating damages, and a reasonable approximation will suffice.[72] However, she still must show the portion of her losses, at least in general terms, that were attributable to Mr. Argyle's misconduct.[73]

Finally, to award damages for Ms. Chan's emotional distress that was caused by Mr. Argyle's interference, you must find that Ms. Chan's emotional distress was a foreseeable consequence of Mr. Argyle's interference.[74]

---

[69] Nat'l Merch. Corp. v. Leyden, 370 Mass. 425, 430 (1976); Gentile Bros., Corp. v. Rowena Homes, Inc., 352 Mass. 584, 591–92 (1967); Restatement (Second) of Torts § 774A.

[70] Draghetti v. Chmielewski, 416 Mass. 808, 819 (1994) (citing Restatement (Second) of Torts § 774A(1)(c)); Ratner v. Noble, 35 Mass. App. Ct. 137, 138 (1993) (citing Restatement (Second) of Torts § 774A).

[71] Restatement (Second) of Torts § 774A cmt. a; see Zimmerman v. Direct Fed. Credit Union, 121 F. Supp. 2d 133, 145 (D. Mass. 2000), aff'd, 262 F.3d 70 (1st Cir. 2001).

[72] Selmark Assocs., Inc. v. Ehrlich, 467 Mass. 525, 545 (2014); Air Tech. Corp. v. Gen. Elec. Co., 347 Mass. 613, 627 (1964) ("A reasonable approximation will suffice. . . . Particularly is this so where the difficulties in determining damages arise in large part from GE's own failure to negotiate with AT in accordance with the joint undertaking.")

[73] Augat, Inc. v. Aegis, Inc., 417 Mass. 484, 488 (1994).

[74] Draghetti v. Chmielewski, 416 Mass. 808, 819 (1994) (citing Restatement (Second) of Torts § 774A(1)(c)).

## **CERTIFICATE OF SERVICE**

      I, Patrick J. Hanno, counsel for Plaintiff, hereby certify that on October 9, 2021, I caused a copy of the within document to be filed using the Court's CM/ECF system, which will send notification of such filing electronically to all registered participants.

                                              */s/  Patrick J. Hannon*
                                              Patrick J. Hannon