UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

GIGI KAI ZI CHAN

      Plaintiff,

      v.

WELLINGTON MANAGEMENT
COMPANY LLP AND CHARLES ARGYLE,

      Defendants.

Civil Action No. 19-cv-11605-WGY

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE
CERTAIN EVIDENCE CONCERNING PLAINTIFF'S PRIOR EMPLOYMENT**

Defendants Wellington Management Company LLP ("Wellington")[1] and Charles Argyle ("Defendants") oppose Plaintiff Gigi Kai Zi Chan's motion to exclude any evidence of the circumstances of her departure from her prior employer Threadneedle Investments Singapore (Pte) Limited ("Threadneedle"). Plaintiff incorrectly surmises that Defendants intend to offer this evidence to invite the jury to make an impermissible propensity inference; in other words, to show that Plaintiff is the kind of employee who tends to get herself fired. In reality, the circumstances of Plaintiff's prior employment at Threadneedle, including her September 2013 suspension pending an investigation and her October 2013 separation agreement, are relevant and admissible for at least two non-propensity purposes.

First, the evidence is relevant because Plaintiff repeatedly cited to her prior experience and record at Threadneedle as justification for demanding certain preferential treatment at Wellington. Plaintiff cannot both tout this experience and forbid any discussion of it. What is sauce for the

---

[1] Plaintiff was employed by Wellington Management Hong Kong ("WMHK"). However, Wellington is not contesting co-employment for purposes of this litigation.

goose is sauce for the gander.  Second, the evidence is relevant to rebut the testimony of Plaintiff's expert Frank Carr that Plaintiff cannot locate comparable employment because the stain of having been terminated from Wellington has permanently damaged her reputation.  Plaintiff's prior separation and subsequent offers of employment within approximately six months of that departure are relevant to the jury's determination of whether to credit Mr. Carr's testimony on this issue.  Finally, to the extent Plaintiff seeks to preclude cross-examination on her employment at Threadneedle, such an effort would also be unfounded.  Whether Plaintiff lied in her employment application and in other communications to Wellington concerning the reasons for her separation from Threadneedle is clearly relevant to her character for truthfulness.

## RELEVANT FACTUAL BACKGROUND

In early 2013, Plaintiff contacted Wellington in connection with an opening it had for a lead China Equities Portfolio Manager in its Hong Kong Office.  At the time, she was working as a fund manager for Threadneedle.  Wellington determined that she was not well-qualified for its Portfolio Manager position.  However, it asked if she would be interested in exploring an analyst position, but she was not at the time.

In January 2014, Plaintiff reached out to Wellington again to explore possible employment.  She represented to Wellington that she had left Threadneedle in October 2013, to take a "career break."  *See* Exhibit A.  Wellington did not have a position open at the time.  However, because Wellington was on the lookout for local investment talent in Hong Kong, it nonetheless brought Plaintiff in to interview on an "opportunistic" basis, meaning that if things went well, it might consider creating a role for her.

Wellington ultimately decided to create and offer Plaintiff the position of Equity Research Analyst.  Unbeknownst to Wellington at the time, her statements about a "career break" were not

true.  In fact, on September 9, 2013, Threadneedle had sent Plaintiff a memo informing her that her employment was being suspended for insubordination pending investigation.  *See* Exhibit B.  Moreover, on October 10, 2013, Plaintiff signed a Settlement Agreement with Threadneedle pursuant to which she agreed to resign and she waived all legal claims in exchange for receiving severance pay.  *See* Exhibit C.  It was agreed that Threadneedle would issue a mutually-agreed upon press release stating Plaintiff was leaving Threadneedle to take a "career break."  Not surprisingly, Plaintiff would like to keep this evidence from the jury.  However, given the litany of reasons this evidence is relevant to the claims and defenses in this case, her Motion should be denied.

**ARGUMENT**

**A.      Plaintiff Has Put Her Prior Experience at Threadneedle at Issue in This Case**

When employed at Wellington, Plaintiff repeatedly cited her prior experience managing money at Threadneedle when increasingly insisting that she should be given the opportunity to manage a portfolio at Wellington.  For example, in the Complaint, Plaintiff alleges that upon joining Wellington, "she had already developed a strong track record of success as a Portfolio Manager.  Among her many noteworthy achievements, Ms. Chan had successfully launched and managed the Threadneedle China Opportunities Fund ("TCO Fund")."  *Compl.* ¶ 13.  Indeed, at Wellington, Plaintiff cited to her prior experience at Threadneedle with such frequency that it drew criticism.  *See* Exhibit D ("she needs to stop leading with her track record [at Threadneedle]); Exhibit E ("she feels as if her prior experience counts for nothing at Wellington, she has to start all over again here, and believes if her biggest asset is diminishing in value (which is her track record from Threadneedle) . . . What bothers me most about Gigi is that when she talks about her own experience there is a strong element of 'why does no one realize that I have this all figured

out – my prior track record speaks for itself.'").

Plaintiff will undoubtedly testify about her purported successes at Threadneedle to support her claim that she was undervalued at Wellington. In so doing, Plaintiff will have "opened the door" for Wellington to introduce evidence of the suspension and negotiated separation from Threadneedle. *See United States v. Petrillo*, No. 15-cr-192-01-JL, 2016 U.S. Dist. LEXIS 112329, at *10 (D.N.H. Aug. 23, 2016) (explaining that "[t]he opening-the-door doctrine permits the admission of otherwise inadmissible evidence when a party presents contrary evidence which either misleads, or, in fairness should be countered").

