UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

GIGI KAI ZI CHAN,

        Plaintiff,

v.

WELLINGTON MANAGEMENT COMPANY LLP and CHARLES ARGYLE,

        Defendants.

Civil Action No. 19-cv-11605-WGY

## DEFENDANTS' OPPOSITION TO MOTION *IN LIMINE* TO EXCLUDE THE EXPERT TESTIMONY OF LAURA R. STEINER AND MALCOLM S. COHEN

Defendants Wellington Management Company LLP ("Wellington")[1] and Charles Argyle ("Defendants") oppose Plaintiff's motion to preclude Malcolm S. Cohen[2] from offering testimony at trial because his opinions will plainly aid the jury in determining whether Plaintiff mitigated her damaged. Plaintiff mischaracterizes Dr. Cohen's intended testimony and invites the Court to adopt an improperly severe standard in demonstrating that Plaintiff failed to mitigate her damages. Dr. Cohen should be permitted to testify that Plaintiff was an attractive candidate for prospective employers, that Plaintiff's job search deviated in several respects from a typical successful search, that there were numerous comparable positions that Plaintiff could have applied to, and that the reasonable duration of Plaintiff's unemployment was no more than 37 weeks.

Plaintiff first attacks Dr. Cohen for providing the factual basis for the opinions that follow in his report. The factual description of Plaintiff's background and purported search efforts are all

---

[1] Plaintiff was employed by Wellington Management Hong Kong ("WMHK"). However, Wellington is not contesting co-employment for purposes of this litigation.

[2] This Court required Defendants choose whether to offer Ms. Steiner or Dr. Cohen as the testifying witness for the opinions offered in their joint report and Defendants have selected Dr. Cohen.

necessary predicates to the opinions that follow. Dr. Cohen was right to detail Plaintiff's education and experience before opining that she is an "attractive" candidate for prospective employers. That opinion is helpful to the jury, which may be unfamiliar with the marketability of a person with the kinds of credentials and experience Plaintiff possesses. Dr. Cohen also needed to set out his knowledge that Plaintiff did not apply for a single position in the first year of her unemployment and only applied to four positions in the next year in order to opine that such efforts deviated from a normal or successful job search. Likewise, it was necessary to cite specific evidence of Plaintiff waiting months before responding to recruiters in order to opine that such gaps in communications deviated from a normal or successful job search. Lastly, it was crucial to show that the arbitrary limitations Plaintiff has placed on her job search (insisting on positions that paid her more than her job at Wellington, refusing to look at research analyst positions even though that was her title at Wellington) in order to opine that Plaintiff's restrictive requirements made it more challenging for her to find a new position. That opinion is also helpful to the jury, which may be unfamiliar with various elements of a typical or successful job search for a person in Plaintiff's circumstances. Moreover, Dr. Cohen's report includes a detailed background and CV that provides a more than sufficient basis for the jury to believe he has specialized knowledge in these fields.[3]

This is all fairly standard. But Plaintiff mischaracterizes Dr. Cohen's anticipated testimony as offering an opinion of the ultimate reasonableness of her job search. He offers no such opinion. Rather, Dr. Cohen presents the very opinions that even the cases Plaintiff relies on in her motion state are proper and admissible. For instance, in *Castelluccio v. IBM*, 2012 U.S. Dist. LEXIS

---

[3] The report discloses that Dr. Cohen has taught undergraduate and graduate classes on Statistics, Economics, Labor Market Information, Human Resource Management and Econometrics. He was the Director of the Institute of Labor and Industrial Relations at the University of Michigan from 1980 to 1993. He was Chairman of the Program for Human Resource Development at the University of Michigan, a Rackham graduate certificate program, which was initially located in the Vocational Education department within the School of Education. He has done extensive research on labor market issues, new hires, labor shortages and labor market information.

158801, the court barred testimony on whether the plaintiff's job search was reasonable but allowed expert testimony on "the nature and degree of efforts which typify an average or successful job search, . . . and how [the plaintiff's] efforts compare to what are typical-or successful-efforts." *Id.* at *8. Dr. Cohen has done just that, identifying six factors that made Plaintiff's purported job search more difficult than it otherwise would have been. These issues are not common-sense or within the ken of an ordinary juror. *United States v. Martinez-Armestica*, 846 F.3d 436, 444 (1st Cir. 2017) (expert testimony will aid the trier of fact if the evidence about which he or she testifies "concerns matters that are beyond the understanding of the average lay person"). Rather, it is only from Dr. Cohen's vantage point as an expert in economics, labor market information, human resource management and econometrics that he has been able to identify the factors (many of which were self-imposed) that made it more challenging for Plaintiff to find new employment.

The primary thrust of Plaintiff's attack, however, is that Dr. Cohen ought not to be allowed to share his opinions about the availability of comparable positions and about the expected length of Plaintiff's unemployment because the data he cites is supposedly unreliable. This is silly.

With respect to the availability of comparable positions, Dr. Cohen has identified more nearly 3,000 postings from September 12, 2017 to present in Hong Kong alone for financial managers or financial and investment analysts that hit on targeted keywords to further narrow the search. He's also identified well over 5,000 postings in both Singapore, London, and the United States. This is precise, targeted and painstakingly-developed data. The descriptions of each posting are included in Dr. Cohen's report and at trial Plaintiff is free, as she has already done, to point out that a handful of them do not match her definition of comparable employment. But that is fodder for cross-examination not grounds for exclusion. There can be no doubt that Dr. Cohen

has provided compelling data upon which he bases his opinion that there were literally thousands of comparable positions to which Plaintiff could have applied.

