```
 1                UNITED STATES DISTRICT COURT

 2                DISTRICT OF MASSACHUSETTS (Boston)

 3                             No. 1:19-cv-11605-WGY

 4

 5   GIGI KAI ZI CHAN,
               Plaintiff
 6

 7   vs.

 8

 9   WELLINGTON MANAGEMENT COMPANY, LLP, and CHARLES ARGYLE,
               Defendants
10

11
                           *********
12

13           For Motion Hearing Before:
               Judge William G. Young
14           At Boston College Law School

15
                        Motion to Dismiss
16

17             United States District Court
               District of Massachusetts (Boston)
18             One Courthouse Way
               Boston, Massachusetts 02210
19             Thursday, November 7, 2019

20
                          *******
21
           REPORTER: RICHARD H. ROMANOW, RPR
22              Official Court Reporter
             United States District Court
23   One Courthouse Way, Room 5510, Boston, MA 02210
                 bulldog@richromanow.com
24

25
```

```
 1                    A P P E A R A N C E S

 2


 3    PATRICK J. HANNON, ESQ.
         Hartley Michon Robb Hannon, LLP
 4       155 Seaport Boulevard, 2nd Floor
         Boston, MA 02210
 5       (617) 723-8000
         E-mail: Phannon@hmrhlaw.com
 6       For Plaintiff


 7


 8    STEPHEN T. PATERNITI, ESQ.
      JAIMI KESSLER, ESQ.
 9       Jackson Lewis, PC
         75 Park Plaza, 4th Floor
10       Boston, MA 02116
         (617) 367-0025
11       Email: Stephen.paterniti@jacksonlewis.com
         For Defendants
12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1            P R O C E E D I N G S
 2            (Begins, 2:05 p.m.)
 3            THE CLERK:  Civil Action 19-11605, Chan vs.
 4    Wellington Management.
 5            THE COURT:  Now please introduce yourselves and
 6    who you represent.
 7            MR. HANNON:  Good afternoon, your Honor, my name
 8    is Patrick Hannon and I represent the plaintiff.
 9            MR. PATERNITI:  Stephen Paterniti on behalf of
10    defendants.
11            MS. KESSLER:  Jaimi Kessler on behalf of
12    defendants.
13            THE COURT:  All right.
14            This is the defendants' motion to dismiss.
15    There's much to this motion but -- and I speak only to
16    narrow the argument.  If Wellington Management LLP is
17    the employer here, um, while it's a reach, it does seem
18    to me that jurisdiction obtains here.  I know that you
19    don't agree with that and I'm happy to hear you.  But
20    just for discussion, let's assume -- though that may
21    turn on discovery yet to be, let's assume that
22    Wellington is the employer because that's how I'm going
23    in.
24            I'll hear you.
25            MR. PATERNITI:  Fair enough.  Thank you, your
```

1  Honor.
2        Your Honor, we've moved to ask the Court to
3  dismiss the case because at its core it does not belong
4  in front of this court.  It's a discrimination case and
5  we've asked to dismiss it because our plaintiff is a
6  nonU.S. resident, she lived in Hong Kong, she worked in
7  Hong Kong, her employment agreement is with a Hong Kong
8  corporation.
9        THE COURT:  Well it's that last that seems to me
10 to be open, and Wellington of course is here and there's
11 a significant Massachusetts interest in, um, having its
12 antidiscrimination laws obeyed.  That's why I put the
13 premise.  The rest of it of course is undisputed.
14       If it's Wellington that's the employer and if it
15 could be supported that the discrimination can be laid
16 at Wellington's door, is not this an appropriate court
17 to resolve the issue?
18       MR. PATERNITI:  Your Honor, we would argue that
19 it's not and there are a few critical reasons for why
20 that is the case.  And I apologize, your Honor, I wasn't
21 sure if you wanted me to sit or stand.
22       THE COURT:  Um, we're in a different type of room
23 and no apology is necessary and I wasn't the least
24 offended.  I'm accustomed to people standing and that's
25 why they put the mic there.  So feel free to stand --

```
 1          MR. PATERNITI:  I would love to stand.
 2          (Laughter.)
 3          THE COURT:  And you are welcome.
 4          MR. PATERNITI:  Much appreciated.
 5          Look this is a discrimination case and the
 6   question that's posed to the Court -- one of many
 7   questions posed to the Court is should 151 be applied?
 8   And as we set forth in the briefs, it should not apply,
 9   it should not apply based upon this extraterritorial
10   application issue.  And if 151(b) doesn't apply, then
11   you're left to apply Hong Kong discrimination law and
12   then you also have the --
13          THE COURT:  But given the statute of limitations
14   in Hong Kong, that may not be a remedy at all because it
15   appears to not have met the statute of limitations.
16          MR. PATERNITI:  Well if you're talking about -- if
17   you're talking about, um, if she wanted to file in Hong
18   Kong now, whether or not the statute of limitations
19   would exclude her from being able to bring her claim, is
20   that it?
21          THE COURT:  I'm not sure because I'm not sure of
22   Hong Kong law.
23          MR. PATERNITI:  Well at least with regard to the
24   claim of discrimination, the issue of whether 151(b)
25   applies we think is clear and it does not apply, again a
```