If Plaintiff were permitted to present only her self-serving description of her employment at Threadneedle, it would unfairly create a one-sided, inaccurate image for the jury. The rules of evidence cannot be both a sword and a shield. Plaintiff was not the Threadneedle "star" she portrayed herself to be and she should not be permitted paint a false portrait of her experience there without allowing Wellington to rebut that narrative. This entire picture must be presented to the jury, and it is then within the jury's discretion to weigh the evidence. *See Tamburo v. Ross/West View Emergency Med. Servs. Auth.*, No. 2:04-cv-1237, 2007 U.S. Dist. LEXIS 16196, at *3 (W.D. Pa. Feb. 22, 2007) ("If [Plaintiff] "opens the door," for example by referring to positive aspects of her prior employment record, Defendant will certainly be entitled to rebut that testimony. From a review of Plaintiff's pretrial statement, it appears that several of her proposed exhibits would open the door to her overall employment history.").

**B.      Evidence of Plaintiff's Prior Suspension and Negotiated Separation from Threadneedle Is Relevant to Rebut Testimony by Plaintiff's Expert of Permanent Reputational Harm**

Plaintiff's expert witness Frank Carr intends to offer the (speculative) testimony that Plaintiff's ability to obtain replacement employment has been permanently harmed due to her

4

termination from Wellington. The jury should know that Plaintiff was suspended and entered into a separation agreement prior to joining Wellington as those events may well have affected her reputation. Moreover, Plaintiff's ability to garner two lucrative job offers within just six months of her abrupt, involuntary separation from Threadneedle is directly relevant to whether the jury believes Mr. Carr's testimony of permanent reduced income potential.

**C.     Whether Plaintiff Lied on Her Employment Application is Relevant to Her Credibility**

As part of the hiring process, Plaintiff completed and signed two employment Applications. *See* Exhibit F. In response to questions on both asking her reasons for leaving her last employer (e.g., Threadneedle), Plaintiff responded "Fiancé Relocating." On one application, she responded "No" to the following questions:

> Q: Are you, or have you ever been, the subject of an investigation into allegations of misconduct or malpractice in connection with any business activity?
>
> Q: Have you ever, either in the Hong Kong, or elsewhere – a.) been refused entry to, or been dismissed or requested to resign from, any profession, vocation, office or employment, or from any fiduciary office or position of trust, where or not remunerated?

*Id.* Plaintiff certified to the completeness and accuracy of the employment applications.

Whether Plaintiff falsely represented to Wellington the circumstances of her departure from her immediate prior employer goes to the core of her credibility.[2] Moreover, there is can be no question that cross-examination of prior acts indicating Plaintiff's character for untruthfulness are proper. *See* Fed. R. Evid. 608(b); *see also Altman v. New Pub. Sch. Dist.,* 2017 U.S. Dist. LEXIS 2515, at *20-21 (S.D.N.Y. Jan. 6, 2017) (Because Plaintiff is the crucial witness to her claim of discrimination, the question of her credibility is essential to the case. Her potential

---

[2] Plaintiff's motion relies on a trio of cases that primarily addressed the inadmissibility of a plaintiff's prior employment history for Rule 404(b) purposes. Defendants are not seeking to offer Plaintiff's suspension letter and separation agreement under Rule 404(b).

propensity for falsehoods is certainly relevant to her credibility.") (citations and quotations omitted); *Andrade v. Walgreens-OptionCare, Inc.*, 784 F. Supp. 2d 533, 536 (E.D. Pa. 2011) (permitting cross-examination because "[Plaintiff]'s misrepresentations on his employment forms are probative of his credibility") (citing *United States v. Redditt*, 381 F.3d 597, 602 (7th Cir. 2004)); *Richards v. Wells Real Estate Funds*, No. 1:03-CV-2282-WEJ, 2007 U.S. Dist. LEXIS 111203, at *6 (N.D. Ga. Mar. 2, 2007) (allowing defendants to "cross-examine [Plaintiff] about his employment history, which defendants did not know about at the time they interviewed him, if it is probative of truthfulness or untruthfulness").

Plaintiff's material misrepresentations to Wellington about the reasons for her departure from the employer she had worked at immediately prior to pursuing employment at Wellington, reflect on her character for untruthfulness and, thus, Wellington must be permitted to explore these misrepresentations on cross-examination.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny Plaintiff's motion *in limine*.

        Respectfully Submitted,

        WELLINGTON MANAGEMENT COMPANY
        and CHARLES ARGYLE,

        By their attorneys,

        */s/ Stephen T. Paterniti*
        Stephen T. Paterniti, BBO# 564860
        JACKSON LEWIS P.C.
        75 Park Plaza, 4th Floor
        Boston, Massachusetts 02116
        TELE: (617) 367-0025
        FACSIMILE: (617) 367-2155

        Beverly Garofalo
        Admitted *Pro Hac Vice*
        JACKSON LEWIS P.C.
        90 State House Square
        Hartford, Connecticut 06109
        TELE:  (860) 331-1535
        FACSIMILE: (860) 247-1330

Dated: October 11, 2021

**CERTIFICATE OF SERVICE**

       This hereby certifies that on October 11, 2021 this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                                        */s/ Stephen T. Paterniti*
                                                        Jackson Lewis, PC

4812-1495-2446, v. 2