Plaintiff's contention appears to be this mountain of posting is irrelevant unless they explicitly state the "(1) compensation, (2) promotional opportunities, (3) long-term benefits, and (4) status," which no posting would ever contain. But that creates an impossible standard that is inconsistent with Massachusetts law. Although Defendants must present evidence from which the jury can conclude that one or more discoverable opportunities for comparable employment were available in a location as convenient as Plaintiff's place of former employment, nothing forbids Defendants from offering such evidence in the form of expert testimony. *See Sheriff of Suffolk Cty. v. Jail Officers & Emps. of Suffolk Cty.*, 465 Mass. 584, 592–95 (2013). In other words, a jury can reasonably conclude from Dr. Cohen's testimony that within the thousands of postings there were numerous comparable positions.

Plaintiff also bafflingly criticizes Dr. Cohen for including Plaintiff's position at Wellington, Equity Research Analyst, in his search results. Plaintiff may tell herself that she was a portfolio manager because she was permitted to manage a $1 million fund of Wellington seed capital, but her title throughout the duration of her employment with Wellington was "Equity Research Analyst." Plaintiff's refusal to even search for research analysist positions is entirely relevant to the issue of mitigation and Dr. Cohen was right to have noted it. Here again, Plaintiff is welcome to pursue cross-examination into the issue, but inclusion of the fact that she did not search for Equity Research analyst positions is clearly relevant to the question of whether she made reasonably efforts to mitigate her lost wages.

This is not a novel issue. When an expert explains "his theory or method used to arrive at his opinion so it could be evaluated for reliability" and used search methods "specifically to find

positions comparable to the" plaintiff's former position, the testimony is reliable and admissible. *EEOC v. Tex. Roadhouse, Inc.*, 215 F. Supp. 3d 140, 167 (D. Mass. 2016) (Casper, J.) (distinguishing *Roniger v. McCall*, No. 97-cv-8009-RWS, 2000 U.S. Dist. LEXIS 11999, at *9-10 (S.D.N.Y. Aug. 16, 2000)). That is what Dr. Cohen has done here.

Likewise, Dr. Cohen has cited reliable data in support of his opinion regarding the reasonable duration of Plaintiff's unemployment. Specifically, Dr. Cohen cites reliable unemployment statistics to demonstrate that the baseline demand for employees remained robust throughout the entirety of Plaintiff's purported job search. Finally, Dr. Cohen also cites reliable BLS statistics for the duration of unemployment management, business, and financial operations employees experienced in 2017, 2018, 2019, and 2020. In opposing such an analysis, Plaintiff relies heavily on two unpublished District Court opinions from the Second Circuit for the proposition that such data is not sufficiently targeted to be reliable. *Roniger v. McCall*, No. 97-8009, 2000 U.S. Dist. LEXIS 11999, 2000 WL 1191078 (S.D.N.Y. Aug. 22, 2000) and *Castelluccio v. Int'l Bus. Machines Corp.*, No. 09-1145, 2012 U.S. Dist. LEXIS 158801, 2012 WL 5408420 (D. Conn. Nov. 6, 2012). But Dr. Cohen has taken pains to make the most favorable assumptions for Plaintiff, including that Plaintiff's job search would take longer than 75% of her peers and that it would not become easier for her to find work despite the increasingly favorable market in 2018, 2019, and 2020. Plaintiff is free to attack the weight of such evidence by pointing out that the category of "Management, Business, and Financial Operations" encompasses disparate positions or that US data may not match exactly the average duration of unemployment in Hong Kong, but there is no doubt that such information is a useful point of reference for the jury in determining how long it should have reasonably taken Plaintiff to find new employment.

## CONCLUSION

The data and methodology that Dr. Cohen has presented demonstrate the fundamental reliability of his opinions. Moreover, there is no doubt that his analysis of the labor market and Plaintiff's purported job search efforts will assist the jury. The purported flaws in his data and methodology raised by Plaintiff are mere fodder for cross-examination. Accordingly, Defendants respectfully request that the Court deny Plaintiff's motion to preclude Dr. Cohen from testifying.

    Respectfully Submitted,

    WELLINGTON MANAGEMENT COMPANY
    and CHARLES ARGYLE,

    By their attorneys,

    */s/ Stephen T. Paterniti*
    Stephen T. Paterniti, BBO# 564860
    JACKSON LEWIS P.C.
    75 Park Plaza, 4th Floor
    Boston, Massachusetts 02116
    TELE: (617) 367-0025
    FACSIMILE: (617) 367-2155

    Beverly Garofalo
    Admitted Pro Hac Vice
    JACKSON LEWIS P.C.
    90 State House Square
    Hartford, Connecticut 06109
    TELE: (860) 331-1535
    FACSIMILE: (860) 247-1330

Dated: October 11, 2021

## **CERTIFICATE OF SERVICE**

      This hereby certifies that on October 11, 2021, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                              */s/ Stephen T. Paterniti*
                                              Jackson Lewis P.C.

4844-4137-0366, v. 1