1  nonU.S. resident applying the state statute
2  extraterritorially.
3      THE COURT:  But help me out as to this.  If my
4  premise is that Wellington is the responsible party for
5  the discrimination, Wellington is here, and she comes
6  here complaining allegedly of Wellington's misconduct.
7  If I take that as my premise, can she not press the case
8  here?
9      MR. PATERNITI:  The -- again if we're talking
10 about -- what we're fundamentally talking about is an
11 extraterritorial application of the statute, she worked
12 in Hong Kong.  I understand your point that she's
13 alleging at least that Wellington is her employer, which
14 you're right, we do dispute, um, but the -- the issue of
15 extraterritorial application is really one that looks at
16 the parties and whether or not this case, this statute
17 should apply to Ms. Chan to allow her to bring a claim
18 under 151(b).
19     THE COURT:  Now surely it would apply to -- when
20 you say "extraterritorial," it applies to all your
21 employees wherever located in the 50 United States,
22 you'll concede that?
23     MR. PATERNITI:  I would concede that within the 50
24 states, given *Taylor*, that is probably correct.
25     THE COURT:  Why should it not, if you're the

1  employer, apply to her?  It's mere happenstance that she
2  is -- you have an international reach and she is outside
3  the United States.
4       MR. PATERNITI:  She's a nonU.S. resident, there's
5  nothing in 151(b) that will suggest that it's intended
6  to apply to nonU.S. residents.  In fact Title VII, the
7  federal analog, and there's sufficient case law
8  including your own decision in *Dorsett*, that would
9  suggest that the federal law has a more compelling
10 reason to reach extraterritorial for coverage, but yet
11 Title VII doesn't do that, nonresidents of the United
12 States, noncitizens of the United States do not have any
13 claim under Title VII.
14       THE COURT:  I have it in mind.
15       What do you say if -- you've got to establish that
16 it's Wellington that's her employer and that it's
17 Wellington that is legally responsible.  I think you're
18 dead in the water unless you can prove that.  Do you
19 agree with that?
20       MR. HANNON:  Partially, your Honor, that's true
21 with respect to the discrimination and retaliation
22 claims.  We also have claims for tortious interference,
23 which is an alternative view.  And technically speaking,
24 a tortious interference claim against Wellington
25 Management would only apply to a Wellington employer or

1   if it was a third-party that interfered with her
2   employment in retaliation for her claim of
3   discrimination and things of that nature.  But the fact
4   that Wellington Management -- we have to show that it
5   was Wellington Management that caused her separation and
6   that they did so with retaliation to her.
7           THE COURT:  And if it is Wellington, what do you
8   say to this, the territorial point, which is his strong
9   point?
10          MR. HANNON:  Yeah, I say a couple of things.
11  First is, um, Massachusetts, the SJC has explicitly not
12  decided this question, they had an opportunity to adopt
13  a lower court opinion when they addressed *Taylor*, they
14  didn't do that.  But they said "even assuming that's
15  true, we're going distinguish it for other reasons."
16          States are obviously different from the federal
17  government, the authorities in the Supreme Court
18  regarding this presumption against extraterritorial
19  reach are from a long time ago, and Massachusetts courts
20  that more recently considered the interplay between
21  different forums and their laws have looked at it from a
22  choice-of-law perspective and the modern view on choice
23  of law, which is ultimately "What is the forum that has
24  the most significant relationship to this particular" --
25          THE COURT:  But let's say it's Massachusetts -- do

1   you think it's not Massachusetts?
2           MR. HANNON: Based upon the fact that I believe it
3   is Massachusetts.
4           THE COURT: So if it's Massachusetts, this is an
5   undecided question, so why should I decide it in favor
6   of the plaintiff here?
7           MR. HANNON: Well because we are alleging that in
8   fact Massachusetts law can be applied and Massachusetts
9   law should be applied, that there are sufficient
10  contacts --
11          THE COURT: But I guess -- let's say Massachusetts
12  law is the appropriate choice of law, that doesn't
13  answer this extraterritorial point because it's a --
14  it's an issue of construing a Massachusetts statute.
15  You agree with that, right?
16          MR. HANNON: Well his extraterritorial argument is
17  that you cannot apply Massachusetts law because she was
18  working in Hong Kong when the --
19          THE COURT: Yes.
20          MR. HANNON: That's his argument. But what that
21  does is that focuses on one single fact as being
22  determinative of which law provides you the rule of
23  position. And the modern approach in terms of conflict
24  of law is you don't just look at where the work is
25  performed, you don't just look at where the employer is,

```
 1  you look at --
 2          THE COURT:  Maybe I'm missing something.  Let's
 3  say you're right, let's say, (1) you can establish that
 4  Wellington is the employer and (2) applying standard
 5  choice of law principles Massachusetts law applies, but
 6  that doesn't answer his extraterritorial point.  He
 7  says, that in the Massachusetts statute, which is the
 8  Court's obligation to construe in this regard, simply
 9  does not reach, does not afford his protections to a
10  resident of Hong Kong discriminated against in Hong
11  Kong.  That's what he says.  Why isn't that right?
12          MR. HANNON:  That's not right because (1)
13  Massachusetts courts have not applied any kind of
14  presumption against extraterritorial reach --
15          THE COURT:  But they haven't answered the
16  question?
17          MR. HANNON:  Well they have answered the question
18  in the context of interstate conduct.
19          THE COURT:  And he conceded that?
20          MR. HANNON:  Yes, he has.
21          THE COURT:  Well he conceded it because it's the
22  law, it's not a concession that led to his argument.
23  But this is a matter of first impression, isn't it?
24          MR. HANNON:  Yes, it is, your Honor.
25          THE COURT:  Yeah.
```

```
 1          I'll tell you what, I'm going to take it under
 2   advisement.  But we're going to assume -- we're not
 3   going to presume, we'll assume it's going to stay in
 4   this court so we can gets our duck in a row.  If it
 5   stays in this court, let's figure out when do you want
 6   to go to trial?
 7          When do you want to go to trial?
 8          MR. HANNON:  I would ask for 10 months, your
 9   Honor.
10          THE COURT:  So that would take us to -- do you
11   want it tried in October of 2020?
12          MR. HANNON:  Yes, your Honor.
13          THE COURT:  How does that suit, if it stays in
14   this court?
15          MR. PATERNITI:  How does that suit us?
16          THE COURT:  Yes, if in stays in this court.
17          MR. PATERNITI:  I hate to ask, but what's the
18   longest date --
19          THE COURT:  12 months.
20          MR. PATERNITI:  Then we would prefer 12 months,
21   your Honor.
22          THE COURT:  10 months it is on the --
23          (Laughter.)
24          THE COURT:  It's on the running trial list for
25   October 2020.  A joint proposed case management schedule
```

1  shall be filed no later than 14 days after an adverse
2  decision on the question of jurisdiction.  If I
3  obviously decide I don't have jurisdiction, it's over.
4  Thank you.
5       MR. PATERNITI:  Your Honor, may I just ask one
6  last question?
7       THE COURT:  A question.
8       MR. PATERNITI:  The issue of potentially limiting
9  initial discovery, the key question you asked at the
10 outset as to whether or not Wellington Management is
11 truly the employer, could that be raised at the initial
12 scheduling conference?
13      THE COURT:  See if you can't work it out, and if
14 not, the answer is "Yes."
15      MR. PATERNITI:  Thank you, your Honor.
16      (Ends, 2:15 p.m.)

```
 1                     C E R T I F I C A T E

 2

 3        I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

 4   do hereby certify that the foregoing record is a true

 5   and accurate transcription of my stenographic notes

 6   before Judge William G. Young, on Thursday, November 7,

 7   2019, to the best of my skill and ability.

 8

 9

10

11
     /s/ Richard H. Romanow 4-25-22
12   _____
     RICHARD H. ROMANOW    Date
13
```